IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIMOTHY O'NEIL,<br><br>　　Plaintiff,<br><br>v.<br><br>SHERIFF VICTOR HILL,<br><br>　　Defendant. | Civil Action File No. _____ |

**COMPLAINT**

On October 11th, 2019, Sheriff Victor Hill entered the infirmary of the Clayton County Jail for only one reason – to punish inmate Timothy O'Neil. Prior to his arrest, O'Neil had been involved in a standoff with police that had required Hill to shut down I-75. Hill went to see O'Neil to deliver payback.

Hill ordered O'Neil to be placed in the restraint chair for hours – an inhumane practice for which Hill is currently under federal indictment. Worse still, Hill had O'Neil kept in the mental health area for weeks, exposing O'Neil to prolonged low temperatures with no access to bedding or clothes—beyond a paper medical gown—no toilet paper, toothbrush, toothpaste, or other toiletries, and no access to food beyond the barely edible "Nutraloaf."

This is an action brought pursuant to 42 U.S.C. §§ 1983 and 1988 as well as the Fourteenth Amendment to the United States Constitution against Sheriff Victor Hill for directing O'Neil's inhumane treatment.

1

## Parties, Jurisdiction, and Venue

1. Plaintiff Timothy O'Neil is a natural person and citizen of the United States of America and is of full age.

2. Defendant Victor Hill is an individual who was, at the times relevant to this complaint, the elected Sheriff of Clayton County, Georgia, acting under color of law.

3. This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourteenth Amendment to the United States Constitution.

4. All the parties herein are subject to the personal jurisdiction of this Court.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and N.D.L.R. 3.1B(3) because the event giving rise to this claim occurred in Clayton County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia.

6. Defendant has been properly served with process in this action.

## Facts

7. On October 8, 2019, Plaintiff O'Neil was arrested after a standoff with law enforcement. Nobody was injured during the standoff.

8. During the course of the standoff, Defendant Hill ordered road closures, including closing I-75.

9. The day of Plaintiff's arrest, he was taken to the hospital.

10. After Plaintiff was released from the hospital, he was taken into custody at the Clayton County Jail.

11. On Friday October 11, 2019, Defendant Hill entered the Clayton County Jail for the purpose of visiting Plaintiff O'Neil.

12. Defendant Hill entered the mental health area where Plaintiff was being held and said to Plaintiff, "Do you know who I am?  I had to shut down 75 for you." Defendant Hill continued, "I want you out of my fucking county."

13. Defendant Hill then told the jailers in the area, "Take him down and strap him to the chair."

14. Plaintiff had done nothing to justify the use of the restraint chair.

15. Plaintiff had not disobeyed any lawful commands, had not resisted any officer(s) or jailer(s), and had not caused a disturbance.

16. Plaintiff had not violated any of the written policies and procedures required of inmates of the Clayton County Jail.

17. Plaintiff was strapped to the restraint chair for five hours, during which he was not allowed to use the bathroom.

18. After a couple of hours in the restraint chair, Plaintiff asked to use the bathroom.  Plaintiff's requests were ignored.

19. Plaintiff then started to scream that he needed to use the bathroom but, still, Plaintiff's needs were ignored.

20. Plaintiff ultimately could not stop himself from urinating in the restraint chair. For approximately the last hour and a half in the restraint chair, Plaintiff sat in his own urine.

21. After five hours in the restraint chair, Plaintiff was released and taken to the shower to wash the urine from his body. Plaintiff was then returned to the mental health unit.

22. The next day, Defendant Hill returned to, again, punish Plaintiff for inconveniencing him. Defendant Hill said to Plaintiff, "I want you to get comfortable in here. You're going to be in here for a while."

23. Another inmate in the area looked at Defendant Hill and, apparently, Defendant Hill took offense to being looked at, so Defendant Hill ordered the jailers to take that inmate down and strap that inmate to the restraint chair.

24. Defendant Hill issued an order that Plaintiff would not be let out of the mental health unit without Defendant Hill signing off first.

25. Typically, inmates would be released from the mental health unit within one or two days and their releases would be guided by written policies and/or the discretion of medical personnel.

26. Plaintiff, however, was forced to remain in the mental health unit in contravention of written policies and without medical justification based on the whims of Defendant Hill.

