**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

TIMOTHY O'NEIL,

      Plaintiff,

v.

SHERIFF VICTOR HILL,

      Defendant.

Civil Action File No. 1:21-cv-04173-AT-CCB

### Plaintiff's Response to Defendant Hill's Motion to Dismiss

The Court should deny Plaintiff's motion because the administrative

exhaustion requirement upon which Defendant Hill relies was unavailable to

Plaintiff.  When Plaintiff was booked at the Clayton County Jail, he did not go

through the normal procedures – Defendant Hill personally removed Plaintiff from

the normal procedures out of malice and spite, relegating Plaintiff to the mental

health unit where Plaintiff was subjected to inhumane conditions.  As Plaintiff's

attached declaration demonstrates, Plaintiff was not made aware of a grievance

procedure and was never given any real orientation or instructions at any point in

his incarceration.  The declaration supplied with Defendant Hill's motion does not

rebut any part of Plaintiff's declaration, instead making the bare and unsupported

1

claim that inmates at the Clayton County Jail were told about an unwritten

grievance procedure which did not comport with the actual Standard Operating

Procedures ("SOP's").

1. Legal Standard

As Defendant Hill properly notes, Turner v. Burnside lays out a two-part test

for resolving motions to dismiss for failure to exhaust administrative remedies

under § 1997e(a), where courts first "look[ ] to the factual allegations in the

defendant's motion to dismiss and those in the plaintiff's response, and if they

conflict, takes the plaintiff's version of the facts as true." 541 F.3d 1077, 1082

(11th Cir. 2008)).  Then, if the complaint is not subject to dismissal, "the court then

proceeds to make specific findings in order to resolve the disputed factual issues

related to exhaustion." Id.

Plaintiff does not dispute that he was a pretrial detainee subject to the

PLRA's exhaustion requirement, he does not dispute Defendant Hill's claim that

there was a written policy at the Clayton County Jail allowing inmates to file

grievances, and he does not claim that he filed a grievance.  Instead, the core

question before the Court is whether Clayton County Jail's grievance procedure

was "available" to Plaintiff such that he was required to file a grievance to preserve

his right to bring this suit.

As the Supreme Court recently explained in <u>Ross v. Blake</u>, the exhaustion requirement of §1997e(a) hinges on the "availability" of administrative remedies:

> An inmate [] must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust … has real content. As we explained in <u>Booth [v. Churner</u>, 532 U.S. 731, 737-38 121 S. Ct. 1819 (2001)], the ordinary meaning of the word "available" is "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" … Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." <u>Booth</u>, 532 U.S., at 738.

578 U.S. 632, 642, 136 S. Ct. 1850, 1858 (2016).  The Court then outlined three situations where an administrative procedure is unavailable: (1) when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when an administrative scheme is so opaque it becomes incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. 578 U.S. at 643-44.

Looking at the second avenue of unavailability, the Court went on to explain:

> When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. But when

> a remedy is, in Judge Carnes's phrasing, essentially "unknowable" – so that no ordinary prisoner can make sense of what it demands – then it is also unavailable. See Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007); Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available"). Accordingly, exhaustion is not required.

Id. at 644.  Under this formulation, a grievance procedure is not "available" if the

inmate is not made aware of the grievance procedure.  As Judge Cheesboro

recently surmised:

> While Ross does not expressly address whether a remedy is unavailable because inmates are not made aware of the grievance procedure, the reasoning behind Ross squarely extends to such a situation. Indeed, it would be hard to imagine a grievance procedure more opaque than one totally unknown to a prisoner.  Ross, 136 S. Ct. at 1859–60. The Eleventh Circuit's decision in Forde v. Miami Federal Department of Corrections, 730 F. App'x 794, 800 (2018),[1] underscores the viability of pre-Ross cases finding administrative remedies unavailable where the plaintiff is not made aware of the policy.

---

[1] "In Goebert, we held that because no inmate was permitted to see the jail's general operating procedures—which explained the process for prisoners to appeal an adverse decision pertaining to a grievance—those procedures were not 'available' and, thus, Ms. Goebert was not required to exhaust. See Goebert [v. Lee County, 510 F.3d 1312, 1322-24 (11th Cir. 2007)]." Forde v. Miami Fed. Dep't of Corr., 730 F. App'x 794, 800 (11th Cir. 2018).

