# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TIMOTHY O'NEIL,<br><br>    Plaintiff,<br><br>v.<br><br>SHERIFF VICTOR HILL,<br><br>    Defendant. | Civil Action File No. 1:21-cv-04173-AT-CCB |

## Declaration Under Penalty of Perjury

1. My name is Timothy O'Neil. I am over eighteen (18) years of age and suffer no legal disabilities. I give this declaration based on my own personal knowledge.

2. I was arrested on October 8, 2019, and, shortly thereafter, I was taken to the hospital.

3. After I was released from the hospital, I was taken to the Clayton County Jail.

4. When I was taken to the Clayton County Jail, I was placed in what appeared to me to be a special mental health area.

5. When I was placed in the special mental health area, I was not given an inmate handbook or informed about any sort of grievance procedure.

1

6. I was held in the special mental health area for approximately two and a half to three weeks in inhumane conditions. At no time during this two and a half weeks was I given an inmate handbook or informed about any sort of grievance procedure.

7. While I was in the special mental health area, I complained to the nursing staff and security staff about the conditions there and begged to be released into general population, but the nursing staff and security staff told me that there was a hold placed on me by Sheriff Vitor Hill and that I would not be released until Hill personally signed off on my release.

8. After two-and-a-half to three weeks, I was moved out of the special mental health area. I was first moved to a pod they called the "orientation pod" for about two days.

9. The jailers who moved me to the orientation pod told me, "Keep your head down and keep your mouth shut and do what you're told." I received no other instructions from the jailers who moved me to the orientation pod.

10. While I was in the orientation pod, I received no actual instructions from any jailers or information about the jail – nothing about rules, procedures, expectations, etc. I was allowed out of the orientation pod to eat, and I was told to make my bed, but otherwise I received no actual instructions or information from any jailers.

11. While I was in the orientation pod, I did not receive any written information at all – no inmate handbook or anything of the sort. In fact, the only written documents I received the entire time I was held at the Clayton County Jail was a notice of the seizure of my assets from federal authorities.

12. After about two days in the orientation pod, I was moved to an area they told me was "housing unit 6," which I presume was general population.

13. When I was moved to housing unit 6, the jailers did not give me any instructions or information about the jail– nothing about rules, procedures, expectations, etc.

14. When I was moved to housing unit 6, I did not receive any written information at all – no inmate handbook or anything of the sort.

15. When I was in housing unit 6, I had three cellmates and we were only allowed out of our cells for one hour each day.

16. While I was incarcerated at the Clayton County Jail, I had no idea that there was a grievance process, or any sort of procedure for formally notifying the staff at the jail about a concern with jail conditions.

17. Prior to my incarceration at the Clayton County Jail, I had only been incarcerated once before in Nebraska in approximately 2006, and I was only held for approximately three hours at that time. During that incarceration, I

never learned anything about a process for filing grievances about jail conditions.

18. Nobody at the Clayton County Jail – no jailers, deputies, medical staff, inmates or other individuals – ever explained anything about how the jail worked. All I heard from the jailers was that I needed to keep my head down and keep my mouth shut.

19. I was strapped to the restraint chair for several hours, then kept in inhumane conditions in the special mental health area under the direct orders of Sheriff Victor Hill for almost three weeks at the beginning of my incarceration at the Clayton County Jail, then when I was released from the special mental health area I was told to keep my head down and keep my mouth shut. I never had any idea that there was a formal written grievance procedure.

20. Even if I had learned about a formal grievance procedure, I would probably have been too scared to use it. I assume that any grievance procedure would end with the sheriff. Obviously, the sheriff was aware that I had been strapped to the restraint chair; he was the one who ordered me to be strapped to the restraint chair and he was the one who ordered me to be kept in inhumane conditions. When I was told to keep my head down and keep my mouth shut, I took that to mean that I would get more of the same – the restraint chair and the special mental health area – if I said anything.

21. I stayed in the general population area for about two weeks, then I was transferred into federal custody.

22. I had no idea that the Clayton County Jail had a grievance procedure at all – I had no idea that there was any way to formally complain about my conditions of confinement – at any point while I was in custody at the Clayton County Jail.

23. I, Timothy O'Neil, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

This __7__ Day of February, 2022.

_[signature: Timothy O'Neil]_