27. Defendant Hill ordered Plaintiff to remain in the mental health unit to punish Plaintiff.

28. Plaintiff remained in the mental health unit for approximately two and a half weeks.

29. In the mental health unit, Plaintiff was subjected to the following conditions of confinement:

    a. Plaintiff was only given a paper gown to wear;

    b. The temperature was unbearably cold at times, and Plaintiff would have to take off his gown to wrap it around his feet for warmth;

    c. There was no bedding and no pillow, so Plaintiff would try to use his gown as a pillow;

    d. There was a toilet but no toilet paper, so Plaintiff had to wipe himself by tearing off pieces of his gown, leaving himself with less and less to clothe himself and cover himself;

    e. There was no mattress; Plaintiff was forced to sleep on the floor;

    f. There was no toothbrush or toothpaste;

    g. The nursing staff could see into the room at all times, giving Plaintiff no privacy;

    h. Plaintiff was only given "nutraloaf" to eat, which was barely edible, and which was intended as extrajudicial punishment.

30. The day that Defendant Hill told Plaintiff to "get comfortable," Plaintiff asked a nurse how long he would be in this mental health unit.

31. The nurse told Plaintiff that typically inmates are only held in the area for a day or two and that he would normally be going to general population, but Plaintiff had a special restriction issued by Defendant Hill and Plaintiff would not get out of the mental health unit until Defendant Hill signed off on it.

32. In the approximately two and a half weeks Plaintiff was forced to stay in the mental health unit, Plaintiff saw inmates with HIV, saw an inmate overdosing, saw inmates withdrawing, saw schizophrenic inmates, and saw an inmate flood the cell by flushing nutraloaf.

33. In the approximately two and a half weeks Plaintiff was forced to stay in the mental health unit, all other inmates stayed for only a day or two; no inmates stayed nearly as long as Plaintiff did.

34. In the approximately two and a half weeks Plaintiff was forced to stay in the mental health unit, the cell was never cleaned.

35. Defendant Hill had no valid penological reason for subjecting Plaintiff to any of this punitive treatment – hours in the restraint chair, weeks without basic human needs such as bedding, toilet paper, and toiletries.

36. Instead, Defendant Hill forced Plaintiff to undergo this torture as payback against Plaintiff for causing Hill to shut down I-75.

37. At all times described herein, Defendant Hill was acting under color of law.

## COUNT I
## Section 1983 – Conditions of Confinement

38. Defendant Hill made an intentional decision to modify the conditions of Plaintiff O'Neil's confinement.

39. Plaintiff was strapped to the restraint chair purely to punish Plaintiff for his alleged criminal actions which occurred prior to his arrest.

40. Plaintiff was subjected to the following conditions of confinement for approximately two and a half weeks:

    a. Plaintiff was only given a paper gown to wear;

    b. The temperature was unbearably cold at times, and Plaintiff would have to take off his gown to wrap it around his feet for warmth;

    c. There was no bedding and no pillow, so Plaintiff would try to use his gown as a pillow;

    d. There was a toilet but no toilet paper, so Plaintiff had to wipe himself by tearing off pieces of his gown, leaving himself with less and less to clothe himself and cover himself;

    e. There was no mattress; Plaintiff was forced to sleep on the floor;

    f. There was no toothbrush or toothpaste;

    g. The nursing staff could see into the room at all times, giving Plaintiff no privacy;

    h. Plaintiff was only given "nutraloaf" to eat, which was barely edible, and which was intended as extrajudicial punishment.

41. Defendant Hill subjected Plaintiff to these conditions in order to inflict unnecessary and wanton pain.

42. Defendant Hill deprived Plaintiff of the minimal civilized measure of life's necessities.

43. In subjecting Plaintiff to these subhuman conditions, Defendant Hill was acting maliciously and sadistically, purely to punish Plaintiff for making Defendant Hill shut down I-75.

44. Defendant Hill had no valid penological reason for placing Plaintiff O'Neil in these conditions, but did so as reprisal for a perceived grievance caused by Plaintiff O'Neil.

## Prayer for Relief

WHEREFORE, Plaintiff prays that this Court issue the following relief:

1) That process issue in accordance with the law;

2) That the Court award Plaintiff compensatory and general damages in an amount to be determined by the jury against the Defendant:

3) That the Court award Plaintiff punitive damages in an amount to be determined by the enlightened conscience of the jury against the Defendant;

4) That the Court award costs of this action, including attorneys' fees, to Plaintiff, pursuant to U.S.C. § 1988 and other applicable laws regarding such awards;

5) That the Court award Plaintiff such other and further relief as it deems just and necessary; and

6) That Plaintiff be granted a trial by jury.

This 8th Day of October, 2021

**ESHMAN BEGNAUD, LLC**

/s/ Mark Begnaud
Mark Begnaud
Georgia Bar No. 217641

mbegnaud@eshmanbegnaud.com
Michael J. Eshman
Georgia Bar No. 365497
meshman@eshmanbegnaud.com

315 W. Ponce De Leon Ave
Suite 775
Decatur, GA 30030
404-491-0170