Hasuan v. Watson, No. 2:20-CV-121, 2021 WL 6497214, at \*7 (S.D. Ga. Dec. 20, 2021), report and recommendation adopted sub nom., No. 2:20-CV-121, 2022 WL 130743 (S.D. Ga. Jan. 13, 2022).

Other pre-Ross decisions from this circuit apply the same rule: "[c]ourts applying the framework from Goebert and Williams have similarly found the grievance process or parts of it to be unavailable where necessary information is not provided to prisoners or the information which is provided is ambiguous as to what is required." Doe v. Sheely, No. 3:18-CV-122-TCB, 2019 WL 11505838, at \*3 (N.D. Ga. Aug. 15, 2019), aff'd, 855 F. App'x 497 (11th Cir. 2021) (quoting Minor v. Brown, No. CV 111-070, 2012 WL 5504860, at \*5 (S.D. Ga. Oct. 16, 2012).).

2. Plaintiff Was Not Made Aware of the Grievance Procedure

Plaintiff's declaration sufficiently establishes that he was not made aware of the grievance procedures at the Clayton County Jail.  Plaintiff attests that he was never given an inmate handbook or told about grievance procedures, and that he was not aware that any sort of grievance process existed where an inmate could formally complain about jail conditions.  (Plaintiff's Declaration, ¶¶ 5, 6, 10, 11, 13, 14, 16, 18, 19, 22.)  On this record, Plaintiff has sufficiently established that he was not made aware of the grievance procedure.  That fact alone is sufficient to

5

meet the first prong of the <u>Turner</u> test and push this Court to "make specific

findings in order to resolve the disputed factual issues related to exhaustion." 541

F.3d at 1082.

Moving to the fact determination for this Court, placing Plaintiff's

declaration next to Defendant Hill's supplied affidavit allows for only one

reasonable conclusion – Plaintiff was not made aware of the grievance procedure.

Defendant Hill supplies an affidavit from Kali Huitt, a Clayton County Sheriff's

Office employee identified only as a "sergeant." (Doc. 7-2, ¶ 2.) There is no other

information about Sergeant Huitt's role at the Clayton County Jail: how long

Sergeant Huitt has worked there, whether Sergeant Huitt worked there before

Defendant Hill was removed from duty and federally prosecuted, or the specifics

of Sergeant Huitt's role at the jail that would give him any authority in opining on

the actual dealings at the jail in October of 2019. Nor does the affidavit provide

any substance to the bare and conclusive assertion that "Detainees and inmates are

informed and educated about the Grievance SOP during orientation and intake."

(<u>Id.</u>, ¶ 4.) In sum, Sergeant Huitt's declaration does the bare minimum to state –

"we have this policy, and we follow it."

Except that is not exactly what the declaration states. According to Sergeant

Huitt's statement, the jail has a policy allowing inmates to request and receive a

written Grievance Form and requires inmates to place the completed Grievance

Form in the Grievance Box mounted in his/her Housing Unit, during a special call

for this purpose, to be held once during each shift.  (Doc. 7-2, p. 4.)  According to

Sergeant Huitt, inmates are briefed on this policy, but then told that the procedure

is different in practice – in practice, inmates are to use a kiosk instead of following

the written SOP's.  (Doc. 7-2, ¶¶4-5.)  In other words, the Clayton County Jail is

not actually following the SOP's; the jail relies on inmates being told informally

that there is a different *unwritten* grievance procedure.  Moreover, Sergeant Huitt

does not claim that inmates were given access to the SOP's, and there is no inmate

handbook explaining the procedure.[2]

In this regard, the grievance procedure at the Clayton County Jail resembles

the "hide-and-seek position on administrative remedies" roundly criticized by the

Eleventh Circuit in Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007).

There, the inmate was unaware of an appeal procedure because she was not given

access to the SOP's or an inmate handbook, but the custodial defendants argued

---

[2] A search of the SOP's for the term "handbook" only reveals a Work Release
Handbook but no handbook for the Clayton County Jail.  (See the Clayton County
Jail's Standard Operating Procedures, attached to the Declaration of Mark
Begnaud, filed herewith.)  Moreover, if there was a handbook, and/or a record of
Plaintiff receiving or reviewing such handbook, Defendant Hill would certainly be
relying on it here.

that she was required to follow it regardless.  Here, since Plaintiff was not given an

inmate handbook and was not given access to the SOP's, Defendant Hill must rely

on the assertion in Sergeant Huitt's declaration that inmates at the Clayton County

Jail were told orally about the unwritten grievance procedure in October of 2019.

As written, Sergeant Huitt's declaration does little, if anything, to cast doubt on

Plaintiff's lived experience, laid out in his declaration. [3]

---

[3] There is also serious reason to doubt that the Clayton County consistently follows
this – or any – of their procedures.  Undersigned counsel sent an Open Records
request to the Clayton County Sheriff's Office on July 16, 2021, asking for (1)
Plaintiff's complete inmate file, and (2) any correspondences regarding Plaintiff.
(See Declaration of Mark Begnaud, attached hereto).  In response, the Sheriff's
Office produced 25 pages of correspondences about Plaintiff but no documents
showing that the jail maintains policy-mandated inmate records on Plaintiff.  The
Sheriff's Office did not produce the following documents typically found in inmate
files, which are contemplated by the Standard Operating Procedures:

    (1) Inmate ID Processing Documents (SOP 2.14(10-11)) including: "Inmate
       Interview Sheet," "OBTS form," three "Fingerprint cards," one "Palm
       print card," a "Handwriting Form," an "Arrest Booking Cover" sheet, an
       "Arrest Booking Report," and a "CCID Folder;"

    (2) Individual Inmate Records (SOP 2.16) including: "Computer Printout of
       the history sheet, "Classification form," "Committal documents,"
       "Disciplinary Action Report(s)," "Money/Property Receipts,"
       "Arrest/Booking Report," "Transfer Orders," "Authority for release,"
       "Copy of sentence," and "Photo, NCIC wanted person check, and
       criminal history, if available."

There is also no incident report associated with Plaintiff's suicide attempt
(compare Exhibit B to the Declaration of Mark Begnaud, p. 19, indicating that
Plaintiff was unresponsive and turning blue, requiring ambulance delivery to
Southern Regional Hospital, with Exhibit A to the Declaration of Mark Begnaud,

But there is another – and greater – reason Sergeant Huitt's declaration does nothing to help Defendant Hill: Plaintiff was not actually processed in accordance with standard procedures.  After Plaintiff returned to Clayton County Jail from the hospital, Defendant Hill singled Plaintiff out and removed him from the normal booking process, relegating him to a special mental health area where he was held for weeks under a hold issued by Defendant Hill.  (See Plaintiff's Declaration, ¶ 7; Doc. 1, ¶¶ 24-27.)  Under the jail's SOP's, a Psychologist or Psychiatrist is to make the decision regarding when to release an inmate from suicide watch.  (See SOP 6.08(3)(D).)  Contrary to these procedures, Defendant Hill held Plaintiff in the special mental health area simply to punish him.  (Doc. 1, ¶¶ 24-27.)

Then, when Plaintiff was ultimately released from the special mental health area, he was moved to an "orientation pod" where he was told nothing other than, "Keep your head down and keep your mouth shut and do what you're told."

---

pp. 12-13, SOP 1.05, policy on incident reports), nor are there any records associated with Plaintiff's suicide attempt (e.g. SOP 6.08 Suicide Watch, requiring a 15-minute suicide watch log; SOP 11.04 Attempted Suicide, requiring photographs, witness identification, notification to federal officials or relatives, and a suicide report to the Watch Commander).  The paltry open records response provides good reason to doubt Sergeant Huitt's ability to opine with any confidence that inmates were regularly briefed on the grievance procedure in October of 2019 – or that *any* of the jail's SOP's were regularly followed, for that matter.

(Declaration of Plaintiff, ¶¶ 9-10.)  When he was transferred again, this time to

housing unit 6, Plaintiff again was given instructions or information about the jail–

nothing about rules, procedures, expectations, etc.  (Id., ¶¶ 12-14.)  Plaintiff's

experience that he received no written instructions or information about the jail is

consistent with Sergeant Huitt's declaration, which posits that inmates would only

be told about the unwritten grievance procedure orally upon intake, and with the

SOP's which make clear that there is no handbook for Clayton County Jail

inmates.  Ultimately, even if Sergeant Huitt's declaration is to be believed, it only

lays out what "usually" happens or what is "supposed to" happen, but Plaintiff was

not processed through the usual channels, making Sergeant Huitt's declaration

unhelpful for Defendant Hill.

Moreover, while it is not part of the legal standard (which holds that a

grievance procedure is unavailable if the inmate is not made aware it), the record

also establishes that Plaintiff had no way of knowing that there was a grievance

procedure.  Plaintiff had not been meaningfully incarcerated before; he had been

incarcerated only once before, in Nebraska in 2006, and he was only held for three

hours in that instance and was not told anything about grievance procedures.  Nor

is it intuitive that a jail has a grievance procedure, and Plaintiff states he had "no

idea that there was any way to formally complain about my conditions of

confinement – at any point while I was in custody at the Clayton County Jail."

(Id., ¶ 22.) [4]

Finally, the statements from the jailers made it clear to Plaintiff that complaining about the facility was an easy way for him to face additional punishment, as he explains: "When I was told to keep my head down and keep my mouth shut, I took that to mean that I would get more of the same – the restraint chair and the special mental health area – if I said anything."  (Id., ¶ 20.)  While this statement suggests that the grievance procedure was also unavailable for the third reason considered in Ross – when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation – at a minimum it refutes the idea that that Plaintiff "may have known" or "should have inquired" about a grievance procedure.

---

[4] That Plaintiff did not file other grievances at the Clayton County Jail and that Plaintiff had not been previously incarcerated distinguishes this case from others where courts will (rightly) take a plaintiff's other filed grievances as evidence that the Plaintiff was aware of an available grievance procedure.  See, e.g., Booth v. Allen, No. 20-13357, 2021 WL 4978161, at *4 (11th Cir. Oct. 26, 2021) (finding an available grievance procedure when the plaintiff filed three other grievances); Doe v. Sheely, 855 F. App'x 497, 500 (11th Cir. 2021) (finding an available grievance procedure when the plaintiff "knew she could file grievances … as evidenced by her filing of several such grievances and requests.").

## Conclusion

Given this factual background, the Court should make a factual finding that there was no grievance procedure available to Plaintiff at the Clayton County Jail. Plaintiff's declaration provides direct evidence that he was not made aware of the jail's unwritten grievance procedure. Sergeant Huitt's declaration at best provides circumstantial evidence that some inmates were told about the jail's unwritten grievance procedure, but this bare assertion is insufficient to rebut Plaintiff's lived experience. If the Court is not inclined to make a factual finding at this point, the Court should allow the parties to better develop the record and revisit the question once discovery is complete.[5] The Court should also deny Defendant Hill's alternate request for relief – that the claims for punitive damages and attorney's fees be dismissed – because that motion is dependent on the success of Defendant Hill's primary argument under the PLRA.

This 14th Day of February, 2022

**ESHMAN BEGNAUD, LLC**

/s/ Mark Begnaud
Mark Begnaud

---

[5] Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant v. Rich, 530 F.3d 1368, 1377 (11th Cir. 2008); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012).

Georgia Bar No. 217641
mbegnaud@eshmanbegnaud.com
Michael J. Eshman
Georgia Bar No. 365497
meshman@eshmanbegnaud.com

315 W. Ponce De Leon Ave
Suite 775
Decatur, GA 30030
404-491-0170

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **<u>Plaintiff's Response</u>**

**<u>to Defendant Hill's Motion to Dismiss</u>** to the Clerk of Court using the CM/ECF

system which will automatically send electronic mail notification of such filing to

counsel of record who are CM/ECF participants:

Jack R. Hancock
jhancock@fmglaw.com
A. Ali Sabzevari
asabzevari@fmglaw.com
FREEMAN MATHIS & GARY, LLP
661 Forest Parkway, Suite E
Forest Park, GA 30297

This 14th Day of February, 2022


/s/ Mark Begnaud
Mark Begnaud
Georgia Bar No. 217641
mbegnaud@eshmanbegnaud.com

ESHMAN BEGNAUD, LLC

315 W. Ponce De Leon Ave, Suite 775
Decatur, GA 30030
(404) 491-0170

14
