

**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

# INDEX

## 1.00      ADMINISTRATION

SOP NUMBER              SUBJECT

1.01              GOALS AND OBJECTIVES
1.02              NEW EMPLOYEE ORIENTATION
1.03              CHAIN OF COMMAND
1.04              RELEASE OF INFORMATION
1.05              INCIDENT REPORTS
1.06              JAIL MISCELLANEOUS INCIDENT REPORTS
1.07              REVISION PROCESS FOR SOP MANUAL

## 2.00      ADMISSION

SOP NUMBER              SUBJECT

2.01              IDENTITY OF ESCORTING OFFICER
2.02              CONDITION OF INMATE
2.03              INTOXIMETER TESTS
2.04              LEGALITY OF COMMITMENT DOCUMENTS
2.05              MANAGEMENT OF JUVENILES
2.06              SEPARATION OF FEMALE INMATES
2.07              CONFISCATION OF INMATE'S MONEY AND PROPERTY
2.08              FRISK SEARCH
2.09              STRIP SEARCHES
2.10              CAVITY SEARCH
2.11              DELOUSING INMATES
2.12              SURVEILLANCE OF HOLDING CELL/WAITING AREA
2.13              ARREST/BOOKING REPORT, COMPUTER ENTRIES
2.14              INMATE ID PROCESSING
2.15              NOTIFICATION OF INCARCERATION
2.16              RECORDS AND REPORTS

D-000000010

## 3.00 CLASSIFICATION

| SOP NUMBER | SUBJECT |
|---|---|
| 3.01 | CLASSIFICATION OF INMATES |
| 3.02 | WORK RELEASE |
| 3.03 | SPECIAL MANAGEMENT INMATES |
| 3.04 | DETERMINATION OF RELEASE DATE (GOOD TIME) |
| 3.05 | CENSUS INFORMATION PROVIDED TO COURTS |
| 3.06 | WEEKENDER INMATES |
| 3.07 | INMATE WORKERS |

## 4.00 SECURITY

| SOP NUMBER | SUBJECT |
|---|---|
| 4.01 | WEAPONS |
| 4.02 | CONTRABAND |
| 4.03 | SECURITY INSPECTIONS |
| 4.04 | KEY CONTROL |
| 4.05 | INMATE COUNT |
| 4.06 | INMATE MOVEMENT |
| 4.07 | TRANSPORTATION OF INMATES |
| 4.08 | USE OF FORCE |
| 4.09 | USE OF PHYSICAL RESTRAINING DEVICE |
| 4.10 | DIGITAL RECORDING OF INCIDENTS |
| 4.11 | HUNGER STRIKE |
| 4.12 | RAZORS FOR INMATES |
| 4.13 | PREPARING INMATES FOR COURTS |
| 4.14 | PACKAGE AND VISITOR SCREENING |

## 5.00 INMATE COMMUNICATIONS

| SOP NUMBER | SUBJECT |
|---|---|
| 5.01 | MAIL |
| 5.02 | TELEPHONE |
| 5.03 | VISITATION/FACILITY VISITORS |
| 5.04 | EMERGENCY MESSAGES TO INMATES |

D-000000011

# 6.00      INMATE MEDICAL AND HYGIENE

| SOP NUMBER | SUBJECT |
|---|---|
| 6.01 | MEDICAL SERVICES |
| 6.02 | MEDICAL SERVICE FEES & APPLICABLE COSTS |
| 6.03 | PRELIMINARY HEALTH SCREENING |
| 6.04 | TRANSPORTATION FOR MEDICAL CARE |
| 6.05 | MEDICATIONS/PHARMACEUTICALS |
| 6.06 | INMATE HYGIENE |
| 6.07 | ISSUANCE OF INMATE UNIFORMS, LINEN, AND HYGIENE ITEMS |
| 6.08 | SUICIDE WATCH |
| 6.09 | CONTAGIOUS DISEASES |

# 7.00      INMATE PROGRAMS

| SOP NUMBER | SUBJECT |
|---|---|
| 7.01 | INMATE PROGRAMS |
| 7.02 | INMATE RECREATIONAL ACTIVITIES |
| 7.03 | LAW LIBRARY |
| 7.04 | RELIGIOUS SERVICES AND PRACTICE BY INMATES |
| 7.05 | MARRIAGES |
| 7.06 | COMMISSARY |

# 8.00      MISCELLANEOUS PROCEDURES

| SOP NUMBER | SUBJECT |
|---|---|
| 8.01 | INMATE REQUEST FORMS |
| 8.02 | RELEASE/DESTRUCTION OF INMATE PERSONAL PROPERTY |
| 8.03 | SAFETY AND SANITATION SERVICES |
| 8.04 | WAREHOUSE |
| 8.05 | ASSESSABLE INMATE FEES |
| 8.06 | JAIL COMMENTS COMPUTER SCREEN |

D-000000012

# 9.00     GRIEVANCES AND DISCIPLINE

SOP NUMBER       SUBJECT

9.01       INMATE GRIEVANCES
9.02       DISCIPLINE (DUE PROCESS)

# 10.00     TRANSFER AND RELEASE

SOP NUMBER       SUBJECT

10.01       BONDS
10.02       TRANSFER OR RELEASE OF INMATES
10.03       VICTIM NOTIFICATION REPORTS

# 11.00     EMERGENCY PROCEDURES

SOP NUMBER       SUBJECT

11.01       RIOT OR DISORDER
11.02       FIRE (EVACUATION PLAN)
11.03       ESCAPE
11.04       ATTEMPTED SUICIDE, SUICIDE, OR DEATH OF AN
               INMATE IN CONFINEMENT
11.05       HOSTAGES
11.06       BOMB THREAT
11.07       DISASTER

# 12.00     CONTRACTORS/VOLUNTEERS

SOP NUMBER       SUBJECT

12.01       FOOD SERVICE
12.02       MAINTENANCE
12.03       CONTRACTORS AND VOLUNTEERS

D-000000013



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   GOALS AND OBJECTIVES**
**SOP NO:   1.01**                                   **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:   None**
**APPLICABLE ACA STANDARD NUMBER:   None**
**DATE CREATED:      OCTOBER 15, 1986    LATEST UPDATE:      September 6, 2011**

## POLICY:

The Jail Administrator shall by authority of the Sheriff, ensure the detention facility is in compliance with federal law, state statute, county ordinance, and any other lawful rule or regulation. The Jail Administrator shall establish through policy and procedure, the appropriate objectives and goals to continue the safe and secured operation of the facilities.

## PROCEDURES:

1.   <u>Resource</u>:

The Jail Administrator shall keep abreast of changes in current case law, legal opinion, new technology, and training, to ensure division policies, procedures, and operations are modified accordingly.

2.   <u>Goals and Objectives</u>:

a.        To ensure a safe environment for staff and inmates, while enhancing the protection of the surrounding community.

b.        To use an inmate classification system which provides an orientation period along with safe and constitutional housing assignments.

c.        To ensure effective communication between staff and inmates.

d.        To maintain a competent staff.

e.        To have effective supervision over the inmates.

f.        To ensure staff members act in a just and fair manner when dealing with the public, inmates and other agency personnel.

g.        To ensure there is effective control over the inmates.

D-000000014

**SOP NO: 1.01        GOALS AND OBJECTIVES**

h.        To use available administrative practices to ensure a manageable and cost-effective operation.

i.        To establish staff ownership of the facilities.

j.        To ensure all inmates are processed into the facilities in a humane and efficient manner.

k.        To provide adequate health care, food service, and other inmate programs.

l.        To allow inmates to submit requests and grievances.

m.        To maintain procedures for the safe evacuation of the facilities and its operation during an emergency situation.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
**Implemented on: January 04, 2012**

---

**SUBJECT:   NEW EMPLOYEE ORIENTATION AND EVALUATION**
**SOP NO:    1.02                                    GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:    None**
**APPLICABLE ACA STANDARD NUMBER:    7B-01, 02, 10**
**DATE CREATED:       OCTOBER 15, 1986     LATEST UPDATE:       September 6, 2011**

## POLICY:

The Jail Administrator shall ensure all employees successfully complete orientation training prior to assignment to this Bureau. Each new employee shall receive established training through the Special Operations Division (SOD) Jail Correctional Officer program.

## PROCEDURES:

1.   Orientation:

     Each new employee shall be assigned to the Special Operations Division Jail Training Team for a prescribed period of time to be determined by the Special Operations Division Commander and the Jail Administrator. While assigned to the training team, the training supervisor shall ensure that each new employee is oriented on the day to day functions of the Jail Bureau, its Standard Operating Procedures (S.O.P.), Post Instructions, as well as the Sheriff's Office Rules and Regulations. While assigned to the training team, the training supervisor shall provide each new employee with the most recently adopted Jail Division Standard Operating Procedures Manual for the employees own personal reference.

2.   Training:

     During the orientation period, each new employee shall receive on the job training related to the duties and/or tasks of their job classification. The training supervisor or his/ her designee, shall be responsible for documenting and reviewing this training with the employee in an effort to keep the employee abreast of their progress over the course of the orientation period.

3.   Evaluation Process:

     Upon transfer to the Justice Bureau and assignment to an operational Security team, each new employee shall be evaluated by a team supervisor monthly. The employee's immediate supervisor shall forward the evaluation through the chain of command to the Jail Administrator for review.

D-000000016

**SOP NO: 1.02        NEW EMPLOYEE ORIENTATION AND EVALUATION**

4.    <u>Unacceptable Performance:</u>

When the supervisor has identified and documented unacceptable performance, the supervisor shall take corrective measures which may include additional training in an attempt to correct the employee's unacceptable performance. When these corrective measures fail to improve the employee's job performance, it may be cause for the employee's dismissal, subject to the approval of the Sheriff or his/her designee.

5.    <u>Administration of Keys, Identification & Security Access Cards</u>

The S.O.D. Training Supervisor or his/her designee, shall be responsible for the initial issuance of all keys, identification & security access cards to new employees of the division. He/she shall take all necessary steps to coordinate with the Special Operations Division Quartermaster to effectuate this duty.

The Special Operations Commander, or his/her designee, shall be responsible for the issuance of all keys, identification & security access cards to any contractor or contract employee working within the division. He/she shall take all necessary steps to coordinate with the Quartermaster to effectuate this duty.

Any employee having lost or damaged an issued key, identification or security access card, shall in a timely manner prepare an incident report detailing the circumstances of such loss or damage. A copy of this report shall be forwarded through his/her Chain of Command to the Quartermaster. All replacement keys, identification and security access cards for Jail Operations Division employees shall be obtained from the Special Operations Division.

Employees of this Bureau are reminded that keys, identification & security access cards are county property, and misuse or failure to maintain county property is punishable under Sheriff's Office Rules & Regulations. Furthermore, there are fees required for issuance of replacement keys, identification and security access cards. Any employee who fails to maintain his/her issued county property and thereby makes him/herself unavailable for duty shall be subject to disciplinary action.

D-000000017



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **CHAIN OF COMMAND** | |
| **SOP NO:** | **1.03** | **GA. LAW: None** |

**APPLICABLE GSA STANDARD NUMBER:**   1.07
**APPLICABLE GSA STANDARD NUMBER:**   None
**DATE CREATED:**   OCTOBER 15, 1986   **LATEST UPDATE:**   September 6, 2011

**POLICY:**

The staff of the Clayton County Detention Facilities shall follow an established Chain of Command concerning requests, reports, grievances, instruction, training, personnel issues, and other related areas. A Chain of Command is used to ensure operational efficiency and uniformity in supervision.

**PROCEDURES:**

1. <u>Compliance with Chain of Command:</u>

   a. All employees shall follow the Chain of Command beginning with the most immediate rank or position first before consulting the next higher rank or position.

   b. For those employees who feel circumstances justify bypassing the Chain of Command, the Jail Administrator shall maintain the same "open door policy" as established by the Sheriff. However, personnel shall not use any open door policy as a means to avoid authority.

2. <u>Rank/Position Order:</u>

   a. All employees placed in acting supervisory status shall assume all responsibilities, duties and authority of that position.

   b. Unless otherwise noted, the accepted Chain of Command for employees of the Justice Bureau, Jail Operations Division is as follows:

      1- Deputy Sheriff, Correctional Officer, Civilian
      2- Sergeant, Correctional Sergeant, Civilian Supervisor
      3- Lieutenant, Correctional Lieutenant
      4- Captain
      5- Major
      6- Assistant Chief Deputy
      7- Chief Deputy
      8- Sheriff

D-000000018



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   RELEASE OF INFORMATION**
**SOP NO:    1.04**                      **GA. LAW: O.C.G.A. 50-18-70**

**APPLICABLE GSA STANDARD NUMBER:   1.09, 1.10**
**APPLICABLE ACA STANDARD NUMBER:   None**
**DATE CREATED:     OCTOBER 15, 1986     LATEST UPDATE:     September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facilities shall comply with all state statutes governing the release of information concerning the facilities and its inmates. The information shall be given accurately and promptly to those inquiring about the information.

## PROCEDURES:

1.   <u>Criminal Charges and Bond Information:</u>

     Employees can give information regarding the name, criminal charges and bond amounts of inmates who are currently incarcerated. Such requests may be made orally or through written correspondence or by telephonic means,

2.   <u>News Media Information:</u>

     Employees shall forward requests for information from the news media to an on-duty Supervisor. The Supervisor will respond to the request as authorized by the Sheriff or his designee.

3.   <u>Requests for Information Under the Open Records Act:</u>

     All requests for information shall be directed to the Chief of Staff, who shall respond to the request as directed by the Sheriff or his or her designee.

     **Note:** The Sheriff's Docket of Prisoners is Public Record and may be inspected by anyone at any reasonable time. Persons wishing to inspect the docket must come to the jail as referred to in section 2.16 of the Sheriff's Office Jail Standard Operating Procedures.

D-000000019

**SOP NO: 1.04**          **RELEASE OF INFORMATION**

All requests for information regarding any inmate's medical condition, whether currently or formerly incarcerated, shall be forwarded to the Chief of Staff for processing. The Administrative Officer shall respond to the request as appropriate, upon consultation with the Medical Records custodian and at direction of the Jail Administrator or his/her designee. Any complaints, or inquires of an urgent nature regarding an inmate's health shall be immediately forwarded to the on-duty Watch Commander for handling.

With the exception of inquiries regarding names, charges and bond amounts, it is desired and encouraged that all requests for information be made in writing and addressed to the Sheriff's Custodian of Records. However, this is not required by law. Any oral requests for information received by an officer of this division shall be immediately reduced to writing by that officer, with time and date of the request recorded on this writing, and the name and employee number of the officer receiving the request also recorded. The officer shall specify the identity of the requestor, the specific information requested, and the contact information where any response may be made. The officer shall immediately forward such writing to the appropriate entity, as is necessary, according to the above procedures.

4.    Employee Information

No information of any kind regarding any employee of this Office is to be disseminated to any third party by any other employee of this division, except by the expressed consent of the employee who is the subject of the request. All inquiries regarding any employee of this agency shall be forwarded to the Special Investigations Section for handling. Where possible, any requestor seeking information on any employee shall be referred to the Special Investigations Section. Employees are reminded that, under Sheriff's Officer Rules & Regulations, you are required to provide your own name and employee number upon request, to anyone making such a request.

D-000000020



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   INCIDENT REPORTS**
**SOP NO:   1.05**                                    **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:   None**
**APPLICABLE ACA STANDARD NUMBER:   2B-05, 3A-01**
**DATE CREATED:   OCTOBER 15, 1986   LATEST UPDATE:   September 6, 2011**

**POLICY:**

The staff of the Jail Bureau shall use Incident Reports to accurately document incidents in the detention facilities in an effort to ensure uniformity and compliance with all applicable departmental policies and procedures.

**PROCEDURES:**

1.   Incident Reports:

This report shall be used for all incidents in which criminal charges may be obtained or an investigation conducted, and any other unusual occurrences, requiring an officer's documentation as directed by a supervisor.  All reports shall be typed and submitted for review to the officer's immediate supervisor. All reports are to be submitted and approved on the date in which the incident occurred.

2.   Incident Reports shall contain the following information:

a.        Case Number

b.        Incident Type

c.        Premise Type

d.        Incident Date and Time

e.        Incident Location

f.        Reporting Officer

   i.        Name
   ii.       Rank
   iii.      Employee Number

D-000000021

**SOP NO: 1.05          INCIDENT REPORTS**

g.          Offender(s)

h.          Victim(s)

i.          Jurisdiction

j.          Charge(s)

k.          Action Taken

l.          Witnesses

m.          Other Officer(s) Witness

n.          Evidence/Property (Brief Description)

o.          Drug Related Yes/No (if yes what type of drugs)

p.          Cleared By

q.          Narrative

        i.      Who was involved in the incident (inmates and/or employees)
        ii.     What Offense, violation, or action has occurred (in detail)
        iii.    When the incident occurred.
        iii.    Where the incident occurred
        iv.     Why (situation happened)

r.          Signatures of all approving supervisors

3.     <u>Dissemination of Reports:</u>

The approving supervisors shall ensure a signed original is made of the incident report. The original shall be forwarded to records, one copy shall be stored in the employee's file, and the last copy shall be placed in the offenders file. If applicable, copies are to be placed in the institutional file of all inmates involved.

D-000000022



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   JAIL MISCELLANEOUS INCIDENT REPORTS**
**SOP NO:     1.06**                                          **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:   21.04, 21.05**
**APPLICABLE ACA STANDARD NUMBER:   2B-05, 3A-01**
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

**POLICY:**

The staff of the Clayton County Sheriff's Office shall use the Jail Miscellaneous Report Form to accurately document incidents involving inmates, instances in which officers use the security computer's interlock override system, or any other incidents not meeting the established criteria for an Incident Report.

**PROCEDURES:**

1.    Uses of the Jail Miscellaneous Incident Report Include:

       a.    Incidents involving inmates that require detailed information.

       b.    Any minor incidents worthy of documentation but not necessarily meeting the criteria for an Incident Report.

       c.    Instances in which officers use the interlock override of the facility's security systems.

2.    A Jail Miscellaneous Incident Report shall contain the following information:

       a.    The Reporting Officers' Identity:

              i.      Name
              ii.     Rank
              iii.    Employee Number

D-000000023

    b.       Information concerning the Incident:

            i.       Who was involved in the incident (inmates and/or employee(s))
            ii.      What type of incident or action has occurred (in detail)
            iii.     When the incident occurred specifying the date and time.
            iv.     Where the location of the incident occurred in descriptive form.
            v.       Why an interlock override was used (if applicable)
            vi.     Any facility rules that were violated by an inmate (if applicable)

**SOP NO: 1.06**        **JAIL MISCELLANEOUS INCIDENT REPORTS**

    c.       Approving supervisor's signature

3.    <u>Dissemination of Reports:</u>

The approving supervisors shall ensure that at least two (2) copies of the report(s) are made, (1 original and 1 photo copy.) The approving supervisor shall also ensure that one (1) photo copy is placed in the inmate(s) jail file when appropriate, and the remaining original is forwarded through the employee's chain of command to the Jail Administrator's Office for review. Upon review by the Jail Administrator or his or her designee, the Administrative Officer shall file the original copy in the reporting officer's report folder.



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

---

**SUBJECT:    REVISIONS AND REVIEWS OF THE JAIL DIVISION S.O.P. MANUAL**
**SOP NO:     1.07**                                        **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:    1.04, 1.05**
**APPLICABLE ACA STANDARD NUMBER:    7D-01**
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The Jail Administrator shall, under the authority of the Sheriff, use an established review process which ensures the consistency of policies and procedures within the Justice Bureau Standard Operating Procedures (S.O.P.) Manual. The process shall incorporate revisions to the policies and procedures affected by departmental needs and changes in current Georgia law. Revisions shall be forwarded to all personnel to maintain an effective S.O.P. Manual.

**PROCEDURES:**

1.    Reviews/Revisions:

      The Jail Administrator or his/her designee shall conduct all reviews and revisions of the Jail Division S.O.P. Manual, to ensure compliance with the current laws and division operations.

      a.    Reviews of the S.O.P. Manual shall be conducted once annually or whenever deemed necessary by the Sheriff or his/her designee.

      b.    Suggested revisions of the S.O.P. Manual shall be forwarded to the Jail Administrator for his/her review and approval. Any revision approved by the Jail Administrator shall be forwarded to the Chief Deputy for review prior to final approval by the Sheriff.

2.    Dissemination/Inspection of S.O.P. Manuals:

      a.    All Jail Division employees shall receive a current copy of the S.O.P. Manual upon assignment to the Jail Operations Division.

      b.    All issued revisions shall be disseminated to each Jail Division employee.

      c.    The Jail Administrator or his designee shall inspect all subordinate Supervisors S.O.P. Manuals on at least an annual basis to ensure they have maintained them in proper order.

D-000000025

**SOP NO: 1.07          REVISIONS AND REVIEWS OF THE JAIL DIVISION SOP MANUAL**

d.          Jail Division Supervisors shall be responsible for conducting annual inspections of the S.O.P. Manuals for all of his/her subordinate employees.

3.          <u>S.O.P. Manual Archives:</u>

a.          The Jail Administrator or his/her designee shall retain a master copy of the S.O.P. Manual, to include old and new revisions.

b.          The Jail Administrator or his/her designee, shall be responsible for documenting the dissemination of all S.O.P. Manuals and revisions

D-000000026



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   IDENTITY OF ESCORTING OFFICER**
**SOP NO:    2.01                                    GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:   8.21, 8.22, 8.23, 10.01**
**APPLICABLE ACA STANDARD NUMBER:    2A-14**
**DATE CREATED:     OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facilities shall ensure the proper identification of escorting officers. No individual shall be admitted into the custody of any facility under the control of the Sheriff unless we have properly identified the officer escorting the person.

## PROCEDURES:

1.   Request:

   If the admitting officer has any question as to the true identity of the escorting officer, the admitting officer shall require the escorting officer to produce the following identification:

   a.   A badge and a photo ID for the law enforcement officer, showing unit/employee number and signature of the agency head.

   b.   Other identification as the admitting officer deems necessary to establish positive identification.

2.   Refusal:

   If the escorting officer does not produce proper identification, or if the identification produced does not conform to the officer's person, the admitting officer shall immediately report this to his or her supervisor who shall decide to accept or deny the escorting officer's access to the facility.

3.   Reporting:

   Any refusal to admit an escorting officer into the facility shall have the circumstances surrounding the incident documented on a Jail Miscellaneous Incident Report (Justice Bureau SOP 1.06).

D-000000027



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   CONDITION OF INMATES**
**SOP NO:    2.02**                              **GA. LAW: 42-4-12**

**APPLICABLE GSA STANDARD NUMBER:    10.01**
**APPLICABLE ACA STANDARD NUMBER:    4C-04, 09**
**DATE CREATED:     OCTOBER 15, 1986     LATEST UPDATE:     September 6, 2011**

## POLICY:

No person shall be admitted to the detention facility in an unconscious state unable to answer the required booking question(s) in a coherent manner, nor with any evidence of serious illness or injury without first having obtained proper medical services. Refusal of any escorting officer to seek medical attention for any person under arrest shall be cause to refuse acceptance of that person for booking.

## PROCEDURES:

1.   <u>Observation:</u>

The admitting officer shall carefully observe the physical condition and behavior of any persons in custody before accepting the inmate to determine if the inmate:

a.       Appears to be ill in any way,

b.       Appears to be injured in any way,

c.       Is unable to give their name and address in a coherent manner,

d.       Is unable to walk under their own power,

e.       Has a card, necklace, bracelet, etc., indicating they are diabetic or epileptic,

f.       Appears ill to the point he or she should receive emergency medical treatment.

If they have noticed any of these conditions or unusual behaviors, the admitting officer shall contact the Intake Medical Staff and a Supervisor immediately.

D-000000028

**SOP NO: 2.02          CONDITION OF INMATES**

2.   <u>Serious Injury:</u>

If the injury, illness, or emotional state of the inmate appears serious, the admitting officer shall:

a.     Notify the Intake Medical Staff and his or her superior officer,

b.     Have the Intake Medical Staff immediately assess the inmate's medical condition,

c.     If the Intake Medical Staff deems that the inmate does indeed require immediate medical attention, inquire from the escorting officer if he or she shall seek medical attention for the inmate,

d.     If the escorting officer refuses or otherwise fails to see to the inmate's immediate medical needs, the Supervisor shall request rescue to respond and provide the needed medical attention. The escorting officer shall retain custody and responsibility of the arrested individual.

**Note:** The Supervisor shall ensure an incident report documenting all of the circumstances of each situation and, if possible, photographs of any injuries/wounds.

3.   <u>Refusal to Accept:</u>

A Supervisor and the medical staff shall be jointly responsible for determining to refuse or accept an inmate with a serious medical condition. The Supervisor shall:

a.     In consultation with the medical staff determine the arrested individual's immediate need for medical care.

b.     If the arrested individual has an immediate need for medical care which is not life threatening, the Supervisor shall refuse to accept the inmate and direct the escorting officer to seek medical attention for the inmate prior the acceptance of the inmate.

c.     If the arrested individual has an immediate need for medical care that's possibly life threatening, the Supervisor shall contact the Clayton County Communications Center (911) and request that a rescue unit respond to the detention center for the arrested individual's medical needs. The escorting officer shall retain custody and responsibility of the arrested individual.

d.     The Supervisor refusing to accept an arrested individual in need of medical care shall ensure the completion of a Jail Miscellaneous Incident Report documenting the details surrounding the refusal. The Supervisor shall immediately notify the Jail Administrator or his designee of all cases regarding any refusal to accept an arrested individual who needs immediate medical care.

D-000000029

**SOP NO: 2.02**        **CONDITION OF INMATES**

4.      <u>Intoxication:</u>

If the inmate's behavior disrupts the intake process, and it appears to be caused by the use of drugs or alcohol, the admitting officer shall:

a.      Have the Intake Medical Staff complete the medical screening sheet,

b.      Place the inmate in a Holding Cell to sober up prior to completing ID processing,

c.      Carefully observe the inmate for medical problems,

d.      Notify medical staff to check inmate and take any medical action necessary.

5.      <u>Medical Screening:</u>

The Intake Medical Staff must obtain medical screening information from each inmate in writing on the appropriate form.

D-000000030



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   INTOXIMETER TESTS**
**SOP NO:   2.03**                              **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:   None**
**APPLICABLE ACA STANDARD NUMBER:   None**
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

## POLICY:

To ensure a standard of operations for an Intoximeter and to give guidelines that shall conform to all State standards.

## PROCEDURES:

1.   Certification:

Only certified operators shall conduct any Intoximeter tests.   State issued certificates for all certified Intoximeter operators shall be available for inspection.

2.   Tests:

Licensed Intoximeter Operators shall log all valid Intoximeter test results and refusals in the Intoximeter Log Book.

3.   Malfunction:

Any malfunction or "down time" of the Intoximeter shall be reported to the Intake Supervisor. The Intake Supervisor shall notify the Jail Administrator or his designee in writing of the malfunction along with a printout of the malfunction code, and make all necessary steps to have the Intoximeter returned to working condition.

4.   Notifications of down time:

The Watch Commander shall insure all outside agencies are notified in the event the Intoximeter is inoperable.

D-000000031



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

---

**SUBJECT:   LEGALITY OF COMMITTAL DOCUMENTS**
**SOP NO:      2.04**                                          **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:      10.01**
**APPLICABLE ACA STANDARD NUMBER:      2A-13**
**DATE CREATED:        OCTOBER 15, 1986       LATEST UPDATE:      September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facilities shall not accept any person into custody without clear and documented legal authority.

## PROCEDURES:

1.      Request:

   After a review of the escorting officer's identification, the admitting officer shall obtain from the escorting officer the committal documents authorizing custody.

2.      Review:

   The admitting officer shall review the committal documents.  The approved committal documents are:

   a.      A writ/order by the court for execution of a sentence;

   b.      Court orders or orders from the Attorney General of Georgia specifying the detention of State witnesses;

   c.      A notarized Warrantless Arrest Probable Cause Affidavit;

   d.      Arrest Warrants from Georgia counties, or Municipal Courts;

   e.      Transfer papers or hold orders from the Federal Bureau of Prisons or the Georgia Department of Corrections;

   f.      Bond forfeiture papers approved by the Clerk of Courts;

   g.      Warrants signed by the arresting officer or a teletype indicating an outstanding warrant (with warrant number).

D-000000032

**SOP NO: 2.04          LEGALITY OF COMMITTAL DOCUMENTS**

h.      Copy of City Citation(s) or Summon(s).

i.      Bind-over from any other agency shall be accepted on any type of legal committal document.

D-000000033



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:    MANAGEMENT OF JUVENILES**
**SOP NO:    2.05**                                    **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:    6.06, 10.06**
**APPLICABLE ACA STANDARD NUMBER:    2A-17, 19, 20**
**DATE CREATED:        OCTOBER 15, 1986      LATEST UPDATE:        September 6, 2011**

**POLICY:**

To prevent exploitation, we will not house juveniles with adults. The only time juveniles will be accepted at a Clayton County Detention Facility is by the authority of a Court Order executed by a Superior Court Judge. Juveniles, unless otherwise directed by an Order of the Court, shall at all times be separated by sight, sound, and touch from adult inmates.

**PROCEDURES:**

When an inmate professes to be a juvenile (any individual less than 17 years of age) and is not being held by an Order of the Court to be treated as an adult, or when a credible source may identify an inmate as a juvenile, the first officer who hears or receives such a report shall observe the following steps:

1.    <u>Separation:</u>

       Segregate the juvenile from the adult inmates immediately.

2.    <u>Notification:</u>

       Notify the Watch Commander that an inmate in custody could possibly be a juvenile.

3.    <u>Investigation:</u>

       The Officer shall attempt to determine the true age of the inmate by:

       a.    Question the inmate;

       b.    Obtain from the inmate the names, addresses, and telephone numbers of parent(s), Guardian(s), or relatives, who may confirm the inmate's age;

       c.    Telephone the person(s) named by the inmate and advising them, the inmate is in custody and asking them to verify the inmate's age.

D-000000034

**SOP NO: 2.05        MANAGEMENT OF JUVENILES**

4.    <u>Adult Confirmation:</u>

If the inmate is determined to be at least seventeen (17) years of age by the person(s) contacted or other means, we shall make a written report to include all information obtained, and we shall classify the inmate normally.

5.    <u>Juvenile Confirmation:</u>

If the person(s) contacted confirms that the inmate is less than seventeen (17) years of age, we shall notify the arresting agency immediately. The arresting agency shall immediately transport the juvenile to the Regional Youth Development Center. We shall turn over the original committal documents and charges to the arresting agency. Should the individual's true age remain in doubt, we shall conduct further investigation while the inmate remains segregated to obtain proper documentation to support the inmate's true age.

6.    <u>Reporting:</u>

A Jail Incident Report shall be completed to include all information obtained and actions taken.

D-000000035



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:** | **SEPARATION OF FEMALE INMATES** |
| **SOP NO:** | **2.06** | **GA. LAW: None** |

**APPLICABLE GSA STANDARD NUMBER:**   5.03, 11.02, 11.05
**APPLICABLE ACA STANDARD NUMBER:**   2A-05, 10
**DATE CREATED:**   OCTOBER 15, 1986   **LATEST UPDATE:**   September 6, 2011

**POLICY:**

Female inmates shall be separated from male inmates from the point of entry into the Detention Facility until the time of release.

**PROCEDURES:**

1.   <u>Staff:</u>

Only a female officer may perform those parts of the admitting process which require searching of a female inmate. All other intake procedures can be completed by any officer/deputy.

2.   <u>Separation:</u>

Female inmates shall be placed in the intake waiting area/holding cells designated for females.

3.   <u>Population:</u>

Separation of male and female inmates shall be adhered to in daily operations, inmate programs and services.

4.   <u>Movement:</u>

Female inmates shall be escorted by staff when outside of the female housing unit or Intake area.

D-000000036



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:    **CONFISCATION OF INMATES' MONEY AND PERSONAL PROPERTY**
SOP NO:    **2.07**                              **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:    2.05, 10.01**
**APPLICABLE ACA STANDARD NUMBER:    2A-14**
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facilities shall respect all inmates' personal property and handle it with care to prevent loss or damage.

## PROCEDURES:

1.    Confiscation:

   The admitting officer shall, during the initial booking procedure, conduct a frisk search and confiscate all personal property of the newly admitted inmate(s), including:

   a.    Money/checks,

   b.    Belts, ties, hats, jackets, coats,

   c.    All contents of the inmate's pockets,

   d.    Other items not part of the inmate's clothing (e.g., purses, backpacks, key chains, watches, jewelry, check books, etc.).

2.    Description:

   The Intake Security officer shall secure and place in a plastic bag all items confiscated from the inmate. Any damage to confiscated property shall be documented in detail on the Inmate's Personal Property Inventory Form done by the contracted staff.

3.    Plastic Bag:

   All items shall be placed in a plastic property bag and turned over to the contracted staff. If any item is too large, the Intake Security Officer shall attach a property tag to the item. The officer shall note the inmate's name and date of admission on the property tag.

D-000000037

**SOP NO: 2.07**        **CONFISCATION OF INMATE'S MONEY AND PERSONAL PROPERTY**

4.  Jewelry

   a.  The Intake Security Officer shall photograph any large amount of jewelry taken from a newly admitted inmate.

   b.  All inmate jewelry shall be separately secured within a smaller envelope and sealed before being placed into a property bag, listing the contents, inmate's name, and date of admission on the face of the envelope.

5.  Signatures:

   The Property Clerk and the inmate shall sign and date the Personal Property Form. If the inmate refuses to sign, the property clerk shall secure another employee as a witness. The  other employee shall sign his name and date with the notation, "inmate refused to sign."

6.  Sealing and Storage:

   The Property Clerk shall seal the jewelry envelope and enclose it inside the plastic bag containing the remainder of the inmate's property. Staff shall then seal the plastic bag with the Personal Property Form inside and store it in a secure area until taken into the Property Room for re-inventory and extended storage.

7.  Money:

   The security officer shall confiscate the inmate's money and count it in the inmate's presence. The money shall be sealed in a money receipt envelope with the receipt completed and the amount recorded on the money denomination form and money log form along with two witnessing officer's initials and employee number. The inmate shall be given a receipt of their money. The yellow envelope with the money shall be temporarily stored in a locked box and later turned over to the Accounting Section to be placed on the inmate's account. All payroll checks shall be inventoried and placed in the inmate's personal property.

8.  Personal Clothing:

   a.  Personal clothing shall be confiscated at the time the intake process is complete and the inmate has not made bond.

   b.  The officer that completes the dress out procedure shall inspect each item of clothing for contraband.

   c.  Each item of clothing shall be listed on the Property Inventory Form and described accurately to include brand name. The property clerk and inmate shall both sign this form. If the inmate refuses to sign, the clerk should take the same steps as with the property bag.

D-000000038

**SOP NO: 2.07          CONFISCATION OF INMATE'S MONEY AND PERSONAL PROPERTY**

    d.     Clothing items shall be turned over to the property room staff. The clothing and personal property shall be placed in a property bag and sealed. The sealed property bag shall be placed in the numbered slot of the shelving system that corresponds to the number of the bag. Example: Bag #245 B shall go on the storage shelf marked B slot #245, and so forth.

**NOTE:** All Excess property received for an inmate shall be processed in accordance with S.O.P. 08.02 (Release/Destruction of Inmate Property).

1.    <u>Property Received:</u>

    a.     Inmate personal property or clothing shall only be accepted into the facility when approved by a Supervisor for court attendance purposes or medical reasons when recommended by medical personnel. Periodically there are inmates in custody who are too large in size to fit in a county issued uniform. In such instances, Supervisors may exercise their discretionary authority to allow clothing to be brought in for the inmate to wear while in custody.

    b.     An individual wishing to leave personal property or clothing shall report to the Visitation Desk where they must provide photo identification to the Visitation Officer to be maintained in the inmate's file.

    c.     The receiving officer shall search the personal property or clothing for contraband prior to its acceptance.

    d.     The following shall be annotated on the copy of the identification: date and time the items were left, the signature and employee number of the receiving employee, and a list of the items accepted. (Example: clothing for court or funeral attendance, eyeglasses, contacts solution, etc.)

    e.     Items such as contact lens solution, eye glasses, medicines, etc. will be given to the inmate by qualified medical personnel when appropriate at the time(s) or interval(s) recommended by the medical staff.

            Note: Any medicine must be received by the medical staff-security staff will not accept medicine unless medical staff is not reasonably available and then it must be received by a Supervisor.

D-000000039



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   FRISK SEARCH**
**SOP NO:     2.08**                                    **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:**   5.03, 10.01, 10.08, 10.09, 12.06, 16.16, 23.4
**APPLICABLE ACA STANDARD NUMBER:**    2A-14, 2C-01
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

## POLICY:

Staff members of the Clayton County Detention Facility shall make every reasonable effort to prevent the introduction of contraband and weapons into the facility while inspecting persons and property of persons being admitted.

## PROCEDURE:

1.   <u>Frisk Search:</u>

When an officer has accepted an inmate into custody, the officer shall immediately conduct a frisk search of the inmate. The officer shall conduct this before placing the inmate in a holding cell or the waiting area, to detect if any contraband articles or weapons are concealed on the inmate. All inmates returning from outside the secure perimeter of the jail facility shall, be at a minimum frisk searched. Those inmates which are not under constant Sheriff's Office Detention staff supervision shall be striped searched.

2.   <u>Conduct:</u>

A member of the Detention Staff of the same sex as the inmate shall conduct the search. Under no circumstances shall an officer make any personal remarks about the inmate being frisk searched concerning his or her person, attire, or physical attributes.

3.   <u>Contraband:</u>

In the event contraband is found on an inmate, the officer shall conduct a strip search, following the procedures listed in SOP 2.09.

D-000000040



# CLAYTON COUNTY SHERIFF'S OFFICE
## JAIL DIVISION
## STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   STRIP SEARCHES** | |
| **SOP NO:    2.09** | **GA. LAW: None** |
| **APPLICABLE GSA STANDARD NUMBER:** | **5.03, 10.08, 10.09, 10.10, 10.11, 10.12, 12.06. 16.16, 23.04** |
| **APPLICABLE ACA STANDARD NUMBER:** | **2C-02, 03** |
| **DATE CREATED:      OCTOBER 15, 1986** | **LATEST UPDATE:      September 6, 2011** |

## POLICY:

Officers shall conduct strip searches to maintain security. The staff shall conduct the search with the greatest degree of dignity and privacy possible for the inmate. Strip searches shall be performed only by officer(s) of the same sex. Strip searches shall be conducted only upon approval of a Shift Supervisor. No personal remarks shall be made regarding the inmate's personal or physical characteristics.

## PROCEDURES:

1.   Explanation:

   The searching officer shall explain the search procedure to the inmate so he or she knows in advance the reason for the search and how it shall proceed.

2.   Precautions:

   Officer(s) performing strip searches shall use reasonable precautions necessary to prevent the spread of any disease that may be confronted during the search. The use of gloves shall be mandatory during these searches.

3.   Searches:

   Strip searches will be conducted when:

   a.   Reasonable suspicion exists, which can include but is not limited to:

      i.      Past or present drug or weapon charges

      ii.     The inmate appears to be under the influence of illegal drugs

   b.   Inmates returning from outside detail which are not under direct supervision of Sheriff's Office Detention Officer's.

D-000000041

**SOP NO: 2.09          STRIP SEARCHES**

     c.      Inmate dress out for housing within the facility.

Caution - At no time will an officer make any attempt to remove items from within a body orifice. Should the occasion arise that warrants further intrusion other than visual inspection will proceed in accordance with SOP 2.10 (Body Cavity Search)

4.      <u>Articulation of Reasonable Suspicion by Arresting Officer:</u>

Arresting officers requesting for an inmate to be strip searched, shall articulate the reasonable suspicion to a Shift Supervisor for his or her review before an officer conducts the search.

     a.      Arresting officer maybe present during the search, unless the inmate is of the opposite sex. If the arresting officer is not the same sex as the inmate, the officer shall remain just outside the room and an additional officer from the shift shall assist with the search.

5.      <u>Contraband:</u>

Admitting officers discovering contraband on an inmate's person shall immediately process the contraband in accordance with procedures listed in SOP 4.02. However, evidence shall be turned over to the arresting officer if the contraband violates state law or if the search was requested by the arresting officer or agency.

6.      <u>Reporting:</u>

The appropriate incident report shall be submitted through the chain of command to the Jail Administrator or his designee whenever a strip search is conducted. If the arresting officer has left the immediate area and contraband is found, the officer finding the contraband shall take appropriate charges if applicable. (Refer to SOP 03.02 - Work Release, for procedures regarding the reporting of strip searches conducted at the Alternative Detention Facility.)

To conduct a strip search (visual search of the inmate's body) detention staff shall follow the steps listed in the most humane, respectful and professional manner possible.

a.  Instruct the inmate to remove his/her clothing. As each article of clothing is removed, the inmate is to hand it to the detention staff so that it may be checked for contraband.

b.  After the inmate is undressed, examine his/her body for any type of tape or bandages that may conceal contraband. If a bandage is removed, it should be replaced by a fresh bandage.

c.  Instruct the inmate to lean forward so the detention staff can run his or her hands through their hair.

d.  Direct the inmate to turn so his/her left side is facing the officer. Instruct the inmate to lean

D-000000042

**SOP NO: 2.09          STRIP SEARCHES**

toward the officer in order for the area inside and behind his ears to be examined with the aid of a flashlight for illumination. Repeat this process with the right ear.

e.  Direct the inmate to face the officer and tilt his head back so the nostrils can be checked.

f.  Instruct the inmate to bend his/her head down, open his mouth and wiggle his tongue back and forth. Ask the inmate if he/she wears dentures. If dentures are worn, tell the inmate to remove them so the dentures and mouth can be checked.

g.  Have the inmate raise his/her arms so the armpits can be checked with aid of a flashlight for illumination.

h.  Inspect both inmate's hands including between the fingers and under the nails.

i.  Instruct the inmate to face away from officer(s) and spread his or her rear end to cheeks so that it can be viewed with the aid of a flashlight for illumination.

j.  Male(s) only; Instruct the inmate to raise his testicles so the groin area can be checked. Both male and female inmates will be instructed to squat and cough.

k. Examine the bottom of the inmate's feet and between the toes by having the inmate raise one foot at a time.

l. Return the inmates clothing or issue uniform so he/she can redress.

m.  A minimum of two staff members shall be present during the strip search of an inmate. Documents will reflect the officers present during the search of an inmate either by appropriate log or report.

 n. The inmate being searched will not be subjected to being seen by other inmates during the search.

o.  Any contraband located during the search is to be handled in accordance with SOP 4.02.

D-000000043



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   BODY CAVITY SEARCHES** | |
| **SOP NO:      2.10** | **GA. LAW: None** |

**APPLICABLE GSA STANDARD NUMBER:**   5.03, 10.10, 10.11, 10.12
**APPLICABLE ACA STANDARD NUMBER:**   2C-04
**DATE CREATED:       OCTOBER 15, 1986      LATEST UPDATE:       September 6, 2011**

**POLICY:**

When sufficient probable cause is given, cavity searches shall be conducted to maintain security. The staff shall insure the search is conducted with the greatest degree of dignity and privacy possible for the inmate. Cavity searches shall be conducted only under the approval of the Jail Administrator. These searches <u>shall not</u> be conducted without a Court Order, the written consent of the inmate or approval from the Jail Administrator. All cavity searches shall be performed by Medical Staff and witnessed by officer(s) of the same sex as the inmate. No personal remarks shall be made regarding the inmate's personal or physical characteristics.

**PROCEDURES:**

Cavity searches shall be considered only when such distinct probable cause exists to warrant this action. Cavity searches shall be performed only upon a court order, the written consent of the inmate or the approval of the Jail Administrator. Cavity searches shall be limited to specific instances where an officer believes an individual has hidden within a body cavity either drugs, contraband, evidence of a crime, or weapons. Such cavity searches are considered a last resort after all other less intrusive means have failed. Prior to any cavity search the following steps shall be completed:

1. Notify a Shift Supervisor of the probable cause which exists prompting the need for a cavity search and to receive authorization and/or direction as to further action.

2. Encourage the inmate to remove the contraband themselves and relinquish it to an officer.

3. Ask the inmate about any medical problems the inmate may have which would inhibit a cavity search.

D-000000044

**SOP NO: 2.10          BODY CAVITY SEARCHES**

4.      Use all available means of investigation that are of a non-intrusive nature, such as an x-ray or an ultrasound.

5.      Have the Medical Staff advise the inmate of the procedure to be used to accomplish a cavity search of their person.

6.      Witnessing officers and all other personnel involved in the cavity search shall submit an incident report through the Chain of Command to the Jail Administrator. If contraband is found during the search, the witnessing officer shall process the contraband in accordance with the procedures listed in SOP 4.02.

D-000000045



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   DELOUSING INMATES
SOP NO:   2.11                                          GA. LAW: None

APPLICABLE GSA STANDARD NUMBER:   15.08
APPLICABLE ACA STANDARD NUMBER:   4C-01, 06
DATE CREATED:       OCTOBER 15, 1986       LATEST UPDATE:       September 6, 2011

## POLICY:

To prevent the introduction of disease and to promote a healthy environment, the staff of the Jail Operations Division shall make every effort to provide inmates infested with body lice or other vermin with the appropriate medical treatment.

## PROCEDURE IN INTAKE:

1.      When an inmate is first admitted to our facility, the Medical Staff shall make an initial examination of the inmate to determine if he or she is suspect of having body lice of other vermin. The inmate will be asked if they presently have, or ever have had body lice or other vermin.

2.      If the Medical Staff is satisfied that the inmate does not have body lice or other vermin, the inmate will not be deloused.

3.      If the Medical Staff suspects that there is a possibility that the inmate has body lice or other vermin, then a thorough examination shall be conducted by the Medical Staff.

4.      The Medical Staff shall take the inmate to the appropriate dress out area and conduct the examination. One officer of the same sex will enter the dress out area with medical staff, acting as security for the nurse.

5.      If the inmate is found to be infested with body lice or other vermin, the Medical Staff shall provide the treatment to the inmate in the dress out room. The Medical Staff shall be responsible for any reporting of incidents of delousing inmates.

## PROCEDURES IN HOUSING:

1.      If it is reported or discovered that any inmate in population is infested with body lice or other vermin, the control officer shall contact the infirmary to have someone from the medical section examine the inmate.

D - 000000046

**SOP NO: 2.11          DELOUSING INMATES**

2.     If the inmate is found to have body lice or other vermin, the entire section shall be decontaminated. All inmates will be deloused and given new linens and uniforms. The contaminated laundry shall be placed into plastic bags and secured, with a note attached identifying the contents as being contaminated. The contaminated bags shall be taken as soon as possible to the laundry to be washed.

D-000000047



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   SURVEILLANCE OF HOLDING CELL/WAITING AREA** | |
| **SOP NO:   2.12** | **GA. LAW: None** |

**APPLICABLE GSA STANDARD NUMBER:   5.01, 8.28, 8.30, 23.01**
**APPLICABLE ACA STANDARD NUMBER:   2A-01, 12**

| | | |
|---|---|---|
| **DATE CREATED:   OCTOBER 15, 1986** | **LATEST UPDATE:** | **September 6, 2011** |

**POLICY:**

The staff of the Clayton County Detention Facility shall monitor the activities of inmates frequently to ensure their safety and well-being while in Intake.

**PROCEDURES:**

1.  Holding for Processing:

    a.   No inmate shall be placed in an Intake Holding Cell or Waiting Area for a period longer than **eight (8) hours**, without the Shift Supervisor's approval.

    b.   Security Staff shall ensure there is always an appropriate number of staff members present to safely accommodate the number of inmates being admitted for processing.

2.  Frequency of Surveillance:

    Security Staff shall visually observe the Holding Cells and Waiting Area as often as possible consistent with the work load and available personnel, but at least **every thirty (30) minutes**.

3.  Suicidal and Violent Inmates:

    a.   If a staff member observes an inmate displaying signs that they are or may become violent, they shall house the inmate in a cell separate from the other inmates for his/her protection until the inmate calms down and can be safely processed.

    b.   If the inmate displays or expresses suicidal tendencies:

        i.   The officer shall notify the Medical Staff who shall interview the inmate.

        ii.   A log shall be kept of the inmate's activities **every fifteen (15) minutes**.

        iii.   Processing is to be completed as soon as possible.

        iv.   Upon dress out the suicidal inmate is to be placed in the Infirmary for observation.

D-000000048



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

---

**SUBJECT:    ARREST/BOOKING REPORT, AND INITIAL COMPUTER ENTRIES**
**SOP NO:    2.13                                      GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:    6.01, 6.02, 6.03, 6.04, 10.01, 10.02**
**APPLICABLE ACA STANDARD NUMBER:    2A-14**
**DATE CREATED:    OCTOBER 15, 1986    LATEST UPDATE:    September 6, 2011**

---

## POLICY:

The staff of the Clayton County Detention Facility shall generate and maintain accurate and complete records on all newly admitted inmates.

## PROCEDURES:

1.    Arrest/Booking Report:

    a.    Arrest/Booking Reports shall be completed on each inmate accepted at the Clayton County Detention Facilities by the arresting officer.

    b.    Security Staff shall verify the information contained on the arrest/booking report with the newly admitted inmate.

2.    Initial Computer Entry:

    a.    The Security Staff shall make a check of the local in-house computer system on each individual arrested and accepted by the Clayton County Detention Facility using the following steps:

        i.    Ask the inmate for the correct spelling of their name, date of birth, social security number and any aliases or nicknames used.

        ii.    Security Staff shall make a check of the local in-house computer system using the information obtained to determine if the inmate has an existing computer entry.

    b.    Security Staff shall make an entry onto the local in-house computer system on each individual accepted into the facilities.

D-000000049

**SOP NO: 2.13**          **ARREST/BOOKING REPORT, AND INITIAL COMPUTER ENTRIES**

    c.    All computer fields where information specific to the individual accepted could be annotated shall be checked to determine any special needs or instructions.

    d.    Computer printout(s) of the inmate's biographical information and dispositions of current charges shall be made on each inmate and maintained in the inmate's file.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **INMATE ID PROCESSING** | |
| **SOP NO:** | **2.14** | **GA. LAW: None** |

| | | |
|---|---|---|
| **APPLICABLE GSA STANDARD NUMBER:** | **10.01** | |
| **APPLICABLE ACA STANDARD NUMBER:** | **2A-13, 14** | |
| **DATE CREATED:** | **OCTOBER 15, 1986** | **LATEST UPDATE:** | **September 6, 2011** |

## POLICY:

The staff of the Clayton County Detention Facility shall process all newly admitted inmates to obtain complete and correct identifying data. Processing shall include but is not limited to photographs, finger and palm prints, physical descriptions, and personal background information. This policy shall provide for clear, concise, and accurate records of an inmate's personal history and criminal arrest(s).

## PROCEDURES:

1.   All newly admitted inmates shall be processed as quickly and efficiently as possible.

2.   The officer(s) assigned on each shift to the processing area shall organize the order of inmates being processed. The primary goal is to process them in the order in which we received them unless otherwise directed.

3.   No inmate shall be left alone in the processing area for any reason. The ratio of personnel to an inmate in the processing area shall be one officer for each inmate being processed.

4.   No inmate shall be processed if acting violently or are in a highly intoxicated state which prevents them from being able to be processed safely and correctly.

5.   No inmate shall be processed until we receive the committal documents for all of the charges listed on the Arrest Booking Report. Any delay caused by missing committal documents will be reported immediately to a shift supervisor for corrective action to be taken.

6.   All inmate(s) entering the detention facility shall be processed with the use of the Rapid ID systems.

   a.   Intake Security Officers shall ensure each inmate is either currently on the Rapid ID system or the inmate's prints are currently on the system.

   b.   Intake security Officers shall ensure the inmates are merged with the booking queue.

D-000000051

**SOP NO: 2.14          INMATE ID PROCESSING**

7.    We shall release no inmate from the Detention Facility until processing has been completed, except persons arrested in error due to mistaken identity.

8.    Security Staff shall notify the Intake Supervisor immediately of any inmate who becomes uncooperative by refusing to complete any processing procedures. The Intake Supervisor shall decide what to do with the inmate, until the inmate is willing to cooperate.

9.    The inmate's folder containing all committal documents, arrest/booking report, and intake documents for the inmate to be processed shall be collected from the employee that completed the booking procedure before an officer begins processing the inmate.

10.   The following documents need to be completed during the processing of all newly admitted inmates who have no prior arrest record with our department:

   a.    A computer generated Inmate Interview Sheet (background).

   b.    An OBTS form.

   c.    Three (3) Fingerprint cards.

   d.    One (1) Palm print card.

   e.    A Handwriting Form (only if the inmate's charges involve some type of writing during the commission of the crime. Example: Forgery, Deposit Account Fraud.)

   f.    A computer generated Arrest Booking Cover sheet.

   g.    An Arrest Booking Report (U.C.R.).

   h.    A CCID Folder

11.   The following documents need to be completed during the processing of all newly admitted inmates who have a prior arrest record with our department:

   a.    A computer generated Inmate Interview sheet (background).

   b.    An OBTS form

   c.    Two (2) Fingerprint cards.

   d.    A Handwriting Form, only if the inmate's charges involve some type of writing during the commission of the crime. Example: Forgery, Deposit Account Fraud.

D-000000052

**SOP NO: 2.14          INMATE ID PROCESSING**

     e.     A computer generated Arrest Booking Cover sheet.

     f.     An Arrest Booking Report (U.C.R.).

12.     Inmates shall have their fingerprints submitted to GCIC/NCIC.

     a.     Charges which are not placed on an individual's criminal history "Non-submittable" shall be submitted using the SOT box being checked

     b.     Charges which are placed on an individual's criminal history "Submittable" shall be submitted using the CAR box being checked.

D-000000053



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

---

**SUBJECT:    NOTIFICATION OF INCARCERATION**
**SOP NO:     2.15**                                                **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:**    **10.01, 10.05, 8.48**
**APPLICABLE ACA STANDARD NUMBER:**    **6A-01, 02, 04, 05**
**DATE CREATED: _ OCTOBER 15, 1986 _ _LATEST UPDATE:_    September 6, 2011**

---

**POLICY:**

Staff members of the Clayton County Detention Facility shall afford an opportunity for newly admitted inmates to contact persons to secure release, seek legal counsel, and provide notification of incarceration to family or friends. Also, the staff shall notify the appropriate consulate for all foreign nationals accepted into the facilities.

**PROCEDURES:**

1.    Access:

       Following the initial intake procedures, we shall allow the newly admitted inmate access to the inmate telephones while in Intake.

2.    No Contact:

       If the inmate has made no contact, it shall be the decision of the on duty Shift Supervisor if the inmate is allowed to use the Detention Facility business phones for local calls only.

3.    Subsequent Calls:

       If after the completion of the admissions process, the inmate is unable to contact parties via the telephone, we shall allow the inmate to place additional calls after being placed in Orientation.

4.    Notification of Foreign Nationals Arrest:

       Pursuant to international treaties, it is the responsibility of the on duty shift supervisor to contact the appropriate consulate. The Intake Supervisor shall document that consulate notification has been made on all foreign nationals accepted into the facilities.

D-000000054



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   RECORDS AND REPORTS** | |
| **SOP NO:     2.16** | **GA. LAW: None** |

**APPLICABLE GSA STANDARD NUMBER:**   8.48, 10.01, 10.05
**APPLICABLE ACA STANDARD NUMBER:**   2A-13, 14, 6C-02
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall ensure accurate and complete records are maintained for all inmates.

**PROCEDURES:**

1.   Individual Inmate Records:

A folder shall be maintained on each inmate containing the following information when appropriate:

a.   Computer Printout of the history sheet
b.   Classification form
c.   Committal documents
d.   Disciplinary Action Report(s)
e.   Money/Property Receipts
f.   Arrest/Booking Report
g.   Transfer Orders
h.   Authority for release
i.   Copy of sentence
j.   Photo, NCIC wanted person check, and criminal history, if available

2.   Maintenance of Sheriff's Register of Prisoners - Jail Docket (Computerized):

The Jail Docket is a legal registry maintained on all individuals incarcerated and released from the facility. The Jail Docket Book is an open record which is maintained in the Bonding Office and can be viewed by the public at any reasonable time. The person(s) desiring to view the Jail Docket Book shall make the request to the visitation officer. The Jail Docket Book shall be completed to reflect the following information about each person accepted by the facilities:

a.   Full name and alias
b.   Date of Birth
c.   Sex/Race
d.   Offense charged/bond amount

D-000000055

**SOP NO: 2.16**            **RECORDS AND REPORTS**

      e.      Date/time of confinement
      f.      Date/time of release
      g.      Authority of release
      h.      Date of Preliminary Hearing
      i.      "Hold" from other law enforcement agencies
      j.      Disposition of the charge

**Note**: The computerized docket book can be viewed on line at www.claytonsheriff.com.

3.     <u>Inmate Population:</u>

A computer printout shall be compiled and retained reflecting the daily inmate population by inmate name, the facility's population demographics, and a length of stay report for all inmates.

4.     <u>Security of Inmate Records:</u>

Inmate files shall be maintained in a safeguarded location to ensure security and privacy of information. No unauthorized person shall have access to an inmate record.

5.     <u>Medical Records:</u>

The Medical Staff shall maintain all medical records for inmates.

6.     <u>Inmate Access to Committal Documents:</u>

No inmate shall have their committal documents in his/her possession at any time.

7.     <u>Jail Census Report:</u>

The Jail Census Report is a report generated containing the name, location, and LE number of all inmates incarcerated in the facility. Shift personnel shall print multiple Jail Census Reports out each morning, or whenever necessary.

D-000000056



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   CLASSIFICATION OF INMATES** | |
| **SOP NO:     3.01** | **GA. LAW: None** |

**APPLICABLE GSA STANDARD NUMBER:** 10.01, 10.02, 10.04, 10.06, 10.07, 11.01, 11.02, 11.03, 11.05, 11.06, 11.07, 11.08, 13.01, 13.02, 13.03, 13.04, 13.05
**APPLICABLE ACA STANDARD NUMBER:** 2A-16, 17, 20, 21, 22, 23, 24
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall classify inmates for housing assignments, to enhance public safety, staff safety, and humane inmate treatment. The Classification Section Personnel shall classify inmates using behavioral patterns, current charges, criminal history, gender, and any special needs identified during the assessment.

**PROCEDURES:**

1.   Classification Duties:

a.   Classification Section Personnel shall maintain the record on all inmates incarcerated in the Clayton County Detention Facility.

b.   Classification Section Personnel shall review and process all court orders. Classification Section Personnel shall enter all court order information on the computer and document it in the inmate's file.

c.   All inmates sentenced to "County Time" shall have a release date calculated by the Classification Section Personnel.

d.   All inmates sentenced to "State Time" shall have an Affidavit prepared and submitted to the Department of Corrections.

e.   Classification Section Personnel shall classify all inmates. If a need arises for an inmate to be reclassified, the procedure shall begin with the initial classification process and include any additional criteria for a status change.

f.   The Classification Section shall also be the official liaison with the courts, Probation and Parole Offices, Solicitor's and District Attorney's Offices, and other law enforcement agencies concerning inmates incarcerated in our facility.

D-000000057

**SOP NO: 3.01          CLASSIFICATION OF INMATES**

g.    The Classification Section shall ensure all inmates are scheduled for required court appearances.

2.    <u>Classification Process:</u>

The Classification process shall begin in the designated Intake staging area for all newly arrested individuals waiting to be processed. An Objective Classification Form shall be completed and the following steps shall be taken:

a.    The inmate shall be separated by their gender as follows:

  i.    Male

  ii.   Female

  iii.  The gender of a Transsexual shall be determined by the Medical Staff and the inmate shall be housed accordingly.

b.    Intake Personnel shall observe the inmate's initial behavior in Intake to determine   the following:

  i.    If the inmate appears to be violent or nonviolent.

  ii.   If the inmate is displaying signs of suicidal tendencies.

  iii.  If the inmate appears to be emotionally stable.

c.    Classification Section Personnel shall review the inmate's current charges to determine the following:

  i.    If offense(s) are a violent or nonviolent Felony.

  ii.   If offense(s) are a violent or nonviolent Misdemeanor.

  iii.  If the inmate is pretrial or the inmate is sentenced.

d.    Classification Section Personnel shall utilize the criminal history to determine each inmate's past criminal activity. The information from the criminal history check shall be used to detect any previous records of escape, attempted escape, or walk-a-ways which may constitute a security threat to the facility.

D-000000058

**SOP NO: 3.01          CLASSIFICATION OF INMATES**

e.      Intake Personnel shall make a wanted person check through the NCIC computer system for any outstanding warrants.

f.      Upon entering our facilities, Medical Staff shall do a medical screening to establish the emotional stability and medical needs of all inmates.

3.      <u>Orientation Unit:</u>

This is an initial housing area for the orientation of new inmates into our facilities. This orientation shall include, but not be limited to: Rules and Regulations of the facilities, daily operations/expectations of inmate conduct, information on the programs offered at the facility, and instructions on how to obtain inmate assistance. Orientation shall last (72) hours, but shall be separated into three (24) hours phases.

4       <u>Housing Assignments for Classified Inmates:</u>

a.      General Population:

The Housing Unit(s) designated for all inmates who have completed orientation and are not considered a special management inmate shall be classified as a Minimum, Medium, or Maximum general population inmate.

b.      Direct Supervision / Random Supervision Unit:

Inmates housed in Direct Supervision or Random Supervision shall be primarily inmate workers or those with a minimum or medium classification. Separate sections shall be maintained for males and females. No inmate shall be assigned to a Direct Supervision or Random Supervision housing unit having any of the following:

D-000000059

**SOP NO: 3.01          CLASSIFICATION OF INMATES**

        i.      Aggravated offenses

        ii.     Disruptive behavioral patterns, repeated disciplinary actions, or an inability to coexist peacefully with other inmates, staff, or jail civilians.

c.     Security Segregation Section:

The Housing Unit(s) designated for inmates when his or her actions constitute a threat to themselves, others, or the security of the facilities.

d.     Administrative Segregation Section:

The Housing Unit(s) designated for inmates with a need to be isolated from general population, due to their particular need for additional protection.

e.     Infirmary:

There are cells within the Infirmary designated for inmates having the following conditions:

        i.      Physically Impaired (sick/injured)

        ii.     Developmental Disability or Mental Illness

        iii.    Visual or Hearing Impaired

        iv.    Alcohol Dependent/Abusers

        v.     Drug Detoxification

        vi.    Suicidal

f.     Medical Special Needs:

There are also specially designed cells used for housing handicapped inmates. The Medical Staff in coordination with the Jail Administrator or their designee shall determine the limitations used to classify an inmate as handicapped.

D-000000060

**SOP NO: 3.01         CLASSIFICATION OF INMATES**

g.      Disciplinary Lockdown Section:

The Housing Unit for inmates who have violated the rules and regulations of the facility and received disciplinary lockdown for a designated length of time.

5.    <u>Maintenance of Inmate Records:</u>

a.      The security of inmate records shall be as follows:

i.      All files shall be isolated in a secure and "Authorized Personnel Only" area.

ii.      The information within the files shall be considered confidential and not to be disseminated to any unauthorized individual.

b.      The Classification Section shall ensure proper documentation within all inmate records as follows:

i.      Ensure all committal documents are in the file.

ii.      Place all records, forms, and reports in the appropriate location within the file

c.      The Classification Section shall review inmate's files and reclassify an inmate's status when:

i.      An inmate is sentenced on any outstanding charge(s);

ii.      The filing of any additional charge(s);

iii.      The current charge(s) are reduced or dismissed;

iv.      A writ or order from a court specifies a need;

v.      An inmate receives any disciplinary action;

vi.      Another agency places a hold or detainer on the inmate;

vii.      When the monthly status review is done on all records;

viii.      When directed by the Sheriff, Chief Deputy, or the Jail Administrator.

D-000000061

**SOP NO: 3.01          CLASSIFICATION OF INMATES**

6.    <u>Movement:</u>

All changes of inmate housing assignments shall be reviewed by a Shift Supervisor prior to or shortly after the move is made to ensure that the inmate is being housed in an area designated for that inmate's specific classification.

7.    <u>Classification Review:</u>

The Jail Administrator or his designee shall conduct a systematic review and audit of the classification process at least once each year. This review shall include, but is not limited to, the following:

a.        The structure and/or organization of the classification process.

b.         The roles of personnel assigned to Classification.

c.        The status and accuracy of inmate files.

D-000000062



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| SUBJECT:   WORK RELEASE | |
| SOP NO:   3.02 | GA. LAW: O.C.G.A.: 42-1-4, 42-1-9 |
| APPLICABLE GSA STANDARD NUMBER: | NONE |
| APPLICABLE ACA STANDARD NUMBER: | 5C-05 |
| DATE CREATED:   14 September 1999 | LATEST UPDATE:   1 January 2011 |

## POLICY:

The Clayton County Sheriff᷅s Office Work Release Program is designed to assist the courts by providing an alternative placement for sentencing. This program enables inmates to keep their jobs and maintain their financial obligations while serving their sentence.

## PROCEDURES:

1.   Qualification for Assignment to Work Release:

A.   A court order from a judge, along with the following requirements, shall enable an inmate to serve on the Work Release Program.

1.   You must maintain approved employment (determined by Work Release Coordinator) in order to remain on the Work Release Program. You will not be allowed to work a second job or work a split shift. You must work a minimum of 35 hours weekly (unless approved by the Work Release Coordinator) and cannot be outside the Jail more than 12 hours to include travel time. Work Release Inmates can only work 6 days a week. You will not be allowed to work 7 days a week regardless of the reason.

2.   The inmate᷅s job must be located within a sixty (60) mile radius of the Clayton County Jail, unless specified within the court order or approved by the Work Release Coordinator.

3.   The Work Release Coordinator or his/her designee must review and approve the individual᷅s mode of transportation.

4.   Public transportation is not allowed as a mode of transportation.

B.   To qualify for the Work Release Program, the inmate sentenced shall not have any of the following:

1.   An outstanding warrant holds, or open charge(s) from any other court or law enforcement agency.

2.   A criminal record for the preceding five (5) years of any assaultive offenses of an aggravated nature, including, but not limited to: aggravated assault, aggravated battery, rape, child molestation, robbery, escape, homicide by a vehicle, felony

D - 000000063

**SOP NO. 3.02 WORK RELEASE**

bail-jumping trafficking or distribution of a controlled substance or marijuana.

3.  Will not have any life-threatening illnesses or disabilities that would interfere with their ability to work regularly.

2.  <u>Pre-Assignment Work Release Interview/Screening:</u>

A.  The Work Release Section after receiving a court order will:

1.  Check for available bed space.

2.  Ensure the inmate is completely processed.

B.  The Work Release Section shall interview an inmate to determine their qualifications for participation in the program. **See Appendix A**.

3.  <u>Admitting Process:</u>

A.  The Work Release Section will have a copy of the writ/order by the court for execution of the sentence before admitting the inmate into the program.  The inmate file will be obtained from the Classification Section and maintained by the Work Release Office until the inmate is either returned to the general population or the inmate has completed his/her sentence in the jail and released.

B.  Once the inmate is admitted to the Work Release Program, the inmate will be briefed on the Inmate Rules and Regulations and given a copy of the Work Release Inmate Handbook. **See Appendix B**. The inmate will then be allowed to leave the jail for three hours to gather allowed items needed for work (clothing and personal hygiene items).

C.  Non-custody inmates reporting to Work Release will not be allowed the three hours as described in B above.

4.  <u>Drug/Alcohol Screening:</u>

All work release inmates shall be randomly subjected to alcohol and drug screening tests, and must sign the Advisory Form. **See Appendix C**.

5.  <u>Medical:</u>

A.  Inmates shall turn in all medication to the work release officer for safekeeping, and the medication must be kept in the original prescription container.

B.  Medication shall be made available in accordance with the prescription and upon the request of the inmate.

C.  Inmates in the Work Release Program are responsible for all non-emergency medical care. Any out-patient care must be approved by the Work Release Coordinator prior to their appointment time and date.

D-000000064

**SOP NO. 3.02 WORK RELEASE**

D.   Work Release Inmates will receive emergency care while residing in the jail by the Jail Infirmary Staff as needed.

6.   Inmate Financial Obligations:

A.   Work Release Inmate≊s financial obligations are as follows:

1.   Room and Board.

2.   Court ordered fines and fees.

3.   Restitution/child support.

B.   The only approved payment methods accepted by the Work Release Coordinator, or his/her designee, is U.S. Currency.

C.   Inmate payments shall be turned in to the Work Release Coordinator, or his/her designee, on the inmate≊s payday.

D.   The Work Release Coordinator, or his/her designee, shall receive all inmate payments, and distribute them to the accounting section.

E.   All inmates must turn in their paycheck stubs or acceptable copies of their paycheck stubs with their payment.

F.   All payments, and any other inmate transactions made through the Work Release Program will be handled through the Work Release Coordinator or his/her designee.

7.   Removal of Work Release Inmates for Disciplinary Reasons:

A.   A Work Release Officer when requesting to remove a work release inmate due to violation of laws, rules or jail procedures will do the following:

1.   Notify the Work Release Coordinator.

2.   Complete Jail Miscellaneous Incident Report.

3.   Ensure the inmate≊s file is given to the Work Release Coordinator for review and return to Classification.

4.   Return inmate to general population insuring that the all personal property is inventoried and turned over to the Property Room Clerk and any inmate money is counted and receipt given. All money is sent to Accounting to be placed on the inmate's account.

5.   Rules and jail procedures can be found in the Work Release Post Instructions.

D-000000065

**SOP NO. 3.02 WORK RELEASE**

B.   Work Release Officers may put inmates in general population before notifying the Work Release Coordinator if a Hold has been placed on the inmate or if new charges are brought against the inmate.

8.   Escape

A.   If a work release inmate fails to return for a period of eight hours, without justified notification, he/she will be considered to have escaped custody of the Sheriff's Office.

B.   Notify the Work Release Coordinator who will petition a Judge for an Escape warrant.

C.   Insuring that the all the inmate's personal property is inventoried and turned over to the Property Room Clerk.

10.   Release Date Calculations/Procedures:

A.   All release dates of work release inmates shall be calculated in the same manner as specified in Policy 3.04 of the Jail Division SOP.

B.   The releasing work release officer shall check all documents providing for the release of an inmate.

C.   A work release officer shall check GCIC/NCIC to ensure there are no outstanding warrants on the inmate.

D.   The releasing work release officer shall collect all previously issued items from the inmate before their release and ensure fees assessed for damaged/missing property, is either collected or debited to the inmates account.

E.   The inmate's personal property shall be inventoried and signed by the inmate and officer on the Clothing Inventory Form as they are turning over the property to the inmate for release.

F.   The inmate's file must be reviewed for release by a Jail Supervisor prior to the inmate's release.

**SOP NO. 3.02 WORK RELEASE**

# CLAYTON COUNTY SHERIFF'S OFFICE



# WORK RELEASE

## INMATE HANDBOOK
## APPENDIX B

**11/10/2010**

This Work Release Handbook contains the Rules, Procedures and Guidelines for an Inmate assigned to the Work Release Program and residing in the Work Release Dormitory.    Each Inmate assigned to Work Release will receive a copy of this document and signify they have received it.

D-000000067

**SOP NO. 3.02 WORK RELEASE**

GENERAL

All Work Release Inmates are subject to the Laws of the State of Georgia and the Rules and Regulations set forth by the Clayton County Detention Facility. Any inmate failing to comply with either State Law or the Rules and Regulations of this facility shall be subject to criminal prosecution and removal from the program. The Clayton County Work Release Program is a privilege, not a right. No excuse will be accepted for any violation. **ANY VIOLATION IS SUBJECT TO DISCIPLINARY ACTION** (i.e. loss of privileges, lock down or removal from the program). <u>All Orders of the court must be followed. This includes payment of fines, restitutions, child support, and any other cost or orders as set forth by the court.</u>

EMPLOYMENT

You must maintain approved employment (determined by Work release Coordinator) in order to remain on the Work Release Program. You will not be allowed to work a second job or work a split shift. You must work a minimum of 35 hours weekly (unless approved by the Work Release Coordinator) and cannot be outside the Jail more than 12 hours to include travel time. Work Release Inmates can only work 6 days a week. You will not be allowed to work 7 days a week regardless of the reason.

Your supervisor must notify the Work Release Office if there are any changes to your schedule. A written work schedule, signed by your supervisor is the only acceptable form of notification. **If you fail to provide the required information, you will be removed from the program**. Work Release Office hours are 0800-1600 hours Monday through Friday. Office telephone number is 770-477-4453. FAX number is 770-210-5226. To contact the Work Release Dormitory after hours the number is 770-477-4413, ask for extension 2293.

If your employment requires a change of work location, you are required to submit the following:

Address and phone number of your work location <u>before</u> signing out or you will not be allowed to leave the Jail.

If you do not know the location of where you will be working that day, you will be allowed to sign-out. Based on your travel time to work, you have 5 minutes after arrival at your work site to call in with the new location and contact information.

You will have approval from the Work Release Coordinator before changing employment.

You must provide your own transportation to and from work. Public transportation is <u>not</u> an authorized form of transportation. If you have the ability to drive yourself, you must submit a copy of your driver's license, registration, and proof of insurance before being allowed to participate in the Work Release Program. If you have someone drive you to and from work, that person must provide the same information. If you drive in multiple cars the information required is the same. You are only authorized to be in a personal conveyance that is approved by the Work Release Office.

You must be at your job site while away from the Jail. If you wish to go someplace other than your work site, you must first gain permission from the Work Release Office. If your work day is shortened, you will return to the Jail immediately. **Failure to follow both these rules will result in removal from the Work Release Program**.

D-000000068

**SOP NO. 3.02 WORK RELEASE**

You must sign-out each time you leave the Clayton County Detention Center and sign-in when you return.

## PAYMENT OF FEES

Board fee is $10.00 per day, $70.00 per week. This fee is due every Friday when you return from work. If you are paid every two weeks, than payment require will be $140.00. Payment will be made or you will be removed from the Work Release Program. Any deferred payment must be approved by the Work Release Coordinator.

If you have a Court ordered fine or a child support payment, remember that board fees accumulate daily and all payments must be made in order to be released from custody.

You will provide a pay stub every pay day that shows your earnings and total hours worked. If you are paid in cash and your employer does not provide a pay summary, you can ask the on-duty Detention Officer for a summary form which your supervisor can fill out for you. It must be signed by your supervisor. **Failure to provide a pay summary could result in your termination from the Work Release Program**.

You will be given a statement for your fees weekly. Please ask for an explanation if you do not understand.

## MEDICAL

You are responsible for all of your own medical care and costs.

If you are injured on the job, you must apply for worker's compensation through your employer.

You are allowed to make appointments with a private doctor; however, you must request permission from the Work Release Office 24 hours in advance. Documentation from your medical provider is required.

If you have a current prescription, or any over the counter medication, you must leave it with the on-duty Detention Officer.

## DRUGS, ALCOHOL, AND WEAPONS

You will not possess any illegal drugs, narcotics, alcohol beverages, guns, pistols, knives, or any other weapons at any time. If you are found to be in possession or control of any weapon, alcohol, or drugs, regardless of the amount, or any other article or item, without the knowledge and written consent of the Work Release Coordinator, you will be terminated from the program and charged with a felony (GA Code Section 42-5-19).

You are not to use any illegal drugs, narcotics, or alcoholic beverages at any time. You will be required to submit to random breath, blood, or urine tests. Any positive results will result in your immediate removal from the program, and a court petition will be submitted to your sentencing court. Criminal charges can be taken against you. Refusal to take any required tests will result in the same.

D-000000069

**SOP NO. 3.02 WORK RELEASE**

## SEARCHES - PERSON, PROPERTY, AND CELL

Searches shall be conducted to maintain a safe environment for all inmates. You, your personal property, living area, and your vehicle are subject to search at any given time and without prior warning. Any contraband found during a search could result in you being removed from the Work Release Program and/or criminal prosecution. Contraband shall be considered anything not authorized within the Jail (to include tobacco), unless approved by the Work Release Coordinator. Contraband will also include, but not limited to anything hanging on the walls, doors, or light fixtures.

## PERSONAL HYGIENE / DRESS CODE

All inmates will refrain from any unsafe or unhealthy practices or behaviors while in this facility.

Clothing will be clean and present a neat appearance at all times when leaving for work. Failure to maintain proper and clean attire can result in denying work privilege for a day(s) or termination from the program.

Males and females cannot wear earrings, necklaces, or belts when entering the Clayton County Detention Center.

Work Release Inmates, as a minimum, will shower daily.

Men's and Women's hair will be kept clean and maintain a professional appearance at all times. Men's' hair will not touch the ears or exceed the top of the collar. Women's hair will be combed and/or brushed daily. <u>Beards are not authorized</u>.

Any physical and/or sexual contact with by an inmate is strictly prohibited while serving on the Work release Program.

No one is allowed to lounge around in sleepwear or under garments.     Inmates must be in uniform at all times. When leaving the section, you must be fully dressed!  The only exception to this rule is when you are in your bunk <u>sleeping</u>. You do not have to be in your uniform at that time. It is forbidden to sleep in the nude.

## AUTHORIZED ABSENCE / ESCAPE

Inmates will only be allowed to leave the Jail for work. If you have a written request and approval from the Work Release Coordinator for the following reasons, you may leave the Jail to attend these events. Upon return to the facility, you must provide proof of attendance (arrival and departure).

Verified Doctor's Appointment

Emergency Medical Treatment

Required Court Appearance

Funeral of Immediate Family Member

D-000000070

**SOP NO. 3.02 WORK RELEASE**

      Automobile Repair (if you drive yourself)

      Haircut (1½ hour only / twice monthly)

      Court Ordered Counseling and Treatments

Requests to take family members to medical appointments or school functions will not be approved. All other absences, without prior written approval, will be considered unauthorized and you will be charged with **ESCAPE**.

**ALL ESCAPE CHARGES ARE PROSECUTED.**

## ELECTRONIC EQUIPMENT

No electronic devices (cell phones, televisions, hand-held games, GPSs) of any type are permitted passed the Guard Line.

## RELEASE DATE

On your release date, you will be contacted by the Detention Officer on duty. You will be released at a time convenient to the Sheriff's Office and your work schedule. You are required to return all items that were issued to you during in-processing. After the Detention Officer inventories all items and your account is settled, you will be released. If you are continuing your sentence on probation, you must report to your probation office as stated in your sentence.

## DISCIPLINARY ACTIONS

Most of the rules for Work Release have been explained in this document. There are some rules that are inherent to the Jail and a copy of those rules will be provided during in-processing.

You are guaranteed certain rights by the United States Constitution and the Georgia Law.
If you feel you have a legitimate grievance against a staff member or you have not been treated fairly, or your rights have been violated, you have the right to make a complaint without fear, punishment, or harassment. All grievances will be forwarded to the Work Release Office for review by the Work Release Coordinator.

## CARE OF DORMITORY AND SLEEPING AREA

All inmates will share in the responsibility of keeping their dormitory clean.

Your bunk will be made every day before going to work. The linen is to be tucked-in under the mattress in a neat and tight fashion with the blanket on top, tucked-in, tight and turned down ¼ length of the bed. Pillow if available, will be centered at the top of the made bed. The area around your bunk will be swept and all personal belongings stored neatly away.

The common areas of the dormitory; walls, floors, sinks, toilets, and tables must be cleaned daily. The dayroom shall be inspected on a routine basis. If the assigned sleeping areas or the dormitory is not maintained, the inmate assigned to that area shall be subject to disciplinary action (extra duty). If

D-000000071

**SOP NO. 3.02 WORK RELEASE**

The dormitory common area is not properly maintained, and then all the inmates that reside in that dormitory will be subject to disciplinary action (extra duty).

The disciplinary action taken for not maintaining the dormitory and sleep areas will be at the discretion of the on-duty Detention Officer. If in the opinion of the Detention Officer that corrective action by the inmate(s) is not immediate or is not completed to his satisfaction, then further discipline can include; loss of work privilege and eventual termination from the Work Release Program.

## TELEVISION

The Detention Officer will suspend television privileges for the entire dormitory anytime the inmates within the section cannot come to an agreement on which channel to view, or anytime the dormitory or sleeping areas are not clean.

Television volumes will be low enough for Work Release Inmates who work the next day may sleep comfortably. If this becomes an issue the television will be turned off.

Televisions will be turned-on in the morning NET 0800 hours and turned-off NLT 2300 hours at night. With the permission of the on-duty Detention Officer special television events (sports / news events) can be left on at a lower volume until conclusion.

## HOUSE RULES

ANY VIOLATION IS SUBJECT TO DISCIPLINARY ACTIONS
(i.e., loss of privileges, lockdown or removed from the program)

### ANY DAMAGE TO CLAYTON COUNTY PROPERTY
(i.e., criminal prosecution and/or pay for damages and/or remove from program)

1. Wake up is at 4:00 am daily.

2. Dormitory lights are turned out at 10:00 pm nightly. If the center appearance is satisfactory, the dayroom may stay open until 11:00 pm.

3. Bunks and details must be completed by 6:00 am.

4. Male and female inmates are prohibited from any contact.

5. No smoking is allowed at the facility. If you are caught smoking, or in possession of cigarettes, lighter, or any tobacco product, you will be taken into the Intake Booking area and charged with Crossing a Guard Line.

6. No personal property is to be left out when you leave your bunk area.

7. Parking is allowed in designated areas only

8. Gambling in any shape, form, or fashion is not allowed and is a chargeable offense.

D-000000072

**SOP NO. 3.02 WORK RELEASE**

9.   No inmate is allowed to sell, trade, buy, or transfer any of his/her property to another inmate or staff member.

10.   When the fire alarm sounds, all inmates are to exit the building through the nearest exit and move to the area designated by the Detention Officer.

11.   Hats will not be worn in the Jail.

12.   Inmates shall address employees by their proper titles, i.e., Officer, Sergeant, Lieutenant, Captain, Major, Mr., Mrs., Etc. whichever is appropriate.

13.   Employees shall not be subjected to insults and uncalled for remarks during the performance of their duties. No inmate shall make physical gestures or write derogatory or degrading remarks about an employee either through the mail or on any property belonging to the Clayton County Detention Facility (walls, tables, or doors).

14.   Inmates are required to be considerate and respect the rights of others while detained in the facility.

15.   Inmates are to refrain from the use of insulting remarks. Racial or Ethnic slurs are strictly prohibited.

16.   Inmates are not permitted to talk or pass any items to other inmates in different sections.

17.   Inmates are permitted to bring in personal hygiene property or take out for laundry purposes, ONLY on Tuesday, Thursday and Saturday. Laundry should be in a net bag or plastic bag.

18.   No gym bags, suitcases, briefcases, purses, etc. are allowed.

19.   Inmates will pay rent, court ordered child support, fines, etc. on payday. Failure to do so will result in being removed from the Work Release Program.

20.   Assigned bunk areas and dayroom will be kept clear of excessive paper material and opened or left over food products.

21.   Inmates will not possess excessive amounts of personal property. If it cannot be stored in your locker, you have an excessive amount. ONLY shoes may be stored on the floor under the bunk and have in your possession no more than one (1) pair.

22.   NO EAR Plugs.

23.   No du-rags, skull caps, or hoods are allowed in this facility.

24.   No explicit magazines displaying violence, or sexual photographs. Books that are allowed are Bibles, Newspapers, and educational material.

D-000000073

**SOP NO. 3.02 WORK RELEASE**

APPENDIX   A-   Work   Release   Application

APPENDIX B - Work Release Inmate Handbook

APPENDIX C – Work Release Random Drug/Alcohol Testing Acknowledgment

APPENDIX D – Inmate Biographical Information

APPENDIX E – Weekender/Work Release Sleep Area Guideline Photo

APPENDIX F – Acknowledgement of Work Release Policy Briefing

D-000000074



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   SPECIAL MANAGEMENT INMATES**
**SOP NO:    3.03**                                **GA. LAW: None**

**APPLICABLE GSA STANDARD NUMBER:    11.03, 11.07, 13.01, 13.02, 13.03**
**APPLICABLE ACA STANDARD NUMBER:    2A-21, 22, 23**
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:    September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall provide secure and safe housing for inmates who require a higher degree of physical control, protection, and/or supervision than can be provided by housing the inmate in general population.

**PROCEDURES:**

1.   Authorization for Placement:

Inmates may be placed on Administrative Segregation and/or Security Segregation, Segregation by the Jail Administrator or his designee. If there is a compelling need for immediate placement in segregation, it may be done so with the tentative approval of the Watch Commander, and shall be reported through the chain of command to the Jail Administrator or his designee for approval/denial.

2.   Security Segregation:

The Security Segregation Unit is a housing unit used to house inmates' whose actions or particular situations constitute a serious threat to themselves, others, or the security of the facility:

a.          Listed below are some reasons an inmate may be placed on Security Segregation:

i.       The inmate is a potential escape risk.

ii.      The inmate has or is displaying violent behavior.

iii.     The inmate has received repeated disciplinary lockdowns.

**Note**: No detention facility rule must be broken for an inmate to be placed in Security Segregation.

D-000000075

**SOP NO: 3.03          SPECIAL MANAGEMENT INMATES**

b.    The following restrictions shall be enforced for all inmates on Security Segregation in order to prevent the inmates from injuring themselves or others:

    i.    Inmates on Security Segregation shall not be allowed out of their cell at any time unless there is a sufficient amount of staff present to maintain security, and then limited only to an amount of time necessary to shower and maintain their personal hygiene. (Follow guidelines set in section 6.06 of the JOD-SOP)

    ii.    Inmates on Security Segregation shall be fed while in their cells.

    iii.    Medical attention shall be rendered to inmates on Security Segregation in the Security Segregation Housing Unit, unless it is essential for the inmate to be transported to the Infirmary.

    iv.    Inmates on Security Segregation will only be allowed to have access to razors on the morning prior to a previously scheduled court appearance, and then only in the presence of an officer who shall collect the razor immediately after its use.

    v.    Inmates on Security Segregation shall be allowed to have in their possession limited personal hygiene items, legal papers which are directly related to the criminal charges for which they are currently incarcerated, and minimal religious material only.

    vi.    Inmates on Security Segregation shall not be allowed to watch television. Security Segregation shall only have access to telephones, commissary or visitation when permission is granted by the Jail Administrator or designee. Security Segregation may have visits from probation/parole, pastoral, and attorney visits during normal operation hours.

    vii.    Inmates on Security Segregation who are eligible to have access to the Law Library, shall have the requested material forwarded to them upon reasonable request.

3.    <u>Administrative Segregation:</u>

The Administrative Segregation Unit is a housing unit used to house inmates who need to be isolated from the general population due to their particular situation.

    a.    An assessment shall be conducted by a Supervisor prior to any inmate being assigned to the Administrative Segregation Unit. The assessment shall determine if the inmate meets any of the following criteria for placement:

D-000000076

**SOP NO: 3.03**     **SPECIAL MANAGEMENT INMATES**

        i.      The inmate is a state's witness against another inmate.

        ii.     The inmate is a current or past informant.

        iii.    The inmate is a current or former Criminal Justice Worker

        iv.    The inmate has uncontrolled sexual tendencies

b.    The following privileges or services shall be extended to inmates housed in an Administrative Segregation Unit.

        i.      The inmate shall be permitted the privileges or services extended to inmates in general population. Unless it compromises the safety and security of the facility.

        ii.     Privileges or services shall not be restricted, unless a compelling security interest exists.

D-000000077

**SOP NO: 3.03**        **SPECIAL MANAGEMENT INMATES**

1.    <u>Status Review of Segregated Inmates:</u>

A review of the inmate's status shall be done by the Jail Administrator or his designee. The following are the times of needed review after the inmate's initial placement in a Special Management Unit:

| | |
|---|---|
| Security | Weekly |
| Administrative | Weekly |
| Disciplinary | Weekly |

D-000000078



# CLAYTON COUNTY SHERIFF'S OFFICE
## JAIL DIVISION
## STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

**SUBJECT:   DETERMINATION OF RELEASE DATE (GOOD TIME)**
**SOP NO:    3.04** **GA. LAW: O.C.G.A. 42-4-7, 17-10-4**

**APPLICABLE GSA STANDARD NUMBER:    10.14**
**APPLICABLE ACA STANDARD NUMBER:    5B-04**
**DATE CREATED:    OCTOBER 15, 1986   LATEST UPDATE:    September 6, 2011**

## POLICY:

The Clayton County Detention Facility's Staff shall compute actual sentence time to be served in accordance with existing statutes and Good Time credit awarded as authorized.

## PROCEDURES:

"Good Time" may be granted to inmates according to applicable State Law, limited to a maximum of a fifty (50) percent reduction in the amount of time sentenced to serve.

1.    Qualifications:

      Good Time is calculated only on those sentences meeting the criteria established by law.

2.    Inmate Workers:

      Inmate workers shall be given additional credit toward their sentence as allowed by state statue or as indicated by court order authorizing such. This time is to be in addition to Good Time.

3.    Inmates Sentenced to "State Time":

      Good Time and Inmate Worker time credits may not be afforded to any inmate whose sentence falls under the jurisdiction of the Department of Corrections. State law does not provide the local county facility either the responsibility or authority to set, adjust, amend, or otherwise establish a release date for "state inmates." Inmates sentenced to state time, but not picked up by the state, shall be released upon completion of the full sentence imposed by the order of the court.

4.    Inmates Sentenced on High and Aggravated Misdemeanor Charges:

      Inmates who are sentenced on misdemeanors, which are designated by law as a high and aggravated nature, after July 1, 2000 shall only receive four days credit each month as Good Time.

D-000000079

**SOP NO: 3.04**        **DETERMINATION OF RELEASE DATE (GOOD TIME)**

5.    <u>Disciplinary Action:</u>

Good Time can only be taken away administratively through a hearing process. The hearing is to be conducted in accordance with the procedures listed in SOP 9.02 (Discipline Due Process).

D-000000080



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   CENSUS INFORMATION PROVIDED TO COURTS**
**SOP NO:    3.05**                                    **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:    6.11**
**APPLICABLE ACA STANDARD NUMBER:    None**
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall assist the timely progression of all court cases and prevent any delay in providing information regarding inmates of our facility to the courts.

**PROCEDURES:**

1.   <u>Jail Census Information regarding all inmates of the facility:</u>

A Jail Census shall be provided to all Superior Court Judges, the District Attorney's Office, State Court, Magistrate Court, or any other judicial entity as requested.

2.   <u>Jail Census Information shall consist of:</u>

a.      Prisoners' names

b.      Date of arrest

c.      The charge or reasons they are being held

d.      The amount of any bond, if applicable

e.      Names of attorneys(whether appointed or retained), and if they have no attorney

f.      Whether the prisoner desires an appointed attorney



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:** WEEKENDER INMATES | |
| **SOP NO:** 3.06 | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:** 10.01, 11.09
**APPLICABLE ACA STANDARD NUMBER:** 2A-16, 17
**DATE CREATED:** DECEMBER 22, 1988 **LATEST UPDATE:** September 6, 2011

## POLICY:

The Detention Facilities shall house all inmates sentenced to serve weekends. This shall be done in accordance with both court orders and normal procedures for housing inmates.

## PROCEDURES:

1.  All persons reporting to serve a weekend shall report to the Clayton County Jail at the designated time directed by the Court Order. No one will be admitted if they are more than thirty (30) minutes late, unless authorized by the Work Release Coordinator. Persons, who arrive to begin serving their first weekend for which we do not have a copy of the sentence or sentencing information documented on the computer, shall be turned away. A comment will be completed on the Jail Comment Screen for all persons turned away with the reason clearly stated.

2.  Weekender Inmate Files shall be kept in the Work Release Office. A list will be prepared weekly and given to the Detention Officer in charge for processing weekender inmates into the Jail. The Weekender List must be signed by the inmate before being allowed into the facility. The Weekender List will also be annotated for those inmates who are required to pay a Board Fee as a requirement to serve their weekend. **The weekender inmate must show proof of the ability to make payment before being allowed entrance into the Jail!**

3.  A complete and thorough Strip Search will be conducted of all persons attempting to serve a weekend sentence. If illegal contraband is discovered, Detention Officers will write a Miscellaneous Incident Report and seek to have the appropriate charges brought against the individual. Any other contraband discovered on the individual, the person will be directed to return it to the outside of the Jail or throw it away. All personal property shall be inspected for contraband. The only personal items weekender inmates are permitted to take into population are:

    a.    Three all white (3) pairs of socks
    b.    Three all white (3) t-shirts
    c.    Three all white (3) underwear
    d.    Three all white (3) bras (wireless)
    e.    Money for commissary items

D-000000082

**SOP NO. 3.06 WEEKEND INMATES**

4.  All weekend inmates will be screened by the Rapid ID System prior to entering their appropriate dormitory

5.  Work Release Staff shall update the computer records to indicate the appropriate disposition code when the inmate arrives and is released. **A GCIC/NCIC check will be conducted before a weekender inmate is released from the Jail.** All previously issued jail property shall be issued back to the inmate prior to release. At this time a copy of the Probation Officer Report will be issued to the inmates and they will be escorted out of the Jail.

6.  Inmates who are under current prescription medication will be allowed to bring in the medication, turn it over to the Correctional Officer who in turn, will give it to the Infirmary Staff for distribution.

7.  Any Weekender Inmate who receives a disciplinary action shall have it documented on a Jail Miscellaneous Incident Report. All incidents involving the criminal actions of a weekender inmate shall be documented on a Miscellaneous Incident Report, appropriate charges taken, and a copy of these shall be forwarded to their Probation Officer.

8.  Each probationer who reports to serve a weekend shall receive a weekender Inmate Probation Officer Report Form upon his/her release.  If the probationer is visibly under the influence of alcohol or drugs, it shall be documented on this form.  It shall be the probationer's responsibility to deliver his/her Probation Officer a copy of this form for verification and accountability for their weekend served.

9.  Every Monday morning the Work Release Sign-in List will be verified and sent to the individual probation offices. Comments on no-shows, disciplinary actions, and turned away inmates will be annotated for dissemination to the appropriate probation service.

10.  Proponent for this SOP is the Work Release Coordinator, any changes, additions and/or deletions to this SOP must be made with the approval of the Work Release Coordinator.

D-000000083

**SOP NO. 3.06 WEEKEND INMATES**

CLAYTON COUNTY SHERIFF'S OFFICE
WEEKEND PROGRAM
HANDOUT

WEEKEND INMATES ARE REQUIRED TO ARRIVE AT THE JAIL NO LATER THAN THE TIME DESIGNATED IN THEIR SENTENCE. IF YOU ARE LATE, YOU WILL NOT BE ALLOWED IN THE JAIL.

WEEKEND INMATES WILL REPORT TO THE REAR OF THE JAIL (SOUTH) AT THE ENTRY GATE BY THE LOADING DOCK.

ALL INMATES SERVING WEEKEND SENTENCES ARE SUBJECT TO ALCOHOL AND DRUG TESTING.

ALL INMATES SERVING WEEKEND SENTENCES WILL BE ALLOWED TO PURCHASE ITEMS FROM THE COMMISARY (SNACKS & DRINKS).

INMATES SERVING WEEKEND SENTENCES WILL BE DRESSED OUT INTO A JAIL UNIFORM.

**THE FOLLOWING ITEMS WILL NOT BE ALLOWED INTO THE JAIL BY AN INMATE SERVING A WEEKEND SENTENCE:**

| | |
|---|---|
| **BELTS** | **CELL PHONES** |
| **LIGHTERS/MATCHES** | **TOBACCO PRODUCTS** |
| **BOOKS/MAGAZINES** | **FOOD/CANDY/GUM** |
| **SHORTS** | **HALTER TOPS** |
| **PENS/PENCILS** | **HYGIENE PRODUCTS (EXCLUDING DEODORANT)\*** |
| **JEWELRY (WATCH, RING, EARRINGS, BODY PIERCINGS, CHAINS, ETC.** | |

**\*ALL HYGIENE PRODUCTS (EXCLUDING DEODORANT) ARE PROVIDED**

**ONLY THE FOLLOWING ITEMS ARE ALLOWED TO BE BROUGHT INTO THE JAIL BY AN INMATE SERVING A WEEKEND SENTENCE:**

| MALE | FEMALE |
|---|---|
| T-SHIRTS (3 PAIR, SHORT SLEEVE, WHITE ONLY, NO POCKETS, NO PRINT OR LOGOS) | T-SHIRTS (3 PAIR, SHORT SLEEVE, WHITE ONLY, NO POCKETS, NO PRINT OR LOGOS) |
| UNDERWEAR (3 PAIR, WHITE ONLY, BOXERS OR BRIEFS | UNDERWEAR (3 PAIR, WHITE ONLY, PANTIES) NO HOSERY OR LEGGINGS |
| SOCKS (3 PAIR, WHITE ONLY, NO STRIPES/LOGOS) | SOCKS (3 PAIR, WHITE ONLY, NO STRIPES/LOGOS) |
| BIBLE/QUR'AN (SOFT COVER) | BRAS (3 PAIR, WHITE ONLY, NO UNDERWIRE) |
| DEODORANT (TRAVEL SIZE CLEAR BOTTLE) | BIBLE/QUR'AN (SOFT COVER) |
| MONEY (CA$H) | DEODORANT (TRAVEL SIZE CLEAR BOTTLE) |
| | MONEY (CA$H) |

QUESTIONS CONCERNING WEEKEND SENTENCES PLEASE CALL 770-477-8412

D - 000000084



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   INMATE WORKERS** | |
| **SOP NO:     3.07** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**   12.01, 12.02, 12.03, 12.04, 12.05, 12.06, 12.07, 12.08
**APPLICABLE ACA STANDARD NUMBER:**   2A-16, 17
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall implement an "Inmate Worker Program" to allow inmates to be productive regardless of race, gender, or social status.

**PROCEDURES:**

1.   Request:

     Inmates wishing to apply for inmate worker status shall submit an Inmate Request Form to the Inmate Work Force Coordinator.

2.   Inmate Eligibility Criteria:

     Prior to selecting an inmate for worker status, the following criteria shall be considered:

     a.     Length of stay at the facilities.

     b.     The seriousness of the inmate's current and past offenses.

     c.     Previous escape attempts.

     d.     Medical and health screening.

3.   Voluntary Participation:

     No inmate shall be forced to participate in the Inmate Worker Program.

4.   Inmate Worker Orientation:

     All newly assigned inmate workers shall be given an orientation briefing to advise them of the rules, regulations, and safety requirements for the position.

D-000000085

**SOP NO: 3.07**        **INMATE WORKERS**

5.     <u>Uniforms:</u>

All inmate workers shall be provided the appropriate uniform for their work assignment.

6.     <u>Searches:</u>

All inmate workers who have left the secured perimeter of the facility shall be strip searched immediately upon returning to the secured area of the facility and before being returned to their housing area.

7.     <u>Inmate Worker Use Limitations:</u>

No inmate shall be used for any purpose resulting in private gain for the inmate or the staff. Inmate workers shall not receive any monetary or non-monetary compensation for the work they perform other than those authorized by state law, the Jail Administrator or his/her designee.

D-000000086



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   **WEAPONS**
SOP NO:     **4.01**                                    **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:    23.09, 23.10, 23.11, 23.29, 24.12, 24.13, 24.14**
**APPLICABLE ACA STANDARD NUMBER:    2B-04**
**DATE CREATED:       OCTOBER 15, 1986     LATEST UPDATE:      September 6, 2011**

## POLICY:

To ensure the safety and security of the staff and inmates of the Clayton County Detention Facility, no firearms or unauthorized weapons (including knives) shall be worn or carried in the confinement area unless under emergency conditions, and then only upon the authorization of the Sheriff, Chief Deputy, or Jail Administrator.

## PROCEDURES:

1.   Entry:

     Staff members supervising entry into the confinement area shall require those wishing to enter to remove and deposit firearms and weapons in an approved gun area. Jail Bureau employees shall store their weapons and ammunition locked inside their issued locker. Never shall any employee lock their weapon in a personally owned vehicle while on duty.

2.   Refusal:

     We shall not permit persons refusing to secure weapons in the approved gun area inside the security perimeter and we shall ask them to leave the premises immediately. A Jail Miscellaneous Incident Report shall be generated on all occurrences of refusal of admittance.

3.   Weapons Restriction:

     a.    No firearms shall be taken into the inmate housing area without specific instruction and direction of the Sheriff or his/her designee.

     b.    No impact weapon or knife shall be taken into any inmate housing area without the approval of the Sheriff, Chief Deputy or Jail Administrator.

D-000000087



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
**Implemented on: January 04, 2012**

| | | |
|---|---|---|
| **SUBJECT:** | **CONTRABAND** | |
| **SOP NO:** | **4.02** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**   **23.01, 23.03, 23.29**
**APPLICABLE ACA STANDARD NUMBER:**   **2C-01, 02, 03, 04**
**DATE CREATED:**   **OCTOBER 15, 1986**   **LATEST UPDATE:**   **September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall take all reasonable precautions to prevent the introduction of contraband into the facilities.

**PROCEDURES:**

1.  <u>Definition:</u> Any item not issued, sold through the commissary, allowed through the mail or court documents shall be considered contraband.

2.  <u>Confiscation and Recording:</u> When contraband is found on an inmate or within the facility, the officer making that discovery shall:

    a.   Remove the contraband from the inmate or location.

    b.   Label the contraband showing the date & time, name of the inmate from whom taken and the location from which removed. Photographs shall be taken of all contraband.

    c.   If possession constitutes a violation of a rule listed within the inmate handbook, the inmate shall be placed on Disciplinary Lockdown.

    d.   If the contraband violates State Law, it shall be turned over to the evidence custodian. The contraband shall remain in evidence, pending criminal charges or destruction.

    e.   If the contraband does not violate State Law, it shall be turned over to the Shift Supervisor.

    f.   A Sheriff's Office incident report shall be generated in all instances where the contraband found may or will result in criminal charges being taken.

    g.   If criminal charges are being filed the contraband shall not be destroyed until all charges or proceedings surrounding the incident are resolved.

D-000000088



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   SECURITY INSPECTIONS**
**SOP NO:     4.03**                                      **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:**   23.01, 23.03, 23.29
**APPLICABLE ACA STANDARD NUMBER:**    None
**DATE CREATED:       OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall be constantly alert to the need for safety and security of inmate, staff, and building operations. Regular inspections of the facility shall be performed to ensure the safety and security of the facility is maintained.

**PROCEDURES:**

1.     Cell Searches(Shakedowns):

   a.     The Shift Supervisor may order systematic cell searches at any time.

   b.     Contraband:    If contraband is found during special or routine cell searches, the procedures set forth in SOP 4.02 for contraband shall be followed.

   c.     Inmates' personal property is to be respected and is not to be inappropriately discarded, broken or misplaced.

   d.     The day room and lavatory/shower areas and all other areas accessible to inmates are to be searched in addition to the inmate's cells.

2.     Inspections:

   The Jail Administrator shall insure quarterly inspections are made of security and safety equipment. The inspections shall include:

   a.     All locks.
   b.     All cell doors, cell areas, & security perimeter.
   c.     All video and audio monitoring devices.
   d.     First Aid kits.
   e.     Fire extinguishers and hoses.
   f.     Smoke detectors and fire alarms.
   g.     Window frames, glass, and casings.

D-000000089

**SOP NO: 4.03        SECURITY INSPECTIONS**

     h.     Emergency breathing apparatus (air packs).
     i.      Emergency electrical generator system(s).
     j.      Emergency communication equipment.

3.     <u>Reporting:</u>

If during cell searches, surveillance tours, or security inspections, any irregularities in safety or security are discovered, (such as inoperable locks, damaged equipment, or evidence of tampering) the officer shall:

     a.     Note each irregularity in the daily log.

     b.     Submit maintenance requests for repairs.

     c.     Take disciplinary action if applicable and complete a written report.

     d.     Log the dates and times of cell searches and monthly inspections in the movement log.

D-000000090



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   KEY CONTROL**
**SOP NO:    4.04**                                     **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:**   **9.13, 23.01, 23.11, 23.13, 23.14, 23.29**
**APPLICABLE ACA STANDARD NUMBER:**    **2D-01**
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

**POLICY:**

To provide safekeeping and to prevent unauthorized persons from obtaining any keys, all keys shall be kept in a secured area directly under the supervision of an officer.

**PROCEDURES:**

1.    Identification:

      All keys shall be marked with an identification tab or marking showing a unique inventory number for accountability. There shall be no written description on either the key itself or any attached tab describing which lock the key shall operate.

2.    Key Control Safe:

      The officer manning Central Control shall ensure the safe is undamaged and in working order. The Key Control Safe shall indicate the key by its inventory number, key position, the name, employee number of the person receiving the key. The safe shall electronically maintain a log of the name and employee number of person, the date and time given out and the date and time returned. All keys issued are to be returned before the officer may be relieved of his or her post and the next watch assumes command.

3.    Offsite Set:

      Any areas designated for a backup or secured set of keys shall have those keys secured in a vault or locked cabinet outside the secured area of the jail to prevent anyone other than authorized personnel from obtaining them.

4.    Authorization:

      Only employees or contractors of the Clayton County Detention Facility are authorized to possess facility keys, with approval from the Jail Administrator. Under no circumstances shall an inmate possess facility keys.

D-000000091

**SOP NO: 4.04          KEY CONTROL**

5.    <u>Security:</u>

No employees shall refer to key or lock number/name in the presence of inmates.

6.    <u>Key return:</u>

At the end of a shift each person in possession of keys shall return the keys assigned to him or her to the key storage area unless they have passed on the keys to the relieving officer, they have notified a supervisor and annotated this on the Central Control log. If keys are passed on to the oncoming shift it should by logged on the Housing Unit log and on the log in Central Control.

7.    <u>Notification:</u>

Any person who discovers a missing or damaged key shall report it immediately to the Shift Supervisor. In the event the key was lost inside the facility, inmates are to be locked in their cells, and a search conducted of the facility. A Jail Miscellaneous Incident Report is to be completed by the officer detailing the circumstances surrounding the incident as well as the efforts made to retrieve the key or have it replaced.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **INMATE COUNT** | |
| **SOP NO:** | **4.05** | **GA. LAW: NONE** |

| | |
|---|---|
| **APPLICABLE GSA STANDARD NUMBER:** | **23.01, 23.02, 23.21, 23.29** |
| **APPLICABLE ACA STANDARD NUMBER:** | **2A-10** |
| **DATE CREATED:** OCTOBER 15, 1986 | **LATEST UPDATE:** September 6, 2011 |

**POLICY:**

To ensure we account for inmates at all times, a count shall be conducted of every individual in the custody of the Clayton County Detention Facility.

**PROCEDURES:**

Before they can regard an inmate as present, the officer conducting the count must physically observe each inmate's physical and facial characteristics and make a visual comparison with each inmate's armband photo identification, to ensure positive identity. During the count the officer shall make an inspection of each individual cell for and note any damage on the inmate(s) cell inspection sheet.

    a.    An officer shall conduct an inmate count at the beginning of each shift and at least once after the final lockdown of the evening has been completed.

    b.    As the officer is conducting head counts, the officer shall compare it to the Jail Census to ensure they have accounted for each inmate. During the head counts the officer shall also ensure each inmate is in their assigned cell.

    c.    When the officer has not accounted for an inmate during a head count, the officer shall:
        1. Check movement log for movement of the inmate;
        2. Check local computer for change in inmate status;
        3. Notify his or her Supervisor immediately if movement cannot be tracked. The officer shall repeat the procedure to ensure they did not make a mistake.

    d.    There shall be no non-emergency inmate movement within the facility during head counts, except for inmate releases or other circumstances which cannot be delayed.

    e.    The officer conducting head count shall report the results of the head count to Central Control. Central Control shall maintain the status of each area's head count, and shall report any discrepancies to the Watch Commander. Central Control shall also advise the Watch Commander and shift supervisor's once all of the head counts have been completed.

D-000000093



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:    INMATE MOVEMENT
SOP NO:    4.06                                     GA. LAW: NONE

APPLICABLE GSA STANDARD NUMBER:    23.20
APPLICABLE ACA STANDARD NUMBER:    2A-01, 06, 07
DATE CREATED:    OCTOBER 15, 1986    LATEST UPDATE:    September 6, 2011

## POLICY:

Staff of the Clayton County Detention Facility shall ensure inmate movement through the facility is accomplished with a minimum of disruption to the daily operations. During inmate movement the staff shall also strive to maintain a safe environment for all employees and inmates.

## PROCEDURES:

1.    Notification:

When inmates are to be moving outside the housing unit area, the officer directing the inmate(s) movement shall notify Central Control of the destination prior to the movement of the inmate(s).

2.    Inmate Behavior:

During movement, inmates shall walk in a single file line with their hands behind their back without speaking, on the right hand side of the hallway, and shall only walk in the areas designated for inmates. Any inmates violating this shall be subject to disciplinary action.

3.    Security:

Central Control shall visually monitor the inmate(s) movement through the facility by available camera monitors and observation windows. All inmates moved to a room with a suspended ceiling shall be under direct supervision at all times.

4.    Escorting Inmates:

Officer(s) shall escort inmates known to be extremely violent, or considered an escape risk, at all times while outside their assigned housing area. This is to include all inmates on Security Segregation. All female inmates shall be escorted when moving in the Main Inmate Corridor. Security Segregation inmates should be escorted by a minimum of two officers.

D-000000094

**SOP NO: 4.06          INMATE MOVEMENT**

5.   <u>Building Status Codes:</u>

Central Control shall periodically, or as requested, make announcements to inform staff of the security level required for inmate movement. The announcement should reflect the established color code system in place for inmate movement:

a.   *Code Green*:      Normal inmate movement

b.   *Code Yellow*:    All inmates moving throughout the facility must be escorted.

c.   *Code Orange*: May be used to limit or stop inmate movement through a specific area. There shall be no inmate movement through an area that has been designated Code Orange, unless approved by a Shift Supervisor.

d.   *Code Blue*:      Used during a medical emergency to limit or stop inmate movement through a specific area. There shall be no inmate movement through an area that has been designated Code Blue, unless approved by a Shift Supervisor.

e.   *Code Red*: Used in emergency situations (fire, escapes, riot, etc.). There shall be no inmate movement. All inmates are to be locked down in their cells. All inmate workers are to be escorted to the closest secured area. All civilian employees and contractors shall be accounted for and escorted to the nearest secured area. Visitors shall be escorted from the building. An inmate head count is to be conducted. The Sheriff's Office Command Staff shall be notified. Code Red can only be ordered by a member of the Justice Bureau Supervisory staff.

6.   <u>Authorization:</u>

Officer(s) shall allow no inmate through any door without first determining if the inmate has authorization to enter.

7.   <u>Inmate Access:</u>

Officer(s) shall allow no unauthorized inmate access to the Staff Dining Room, Kitchen, Laundry Room, or Maintenance Shop.

8.   <u>Inmate Identification:</u>

Officer(s) shall allow no inmates to leave their assigned Housing Unit without their identification visible at all times.

9.   <u>Inmate Workers:</u>
Only those inmate workers that have been authorized to leave the secured area of the facility

D-000000095

**SOP NO: 4.06**          **INMATE MOVEMENT**

shall be allowed to do so. The inmate worker's security level shall be indicated by the established color coded system in place at the time.

D-000000096



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   **TRANSPORTATION OF INMATES**
SOP NO:      4.07                                   **GA. LAW: 42-1-7**

**APPLICABLE GSA STANDARD NUMBER:   5.06, 23.30**
**APPLICABLE ACA STANDARD NUMBER:   1B-01, 2A-07**
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

Transporting of inmates shall be normally carried out by personnel of the Field Operations Division. In case of an emergency, sworn personnel of the Jail Operations Division may be substituted should Field Operations personnel be unavailable at the time. The staff of the Clayton County Detention Facility shall transport inmates as safely and humanely as possible. This shall be done in a manner to ensure the safety and security of the transporting officer(s) and the surrounding community.

**PROCEDURES:**

1.     Handcuffs:

       Transporting officer(s) shall handcuff individuals being transported outside the facility behind their back at all times unless there are mitigating circumstances, such as medical problems, which could be detrimental to the inmate(s) health or length of travel to destination.
       **Note**: Those inmate workers who are authorized to leave the secured area of the facility who are being transported to or from an outside work detail need not be handcuffed unless there are extenuating circumstances.

2.     Leg Irons/waist chains:

       Leg irons and/or waist chains, when feasible, should be used when transporting inmates.

3.     Transfer to Other Law Enforcement or Correctional Agencies:

       When inmates are to be transferred to another agency or correctional facility the following procedures shall be followed:

       a.     When transferring an inmate into the custody of another law enforcement agency or correctional agency, the releasing officer shall inform the escorting officer(s) of the inmate's history and behavior, any indication of risk posed by the inmate, any unusual circumstances pertinent to the safe handling of that inmate.

       b.     The releasing officer shall notify the Medical Staff of the inmate's release, who shall then inform the transporting officer of any medical precautions.

D-000000097



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:    USE OF FORCE** | |
| **SOP NO:      4.08** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**    23.25, 23.26, 23.27, 23.28, 24.10, 24.15
**APPLICABLE ACA STANDARD NUMBER:**    2B-01, 02, 04, 05, 6A-06, 6B-02
**DATE CREATED:       OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

Only the amount of force reasonably necessary to maintain or regain control shall be used by the staff of the Clayton County Detention Facility. Physical punishment of an inmate shall not be permitted under any circumstances.

**PROCEDURES:**

The Sheriff's Office Use-of-Force Continuum is structured with the least level of force being non-lethal "officer presence" and the highest level being the application of lethal, or deadly, force; provided, however, that initial application of the continuum is to begin with reasonable force in light of the existing circumstances and thereafter continually adjusted to increase or decrease the level of force based on the violence or resistance encountered by the security staff. The applicable use of force continuum is as follows:

1.    <u>Use of Force Continuum:</u>

      a.    Officer presence

      b.    Verbal requests and/or commands

      c.    Empty soft hand control or take-down techniques (including come along, joint lock/manipulation, pressure points), or authorized chemical sprays

      d.    Empty hard hand strikes (including open hand or closed hand strikes, knee/elbow strikes, kicks), or Taser (Officer certified)

      e.    Strikes with impact weapons

      f.    Lethal force

D-000000098

**SOP NO: 4.08          USE OF FORCE**

2.      <u>Medical Treatment:</u>

After physical force has been used against a person, and he or she has been subdued, Security Staff shall provide the inmate access with the appropriate medical treatment as soon as possible.

3.      <u>Reporting:</u>

After every incident in which an officer has used physical force, the officer or staff member involved shall complete a Jail Miscellaneous Incident Report, citing the reasons for the degree of force used and the results of its use. Photographs shall be made of the inmate and officer(s) involved to document injuries or lack of injuries that were received as a result of physical force. Physical force is defined as use of force at, or above level (c) as listed in section (1) of this policy. A Use of Force report must be submitted when physical force is used on an inmate.



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

---

**SUBJECT:    USE OF PHYSICAL RESTRAINING DEVICES**
**SOP NO:    4.09**                                    **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:    23.25, 23.28, 24.08**
**APPLICABLE ACA STANDARD NUMBER:    2B-02, 03, 05**
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

---

**POLICY:**

Restraining devices such as handcuffs, leg irons, full-bodyguard restraint devices, waist chains, and other restraining devices approved by the Jail Administrator shall never be used for purposes of punishment. Violent inmates shall be separated and/or restrained to prevent escape, protect staff, protect other inmates, and to prevent any self-inflicted injury.

**PROCEDURES:**

1.    Isolation:

When an inmate's behavior suggests a potential for an actual attempt at violence toward themselves or others, the inmate shall be placed into isolation.

2.    Criteria:

An inmate shall be placed into restraints only when he or she continues to exhibit physical violence toward staff, themselves, or others.

3.    Decision:

Security Staff shall have the authority to place an inmate in handcuffs, leg irons, and/or waist chains when circumstances demonstrate a necessity for the restraints. A Shift Supervisor on duty shall decide whether to place an inmate into full body restraints. The only exception shall be in emergency circumstances when a Shift Supervisor is unavailable, and then he or she shall be notified as soon as possible afterwards. The Shift Supervisor shall notify the Watch Commander as soon as possible after the inmate has been placed in restraints to control disruptive or harmful behavior.

**SOP NO: 4.09          USE OF PHYSICAL RESTRAINING DEVICES**

4.    <u>Restraints:</u>

If after placement in an isolation cell the inmate's behavior is still disruptive or harmful to them or others, the inmate shall then be placed into a full body restraint device, or other type of approved passive restraints. The Shift Supervisor shall supervise the inmate's placement into the restraints, except in emergency cases where the Supervisor is not immediately available, and there is an immediate need to restrain the inmate. Restraint devices are to be used to restrict the movement of an inmate only to the degree necessary to prevent the inmate from doing harm to himself / herself or others and to use minimal discomfort while avoiding injury to the inmate. A log shall be started immediately after the inmate is placed into restraints. Medical Staff shall immediately check the inmate for current injuries and to ensure that the security staff has in no way applied the physical restraints in a manner that would cause injury. When the inmate is calm and is no longer a danger to themselves or others, the Shift Supervisor shall supervise the inmate's removal from the restraints. An officer shall check the inmate at least once every fifteen minutes while restrained. Approved methods of restraints are as follows:

a.    Full Body Restraint Device

b.    Handcuffs or flex cuffs (only if other restraints cannot be used)

c.    Leg Irons and/or waist chains

d.    No hog tying shall be authorized.

1.    <u>Reporting:</u>

A Jail Miscellaneous Incident Report and Use of Force report shall be completed to document the use of full body restraint devices, or similar passive restraint devices, used to control an inmate's disruptive behavior or to prevent injury to themselves or others.



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   DIGITAL RECORDING OF INCIDENTS**
**SOP NO:     4.10**                                          **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:**   8.28, 8.29
**APPLICABLE ACA STANDARD NUMBER:**   2A-01
**DATE CREATED:        OCTOBER 15, 1986      LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall make digital recordings from facility cameras when necessary to document activities within the facility.

**PROCEDURES:**

1.   Responsibility:

Digital Recordings will be controlled through use of password dissemination.

2.   Storage:

All cameras are recording on a continual basis.        Any recording of an incident needs to be requested through the Jail Administrator or his designee.
**Note**: After 40 days no recording will be available.

3.   Release:

Any release of recordings shall be accomplished in accordance with SOP 1.04
(Release of Information).

4.   Recording Devices:

Use of recording devices can only be authorized by a Supervisor for the purpose of documenting specific incidents to include an inmate's institutional behavior. Any such recording shall be forwarded to the Jail Administrator or his/her designee for storage, unless the video recording is intended or has the potential to be used as evidence in a criminal matter. In such cases, the recording shall be turned over to the Sheriff' Office Evidence Custodian to be maintained as evidence. The recording shall remain in evidence pending the subsequent case disposition. Personal recording devices shall not be used within the facility without the expressed approval of the Jail Administrator or his/her designee.

D-000000102



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   HUNGER STRIKE**
**SOP NO:     4.11**                                    **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:**   18.06, 24.01
**APPLICABLE ACA STANDARD NUMBER:**   4C-09, 12, 13
**DATE CREATED:       OCTOBER 15, 1986       LATEST UPDATE:       September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall ensure all inmates receive proper nutritional meals as described by law. Staff shall strive to identify inmates exhibiting signs that they are participating in a hunger strike as soon as possible, and ensure they are closely monitored by Medical Staff. Staff shall also attempt to identify and resolve the reasons for any inmate(s) staging of hunger strikes. All resolutions shall be done without compromising the department and division's goals, security procedures, or the court ordered terms of confinement for the inmate.

**PROCEDURES:**

1.   Notification:

     When an employee learns of an inmate exhibiting signs of a hunger strike, whether the inmate stated that he/she intends to go on a hunger strike or by the inmate refusing to eat for 24 hours, the employee shall immediately notify the shift supervisor and medical staff.

2.   Housing:

     Any inmate(s) involved in a hunger strike shall be housed in the Medical Section whenever practical. If several inmates are participating and adequate space is not available, housing shall be coordinated with the Shift Supervisor to satisfy additional medical monitoring.

3,   Documentation:

     The control officer for the section where the participating inmate(s) are being housed, shall record the inmate(s) food intake on the daily movement log. Medical Staff shall weigh participating inmates immediately upon learning of their participation and frequently during the hunger strike. Medical Staff shall record all observations and treatments given to each participating inmate in their medical record.

D-000000103

**SOP NO: 4.11        HUNGER STRIKE**

4.    <u>Privileges:</u>

Commissary privileges are to be suspended for participating inmates during the hunger strike to ease the accurate monitoring of their dietary intake. During such a hunger strike all hygiene items are to be provided as required to maintain clean grooming habits.

5.    <u>Court Order:</u>

When a physician determines that the inmate's hunger strike has progressed into a life threatening condition, the Jail Administrator or his designee shall be advised immediately. The County Attorney shall be requested to seek a court order to allow the forced feeding of the inmate.

D-000000104



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   RAZORS FOR INMATES**
**SOP NO:      4.12**                                              **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:   15.17**
**APPLICABLE ACA STANDARD NUMBER:   6A-07**
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall issue razors to inmate(s) when the inmate has a court proceeding.

**PROCEDURES:**

1.     Qualifying Inmates:

      a.     Inmates shall only have access to a   razor   on   the   night   before   mandatory   court appearances.

      b.     Inmates on Lockdown or Security Segregation shall only have access to a razor on the night before mandatory court appearances.

      c.     Under no circumstances shall an inmate who has overtly stated either verbally, or through their institutional behavior, that they are suicidal or homicidal, be issued a razor.

2.     Issuance of Razors:

The inmate's name shall be written on the handle of the razor in indelible ink by the issuing officer. A log shall be maintained by the unit officer documenting the inmate(s) which received a razor.

3.     Maintenance of Razors:

Inmates who abuse their razor privileges shall be placed in Disciplinary Lockdown for a period of time that is no less than thirty (30) days. The following are practices which justify the above sanction:

      a.     Using the razor for any purpose other than hair removal.

D-000000105

**SOP NO: 4.12          RAZORS FOR INMATES**

      b.      Causing damage to or altering a razor from its original factory design.

Inmates who have had their razor privileges revoked shall not be allowed to have access to a razor the night before mandatory court appearances. When it has been determined by the Medical Staff that there is a need for the inmate to shave due to health reasons, at which time a razor will be issued and used under the direct supervision of an officer assigned to the Security Section. The razor shall be retrieved immediately after use. Only the Sheriff, Chief Deputy, Jail Administrator, or his/her designee shall have the authority to restore an inmate's razor privileges once it has been removed.

      c.     Loss of Razor.

Failure to return the razor for any reason.

4.     <u>Documentation:</u>

Officers who revoke an inmate's razor privilege shall complete a Jail Miscellaneous Incident Report, making the necessary notation on the inmate's Waiver Form, and entering the disposition "R" which indicates "NO RAZOR" as the Lockdown status on the inmate's local CJIS file.

5.     <u>Inspection and Accountability:</u>

All razors shall be inspected upon initial issue and immediately upon return. The time razors are issued out and returned shall be logged on the Housing Unit log.

D-000000106



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   PREPARING INMATES FOR COURT**
**SOP NO:     4.13**                                                    **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:   NONE**
**APPLICABLE ACA STANDARD NUMBER:   6A-01**
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall ensure inmates are prepared and ready for their scheduled court appearances in a timely fashion and in strict accordance to the orders of the court.

**PROCEDURES:**

1.   Court List:

    Each evening before the next regular court day, Court Services Personnel shall generate a computerized court list and submit it to the Security Staff listing the inmates needed for court.

    a.    The court list shall specify the following information:

        i.     Inmate's full correct name (and any alias names known)
        ii.    LE number
        iii.   Court in which the inmate is to appear
        iv.    Type of clothing the inmate is to wear
        v.     Time of court appearance (a.m./p.m.)

    b.    Personnel on duty, upon receipt of a court list, shall prepare the inmates' paperwork as needed for court.

2.   Inmates Clothing/Attire for Court:

    Staff shall ensure we have dressed each inmate in the approved type of clothing for appearance in court. The following are approved types of clothing:

    a.    Facility issued uniform.

D-000000107

**SOP NO: 4.13          PREPARING INMATES FOR COURT**

      b.      Civilian/street clothes if specified by court

            i.      Staff shall make approved clothing available to the inmate prior to scheduled court time.

            ii.     Property clerks shall inventory and log all personal clothing from the Property Room on each occasion it is used.

            iii.    Jail Staff shall advise Court Services Personnel of all inmates wearing civilian clothing.

3.     <u>Pulling Inmates:</u>

Officers shall have all inmates prepared and ready to be received by Court Protective Services at least thirty minutes before their scheduled court time. Inmates will be searched prior to leaving their respective Housing Units and again prior to being turned over to Court Protective Services.

4.     <u>Returning Inmates:</u>

All inmates who have left the secure perimeter of the facility shall receive a frisk search prior to their re-entry to prevent introduction of contraband into the facility. Supervisors may order strip searches in accordance with the policy defined in SOP 2.09 (Strip Searches) when deemed necessary.

5.     <u>Court Orders/Dispositions:</u>

Court Protective Services shall provide all court documents relating to the dispositions of inmates appearing in court to Classification Personnel to update any facility records.

D-000000108



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   PACKAGE AND VISITOR SCREENING
SOP NO:     4.14                                    GA. LAW: NONE

APPLICABLE GSA STANDARD NUMBER:     16.05, 16.16, 23.05, 23.06
APPLICABLE ACA STANDARD NUMBER:     None
DATE CREATED:          OCTOBER 15, 1986          LATEST UPDATE:          September 6, 2011

## POLICY:

To maintain the security of the Clayton County Detention Facility, and to deter those who take violent actions against inmates, law enforcement or court personnel, the Security Staff shall screen all visitors and packages entering the building.

## PROCEDURES:

1.   Screening:

     All visitors and packages attempting to enter the building shall be screened for contraband and weapons

2.   Fraternization:

     Sheriff's Office Employees (sworn and unsworn), Officer or Civilian and Contractual/Volunteer employees shall not fraternize with any inmate to include but not limited to:
     a.        delivering messages;

     b.        special favors;

     c.        establishment of friendships.

3.   Weapons:

     Weapons may not be brought inside the public areas of the facility by any person with the following exceptions.

     a.        Sworn personnel of the Clayton County Sheriff's Office may carry into the facility, their duty weapons, approved back up weapons, approved off duty weapons and weapons recovered as evidence or the personal property of another.

     b.        Correctional Officers may carry an issued or approved weapon into the facility.

All other procedures outlined in the S.O.P. - 4.01 concerning the carrying of weapons in a confinement area shall continue to be followed.

**SOP NO:      04.14 PACKAGE AND VISITOR SCREENING**

4.      <u>Contraband Prohibited from entry into the Detention Facility</u>

    a.      At no time shall any flammable substances be permitted entry into the facility. This includes but is not limited to fuels (gasoline, kerosene, alcohol, etc.) ether, compressed gas (natural, propane, butane, etc.), solvents, etc..

    b.      At no time shall any explosive substances or devices be permitted entry into the facility. This includes but is not limited to typical explosives (ie, fireworks, dynamite, TNT, etc.), ammunition, gun powder, "charges" for mechanical tools (ie, nail guns, pipe cleaners, etc.), C02 cartridges, etc.

    c.      At no time shall any bladed or pointed device, of sufficient size to be considered capable of rendering harm to a person be permitted entry into the facility. This includes but is not limited to knives, swords, spears, scissors, garden implements (ie, axes, shovels, rakes, picks, etc.), etc.

    d.      At no time shall any device capable of being used as a bludgeon be permitted. This includes but is not limited to baseball bats (wood, metal, and plastic), tools (i.e. hammers, wrenches, etc.), impact weapons (i.e. batons, nunchuks, brass knuckles, etc.), lumber, tree limbs, metal rods, etc.

    e.      At no time shall any unauthorized cameras (film, digital, video, etc.) or audio recording devices be permitted into the secured area of the facility.

Exceptions

(a)- a single cigarette/cigar lighter or pack of matches carried by an individual shall be permitted. (a)(b)(c)(d)(e)-an authorized vendor/contractor utilizing one or more of the above shall be permitted after inspection and approval by either Security Staff or Supervisor. All tools used by contractual employees and volunteers shall be approved by the Jail Administrator or their designee.

(e)- where entry into secured areas of the facility prohibits the presence and/or use of such devices then such shall not be permitted past any public area into a secured area.

**SOP NO:        04.14 PACKAGE AND VISITOR SCREENING**

5.      <u>Charity</u>:

Nothing shall be given, loaned, traded, or sold to any inmate without prior approval from the Jail Administrator or their designee.

D-000000111



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   MAIL** | |
| **SOP NO:      5.01** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**     16.01, 16.02, 16.03, 16.04, 16.05, 16.06, 16.07
**APPLICABLE ACA STANDARD NUMBER:**     5B-01, 02, 6A-03
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The Clayton County Detention Facility shall allow and encourage inmates to communicate with persons outside the jail by sending and receiving mail. This facility will ensure that mail is processed in a timely manner and will not be withheld except where such restrictions are necessary to maintain the order and security of the facility.

**DEFINITIONS:**

**Contraband:** An item whose introduction or possession is prohibited within a jail. Contraband may be items that are either illegal or legal but prohibited by this facility. All items of contraband will be handled in the appropriate manner and will be either destroyed, placed in the inmate's personal property or turned over to the courts for prosecution.

**Non-Privileged Mail:** Mail that inmates send to, or receive from family, friends and private organizations. This also includes newspapers or magazines received from publishers.

**Legal Mail:** Mail that inmates send to, or receive from, their attorneys of record or with whom an attorney- client relationship has been established, the courts, or other officials, as well as the probation, parole, and supervisory officers. Whenever an inmate receives mail from an attorney, it shall be automatically presumed that an attorney-client relationship exists.

**PROCEDURES:**

1. **Incoming Mail**

   A. All incoming mail, except legal mail and other specifically approved items, must be in metered or pre-stamped postcard form. All postcards shall contain the inmate's name and return address as follows:

   Inmate's Full Name and LE
   Number Clayton County Sheriff's
   Office 9157 Tara Blvd
   Jonesboro, Ga. 30236

D-000000112

**SOP NO: 5.01          MAIL**

1.        Acceptable Postcard Forms:

   a. Postcard minimum size requirements are 3.5 inches by 4.25 inches.
   b. Postcard maximum allowable size is 4.25 inches by 6 inches.
   c. Must be written in blue or black ink only.
   d. Postcards must be white in color and be either metered or contain a preprinted stamp.

2.        Unacceptable Postcard Forms:

   a. Defaced or altered postcards.
   b. Plastic or wrappings on postcards.
   c. Postcards marked with pain, crayons, or markers.
   d. Postcards with labels or stickers.
   e. Postcards with watermarks or stains.
   f. Postcards with any biohazards, including perfumes or lipstick.
   g. Postcards depicting nudity, weapons, or gang references.
   h. Postcards containing an affixed stamp.

B.  Monies being mailed to an inmate must be in an envelope and will be addressed in the following manner:

   Clayton County Sheriff's Office Attn:
   Accounting
   9157 Tara Blvd.
   Jonesboro, Ga. 30236

   Monies must be made out to the Clayton County Sheriff's Office with the inmates name and LE number printed on the line designated as "For" on the document. No additional correspondence will be accepted with incoming monies. All envelopes marked as incoming monies will be opened and inspected. If additional contents are located in the envelope, the entire package will be returned to sender. All accepted monies will be turned over to the accounting staff and deposited to the inmate's account.

1.        Acceptable United State currency includes:

   a. Any casher check (also known as an official check)
   b. Money Order.

C.  Up to four photographs may be mailed to the jail after the inmate has been incarcerated for 30 or more days. The envelope must be clearly marked as "PHOTOGRAPHS." The photographs must not exceed four inches by six inches in size, must be unaltered, and may not contain any adhesives such as stickers or labels. The inmate's name and booking number must be written on the back of each photograph. Nothing else is to be written on

D-000000113

**SOP NO: 5.01          MAIL**

the photographs. All accepted photographs must be developed prints, not Polaroid pictures are authorized. No additional correspondence will be accepted with incoming photographs. All envelopes marked as "PHOTOGRAPHS" will be opened and inspected. If additional contents are located in the envelope, the entire package will be returned to sender.

  1.     Photographs containing the following shall be deemed inappropriate and shall be returned to the sender:

    a.     If the picture depicts sexual activity or visibly exposes the breast, pubic area or buttocks.
    b.     Pictures promoting or showing illegal activity.
    c.     Pictures containing gang signs or codes.

D.  Packages will not be accepted unless specifically authorized by the jail commander. All unauthorized packages will be returned to the sender.

E.  Inmates may receive newspaper, magazines, and new soft cover books shipped directly from a publisher or book company. However, the ordering, purchasing, and payment for these shall be the sole responsibility of the inmate's family or friends. All reading materials shall be subject to inspection for contraband. Any newspaper or magazine received may only be kept by person whose name it is received in. Anyone else possessing it makes it contraband.

  1.     Reading material containing the following shall be deemed inappropriate and shall be returned to the sender:

    a.  Content contains pictures that depict sexual activity or visibly exposes the breast, pubic area or buttocks.
    b.  It contains information of escape plots, riots or other disorder or plans to violate laws or rules.
    c.  It contains threats, extortion or obscenity.
    d.  It contains gang signs or codes.
    e.  It contains information that advocates or describes the killing of law enforcement personnel.
    f.  It contains plans for the production of any explosive, incendiary or pyrotechnic device.
    g.  It contains writings that would inflame or contribute to tension between ethnic groups and threaten the safety, security or order of the facility.

2.  **Outgoing Mail**

    A.  All outgoing non-privileged mail shall be in approved postcard form

    B.  All outgoing legal mail will be clearly marked as such on the outside of the envelope.

SOP NO: 5.01          MAIL

    1.       Outgoing legal mail will be verified to be such prior to leaving this facility.

    2.       Outgoing legal mail will only be opened in the presence of the inmate when clear and convincing evidence of a security breach establishes good cause.

C.  There are no limitations on the amount of legal mail that can be sent or received by an inmate in this facility. However mail maintained in inmate's possession must fit in his or her bin will all other property otherwise it must be stored in personal property.

3. **Restrictions on Non-Privileged Mail Quantity**

Inmates are only allowed to have (4) four books and or magazines including religious books, (20) twenty postcards and (1) one newspaper in their possession at any time. Any additional items are considered a fire hazard/contraband and shall be confiscated and destroyed. There are no restrictions on the number of postcards inmates can mail out providing they have sufficient materials to do so.

4. **Restrictions on the Addressee**

The Jail Administrator or their designee in special circumstances may impose additional restrictions for situations such as intimidation of witness, harassment of any individual or family, court ordered restrictions or correspondence with a minor whose parents or legal guardian may object. Staff shall not permit correspondence between inmates incarcerated in this facility.

5. **Inspections for Contraband**

All incoming or outgoing mail is subject to being opened and inspected for contraband, cash, checks, or pornography. Staff shall not read incoming or outgoing mail unless circumstances present a legitimate security interest. Mail originating from, or intended for an attorney, court, or any elected official may only be opened in the inmate's presence and then only inspected for contraband, cash, checks, or pornography. This inspection shall be completed by Security Staff and is for the strict purpose of insuring contraband is not being sent from, or received into this communication. Legal mail must be marked and readily identifiable as legal mail before staff shall treat it as such. Pre-stamped envelopes provided to an inmate through the mail in legal correspondence shall not be considered contraband.

6. **Processing**

Incoming or outgoing mail shall be processed for regular distribution daily Monday through Friday. Jail personnel will not retain an inmate's incoming or outgoing mail for more than 24 hours or packages for more than 48 hours, excluding weekends and holidays.

**SOP NO: 5.01          MAIL**

A. All incoming mail will be inspected for contraband, but will not be censored. Legal mail will be opened in the presence of the inmate.

B. Incoming mail addressed to an inmate that is not longer at this facility will be returned to sender.

C. Personnel will distribute mail only to the inmate who is to receive the postcard, letter, or package. Mail will not be handled or distributed by another inmate.

D. Personnel shall collect outgoing inmate mail daily. All mail must have a return address and correct postage before being delivered to the USPO.

D-000000116



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:    TELEPHONES**
**SOP NO:     5.02**                              **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:**  8.57, 16.08
**APPLICABLE ACA STANDARD NUMBER:**  2A-14, 6A-04, 05

**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall encourage inmates to communicate with their family or friends by telephone. Inmates shall have equal and adequate access to a telephone unless their privileges have been restricted for disciplinary or rule violations.

**PROCEDURES:**

1.    Use of Telephone During In-Processing:

      Inmates being processed in the intake area of the Detention Facility shall have access to telephones to contact family, make arrangements for posting bond, and retain legal counsel.

2.    Exceptions:

      Access to a telephone may be restricted when:

      a.    A special request has been made by the arresting or investigating officers directly to a Supervisor. Information provided must show a clear need to restrict communication which might jeopardize an ongoing investigation or security. Coordination shall be established between the requesting officer and a Supervisor as to when the restriction is to be lifted. The requesting officer must provide a contact person (such as the officer's Supervisor) so the coordination will continue in the event the restriction goes beyond the normal watch change for either the officer or the Supervisor.

      b.    Person(s) desiring to add, remove, or change blocks on the inmate telephone system shall do so in person, and shall provide documentation which establishes them as the person named on the telephone account. All requests must be reviewed by the Administrative Officer.

D-000000117

**SOP NO: 5.02**          **TELEPHONES**

3.      <u>General Population Access:</u>

Inmates in general population shall have daily access to the inmate telephone system. Telephones shall be automatically turned on at 7:00 a.m. and turned off at 11:00 p.m. This system can be manually turned off by the housing unit control officer for emergency situations or for disciplinary reasons.

4.      <u>Medical Section Inmates:</u>

Inmates housed in the medical section shall be provided daily access to the inmate telephone system.

5.      <u>Privacy and Monitoring:</u>

Security Staff shall not intentionally place themselves in such proximity as to overhear inmate telephone calls. Calls to attorneys and the courts shall not be monitored. Other inmate telephone calls may be monitored by a Supervisor.

6.      <u>Deaf and Mute Inmates:</u>

Inmates who are deaf or are not able to speak shall be given the opportunity to use the teletype telephone (TTY or TDD). Inmates requiring the use of such phone shall be allowed to use the TTY at least once per shift, work load permitting. All instances in which an inmate uses the TTY shall be documented on the appropriate movement log.

D-000000118



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:    INMATE VISITATION/FACILITY VISITORS**
**SOP NO:    5.03**                          **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:    16.09, 16.10, 16.11, 16.12, 16.13, 16.14, 16.15**
**APPLICABLE ACA STANDARD NUMBER:    5B-01**
**DATE CREATED:    OCTOBER 15, 1986    LATEST UPDATE:    September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facility shall encourage and provide the means for inmates to speak with family and friends through non-contact visits. The staff shall make every reasonable attempt to accommodate attorney visits with their client. The staff shall also cooperate with community requests for facility tours. All facility tours shall be coordinated with and approved or disapproved by the Jail Administrator, or their designee.

## PROCEDURES:

1.    Eligible Inmates:

        The following inmates are eligible for visitation:

        a.    Inmates who have successfully completed orientation, and have not had their visitation privileges suspended.

        b.    Inmates housed in the Infirmary, who have not completed orientation due to a medical condition, shall have to be cleared to visit by Medical Staff and the visit approved by a Shift Supervisor.

2.    Eligible Visitors/Type Visit:

        Staff may approve the following visitors for visitation:

        a.    Family or friends

        b.    Clergy may visit subject to the regular visitation rules. All additional visits by clergy shall be coordinated with the Chaplain.

        c.    Law Enforcement/Criminal Justice workers: As needed, unless the visit compromises the security of the facilities.

        d.    Attorneys which are members of the Georgia Bar Association may visit their client(s).

D-000000119

**SOP NO: 5.03        INMATE VISITATION/FACILITY VISITORS**

      e.      Bondsmen may visit an inmate at any time, providing it does not disrupt the daily operations of the facility.

      f.      The Shift Supervisor shall have the discretion to approve additional visitation privileges, if the request for the visit demonstrates that there are extenuating circumstances.

3.      <u>Visitors can be turned away if:</u>

      a.      They become disruptive.

      b.      The visitor is under the influence of any type of drug or alcohol.

      c.      He or she refuses to obey facility rules.

      d.      The visitor fails to show proper personal identification.

      e.      The visitor poses a threat to facility security.

      f.      The inmate refuses the visit or visitor.

      g.      The visitor is improperly attired.

1.      <u>Reporting:</u>

Staff shall document any denial of visitors. Staff shall note reasons for denying the visit on the visitation log. A Jail Miscellaneous Incident Report shall be prepared for any significant event occurring from the denial of a visit. A list of restricted visitors shall be maintained at the visitation desk.

2.      <u>Visitation Days and Hours:</u>

Visitation days and hours are set as Monday through Friday, 8:00 a.m. until 10:00 p.m., but may be changed anytime by the Jail Administrator or their designee. Inmates are allowed one 30 minute visit during the week. All visitors must sign in to visit before 9:30 p.m.

1.      <u>Passes:</u>

Staff shall issue a pass to each approved visitor entering the secured area of the facilities, regardless of the type of visit.

2.      <u>Identification of Visitor:</u>

Visitors must present a driver's license, or another form of verifiable identification.

**SOP NO: 5.03          INMATE VISITATION/FACILITY VISITORS**

3.      Number of Visitors Allowed:

Each inmate can have no more than four visitors at a time.

9.      Attorney Visits:

Attorneys which are members of the Georgia Bar Association shall have access to visit their clients. Regular visitation hours for attorneys to visit with their clients are normally from 8:00 a.m. to 10:00 p.m., seven days a week. A Shift Supervisor shall review requests by an attorney to visit at any other time, or requests for any individual to accompany the attorney during the interview for approval or denial.

10.     Access of Employees of Attorneys:

Paralegal's, investigators, and any other persons on the attorney's staff, when not accompanied by an attorney, have no more right to visit an inmate in the facility than any other citizen. However, a Supervisor may allow the visit if the person has a formal letter from the attorney, on their business letterhead, requesting the visit be allowed. An attorney visitation may be limited only if the visit will cause an unnecessary disruption that affects the facility security and order on approval from the Jail Administrator or his designee.

11.     Contact Visits:

Contact visits shall only be approved by the Jail Administrator or his designee, and are usually limited to attorney visits for death penalty cases. These visits shall be conducted in one of the Intake Interview Rooms, and shall be visually monitored by a member of the Intake Security Staff. The person(s) visiting are subject to search along with all equipment or belongings before entering the secure area of the facility. The visitor shall be escorted to Intake upon completion of the screening. Upon completion of the visit, the inmate shall be frisk searched and the visitor shall be escorted back to the visitation desk.

12.     Facility Tours:

Requests for tours of the facility shall be accommodated when possible when requested by other law enforcement agencies. The Jail Administrator or his designee shall approve and schedule these tours. Security Staff shall provide a sufficient number of officers to provide security for the tour. The Building Code Status of the affected area(s) of the tour will be changed to Orange. Tours scheduled and coordinated by other Divisions (potential new hires, Y.E.S.S. tours, etc.) shall be conducted in the same manner.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   EMERGENCY MESSAGES TO INMATES
SOP NO:    5.04                              GA. LAW: NONE

APPLICABLE GSA STANDARD NUMBER:   NONE
APPLICABLE ACA STANDARD NUMBER:   NONE
DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011

**POLICY:**

The staff of the Clayton County Detention Facility shall make every effort to ensure the sensitive delivery of emergency messages to inmates. All messages shall be delivered with the utmost care and compassion.

**PROCEDURES:**

1.  Referral:

    Any employee receiving an emergency message for an inmate, shall refer the message to the Jail Chaplain, or in their absence the Shift Supervisor on duty.

2.  Verification:

    If the ranking officer or the Jail Chaplain has reason to suspect the accuracy or truthfulness of the message, he or she shall attempt to verify the message through whatever means are available.

3.  Delivery:

    If the emergency message is a notification of the death or serious injury of a loved one or other message which may cause trauma to the inmate, the Shift Supervisor shall arrange to have the inmate brought to an interview room and deliver the message. The inmate shall be informed if the supervisor has been unable to verify the message.

4.  Recording:

    The Supervisor who delivers the emergency message shall have the control officer note the action on the daily log of the section we have housed the inmate in.

5.  Visits:

    If a friend or relative of the inmate delivered the message to the facility in person a Shift Supervisor shall decide if they shall permit a visit.

D-000000122

**SOP NO: 5.04**       **EMERGENCY MESSAGES TO INMATES**

6.       Observation:

The Shift Supervisor who delivers the message shall have the inmate closely observed after returning him or her to the assigned area, if he or she suspects the inmate might be a danger to themselves, others, or the security of the facility in reaction to the message. The Shift Supervisor delivering the message shall notify the control officer and he or she shall note this in the daily log. The officer shall observe the inmate closely for signs of potential suicide, emotional breakdown, or a possible escape attempt.

7.       Temporary Release:

No officer of the Clayton County Detention Facility, other than the Sheriff, Chief Deputy, Assistant Chief Deputy or the Jail Administrator, has the authority to release an inmate temporarily who has received an emergency message for the purpose of going to a funeral, visiting a hospital, or any other similar purpose. Staff shall instruct the inmate's family to coordinate the visit with the Enforcement Bureau.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   MEDICAL SERVICES** | |
| **SOP NO:      6.01** | **GA. LAW: O.C.G.A  42-4-51** |

| | |
|---|---|
| **APPLICABLE GSA STANDARD NUMBER:** | **14.06, 14.14, 14.15, 14.20** |
| **APPLICABLE ACA STANDARD NUMBER:** | **4D-01, 6A-08** |
| **DATE CREATED:        JULY 21, 1999** | **LATEST UPDATE:        August 2011** |

**POLICY:**

The staff of the Clayton County Detention Facility shall provide the use of medical services to treat any illness, disease, infirmity, or ailment from which an inmate may suffer. Diligent efforts shall be made to ensure all judicially mandated standards for medical care of inmates are upheld and confidentiality of all medical records is maintained in strict accordance to State and Federal law.

**PROCEDURES:**

1.    Compliance with Contractual Obligations:

      The Jail Administrator shall ensure the medical service provider complies with the terms of their contract. Should the medical services contractor fail to comply with the terms of contract, the Jail Administrator shall ensure corrective actions are taken.

2.    Admissions to the Infirmary:

      It shall be the responsibility of the Medical Staff to decide if an inmate should be admitted and housed within the Infirmary, and if an inmate should be cleared to return to general population after being housed in the Infirmary.

3     Providing Treatment:

      Staff shall not deny an inmate necessary care or treatment while in the custody of the Clayton County Detention Facility. Medical Staff shall give treatment in accordance with the specifications of the contractual agreement. Medical services to be made available shall include:

      a.    Daily Sick Call

      b.    Dental Services.

      c.    Mental Health Services

      d.    Screening and treatment for Drug and Alcohol abuse.

D-000000124

**SOP NO: 6.01          MEDICAL SERVICES**

  e.  X-ray

  f.  General and specialized treatment performed by qualified medical practitioners.

4. <u>Personal Physicians</u>:

  Requests for personal physicians to perform elective treatment shall be considered on a case by case basis, subject to approval by the Jail Administrator.

5. <u>Prosthetics and other Assisted Walking Devices</u>:

  The validity of the need for prosthetic and other assisted walking devices to support an inmate shall be determined by the medical staff. Supervisors shall approve the use of the devices provided it does not compromise the facility's security or the presence of the device jeopardizes operational procedures.

D-000000125



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   MEDICAL SERVICE FEES
SOP NO:    6.02                          GA. LAW: O.C.G.A  42-4-51

APPLICABLE GSA STANDARD NUMBER:   NONE
APPLICABLE ACA STANDARD NUMBER:   4D-01, 6A-08

DATE CREATED:        JULY 21, 1999        LATEST UPDATE:   September 6, 2011

## POLICY:

The staff of the Clayton County Detention Facility shall attempt to recover some of the costs of medical treatment/services requested by inmates. Staff shall not deny any inmate medical treatment or cause the delay of medical treatment because of their inability to pay for medical services.

## PROCEDURES:

1.   Routine Medical Treatment:

     The inmate's account shall be debited $5.00 for each occurrence of routine medical treatment initiated by the inmate and the actual costs of medical treatment for injuries inflicted by the inmate either upon themselves or others.

2.   Restriction on Deduction:

     Staff shall not deduct medical treatment costs from any inmate's account containing $10.00 or less. If an inmate's account is $10.00 or less, Accounting shall make a notation of the medical treatment on the account. If the inmate's account increases, Accounting shall deduct the appropriate fee for medical services or costs before any other deductions to the account.

3.   Collection of Fees:

     If an inmate being released from the Clayton County Detention Facility owes a fee for medical services, the fee is to be deducted from their account by Accounting before they give the inmate the balance of their account. Staff cannot hold the inmate in custody if they are unable to settle the debt. However, Accounting may deduct the debt from the inmate's balance should he or she return to our facility at a later date.

4.   Denial of Treatment:

     Staff shall not deny inmates who do not have money in their account medical attention.

D-000000126

**SOP NO: 6.02**       **MEDICAL SERVICE FEES**

5.    <u>Disciplinary Actions:</u>

Staff shall discipline no inmate because of the inmate's inability to pay assessed costs. No inmate shall be assessed any costs in lieu of receiving appropriate disciplinary action because of an alleged Inmate Handbook Rule violation.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   PRELIMINARY HEALTH SCREENING** | |
| **SOP NO:     6.03** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:    14.12**
**APPLICABLE ACA STANDARD NUMBER:    2A-14, 4C-01**

| | | |
|---|---|---|
| **DATE CREATED:       OCTOBER 15, 1986** | **LATEST UPDATE:** | **September 6, 2011** |

## POLICY:

Each newly admitted inmate shall undergo a preliminary health screening by the Medical Staff to determine if there is an existing condition which may present a threat to the health of the Facility Staff, other inmates, or themselves.

## PROCEDURES:

1.   Urgent medical treatment:

If it is immediately recognizable that the individual has an urgent need of medical attention, staff shall promptly call for immediate medical attention from on-site Medical Staff or emergency Medical Staff if on site Medical Staff are not available.

2.   Interview:

During all book-ins the Medical Staff shall interview the inmate concerning his/her medical history and current condition.

3.   Records:

All screening records shall be filed and maintained by the Medical Staff in conjunction with all other inmate medical records.

4.   Referral:

If after the screening there is reason to suspect that the inmate suffers from any medical condition which may require further examination or immediate attention, the Medical Staff shall immediately notify the Intake Supervisor and the appropriate Health Services Supervisor(s).

D-000000128

**SOP NO: 6.03         PRELIMINARY HEALTH SCREENING**

5.    Reporting:

a.    Any inmate (new lock up) who requires emergency medical treatment or is transported for treatment prior to book in must be brought to the immediate attention of the Command Staff, with a Miscellaneous Jail Incident Report to follow.

b.    The Command Staff will be notified immediately if any inmate which is currently housed at the Clayton County Detention Facility is transported for emergency treatment. A Miscellaneous Jail Incident Report will be completed to document the incident.

6.    <u>Medical Records:</u>

Any inmate medical records received by Sheriff's Office Personnel shall be forwarded to the Medical Staff.

D-000000129



# CLAYTON COUNTY SHERIFF'S OFFICE
## JAIL DIVISION
## STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

**SUBJECT:    TRANSPORTATION FOR EMERGENCY / NON- EMERGENCY MEDICAL CARE**

**SOP NO:    6.04**                                      **GA. LAW: NONE**

| | |
|---|---|
| **APPLICABLE GSA STANDARD NUMBER:** | 05.06, 23.30, 14.06 |
| **APPLICABLE ACA STANDARD NUMBER:** | 4C-01, 02, 03 |
| **DATE CREATED:        JULY 21, 1999** | **LATEST UPDATE:        September 6, 2011** |

## POLICY:

The staff of the Clayton County Detention Facility shall ensure appropriate transportation is provided for emergency and non-emergency medical care of inmates.

## PROCEDURES:

1.    <u>Transporting an Inmate</u>:

Should diagnosis or required treatment only be obtained outside the Detention Facility, the inmate shall be transported to the designated treatment facility. Transporting an inmate for emergency or non-emergency treatment shall not compromise safety or security of the officer or the inmate. No inmate is ever to be advised of the exact location and time of an outside medical appointment.

2.    <u>Coordination of Transportation</u>:

Transportation of all inmates for non-emergency medical treatment shall be coordinated with the Enforcement Bureau.

3.    <u>Escorts</u>:

In cases where an inmate must be taken outside the facility for emergency medical care, a sworn officer must personally escort the inmate. The Jail Supervisor shall request a deputy sheriff from the Enforcement Bureau to provide the escort. However, in the absence of an officer from that division, any sworn officer may be used as the escort until properly relieved by an Enforcement Bureau deputy.

4.    <u>Type of Transportation</u>:

The Medical Staff shall advise the type of transportation and the urgency needed for the inmate.

5.    <u>Restraining devices</u>:
Restraining devices that maintain the security required for safe transport without interfering with the medical condition of the inmate shall be used by any escorting officer(s).

D-000000130



# CLAYTON COUNTY SHERIFF'S OFFICE
# JAIL DIVISION
# STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

**SUBJECT:   MEDICATIONS/PHARMACEUTICALS**
**SOP NO:     6.05**                                    **GA. LAW: O.C.G.A. 26-4-1**

**APPLICABLE GSA STANDARD NUMBER:     14.24, 14.25, 14.03**
**APPLICABLE ACA STANDARD NUMBER:     4C-01**
**DATE CREATED:      SEPTEMBER 2, 1988      LATEST UPDATE:      September 6, 2011**

## POLICY:

All medications prescribed for treatment of an inmate shall be reviewed and approved by the medical services contractor. Staff shall not deny inmates proper medication required for treatment while in the custody of the Clayton County Detention Facility.

## PROCEDURES:

1.   Dispensing Medication:

     All medication shall be dispensed according to established policy and procedures and applicable State & Federal Laws and only by authorized Medical Staff. The inmate's account shall be debited $3.00 for each prescription.

2.   Refusal or Hoarding of Medication:

     Problems occurring with the dispensing of medications to inmates in the facility, such as refusal to ingest properly or hoarding of medication, shall be reported immediately to the Shift Supervisor. Staff shall report all incidents involving an inmate's hoarding of medication to the Medical Staff. All of the aforementioned circumstances shall be documented in the appropriate fashion. The decision to continue or stop the dispensing of an inmate's medication because of the inmate's hoarding of medication shall only be made by Medical Staff. Any confiscated medication shall be turned over to the Medical Staff for disposal.



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   INMATE HYGIENE**
**SOP NO:     6.06**                                    **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:**   **15.09,15.11,15.13, 15.15,15.16**
**APPLICABLE ACA STANDARD NUMBER:**   **4B-03, 6A-07, 08**
**DATE CREATED:      OCTOBER 15, 1986      LATEST UPDATE:      September 6, 2011**

## POLICY:

Staff shall ensure that all inmates housed in the Clayton County Detention Facility maintain their personal hygiene, and are provided all necessary supplies and an opportunity to do so.

## PROCEDURES:

1.   Showers:

Showers shall be available for use by inmates daily regardless of the inmate's housing assignment or lock down status. Staff may restrict violent or incorrigible inmates on lock down to showering every other day, subject to the approval of the Jail Administrator.

2.   Refusal to Shower:

Staff shall report instances of inmates refusing to shower and maintain proper hygiene to the Shift Supervisor. The Shift Supervisor shall then, in consultation with the Medical Staff, make a determination if the inmate's hygiene could constitute an institutional sanitary hazard. If it is determined the inmate's hygiene could constitute an institutional sanitary hazard, appropriate steps shall be taken to correct the inmate's hygiene problem.

3.   Hygiene:

The replacement of hygiene items shall be made available for purchase through the Jail Commissary. Indigent inmates shall be provided hygiene items at no cost as "care packages." Requests for "care packages" will be forwarded to Accounting. The inmate shall only be qualified for or issued a "care package" after being incarcerated for thirty (30) days or more in this facility. Replacements for toilet paper, soap, toothpaste, and toothbrush shall be provided on regularly scheduled issue days. Additional hygiene items shall be for purchase through the Jail Commissary or indigent care packages.

**SOP NO: 6.06        INMATE HYGIENE**

4.     Shaving:

Razors will be issued in accordance with SOP Section 4.12.

5.     Laundry:

Uniforms, towels, and personal undergarments shall be laundered two times a week.

6.     Linens:

Sheets and pillow cases shall be laundered at least once weekly. Mattresses shall be cleaned and sanitized before each issue. Blankets shall be laundered once monthly.

D-000000133



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:** | **ISSUANCE OF INMATE UNIFORMS, LINEN, AND HYGIENE ITEMS** |
| **SOP NO:** 6.07 | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**   09.16, 10.01, 15.06, 15.12, 15.13, 15.15, 15.16, 15.19
**APPLICABLE ACA STANDARD NUMBER:**   4B-03, 6A-07
**DATE CREATED:**   OCTOBER 15, 1986       **LATEST UPDATE:**   September 6, 2011

**POLICY:**

To maintain and encourage a healthy environment, all inmates housed within the detention facility, shall be issued clean uniforms, linens, and personal hygiene items. Staff shall also provide orientation training and access to the facility rules and regulations to ensure inmates remain informed of their expected behaviors and the disciplinary procedures used to ensure their compliance.

**PROCEDURES:**

1.  <u>General Population Housing</u>:

    Upon being assigned to orientation, the admitting personnel shall:

    a.   Allow the inmate to keep their personal underclothes (T-shirt, socks, underwear, wireless bras), only when it is white in color. The exception shall be female underpants/panties. It is permissible to allow a female inmate to keep her colored panties for sanitary reasons. Due diligence should be made during the dress out search to insure the introduction is not made to the housing unit area of the Detention Facility.

    b.   Male inmates shall be issued one inmate uniform consistent with their classification status and female inmates will be issued two inmate uniforms. Along with the inmate uniforms, the following items shall be issued to each inmate:

         two (2) sheets;
         one (1) blanket,
         one (1) towel,
         one (1) washcloth,
         one (1) toothbrush,
         one (1) toothpaste,
         one (1) soap
         one (1) pair shower shoes
         one (1) cup
         one (1) spork

D-000000134

**SOP NO: 6.07          ISSUANCE OF INMATE UNIFORMS, LINEN, AND HYGIENE ITEMS**

2          <u>Inventory of Inmates Personal Property</u>:

The property officer shall inventory, properly secure, and provide an accounting for the inmate's personal property.

3.         <u>Inventory of Issued Items</u>:

An inventory of all issued items is to be made at the time of issue/dress out. This is to be completed by the property officer, and signed by both the officer and the inmate.

4.         <u>Linen</u>:

All issued items shall be returned at the time the inmate departs the facility for cleaning and re-issuing.

5.         <u>Personal Hygiene Items</u>:

After the initial issue to an inmate, personal hygiene items can be purchased from the Jail Commissary. In the event an inmate is indigent, personal hygiene items shall be provided at no expense.

6.         <u>Special Clothing</u>:

This facility shall provide and/or allow the inmate workers the needed special clothing required by the work assignment.

D-000000135



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **SUICIDE WATCH** | |
| **SOP NO:** | **6.08** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**   5.05, 14.17, 21.09, 23.23, 23.29, 24.01, 24.09, 24.16
**APPLICABLE ACA STANDARD NUMBER:**   2A-21, 23, 24, 4C-04, 12, 13
**DATE CREATED:**      **OCTOBER 15, 1986**      **LATEST UPDATE:**      September 6, 2011

POLICY:

The staff of the Clayton County Detention Facility shall make every effort to prevent inmate suicides through increased surveillance and monitoring by staff.

PROCEDURES:

1.   Observation:

All personnel shall remain alert to any behavioral changes involving inmates displaying suicidal tendencies. Special attention should be given to inmates after arrest, sentencing and disturbing news. Good communication between Security Staff and Medical Staff is a must to ensure cooperation in this surveillance.

2.   Evaluation:

When an inmate is reported or suspected to be suicidal, the Shift Supervisor shall be notified. The Supervisor shall communicate this information to the Medical Staff and make a determination of the appropriate housing assignment. A Jail Miscellaneous Incident Report shall be completed.

3.   Housing:

All inmates that have expressed suicidal tendencies either verbally or through some other action shall be housed in the Infirmary. Suicide precautions are to be instituted as follows:

a.   Each observation cell shall be searched by Security Staff prior to housing the inmate. All items the inmate could use to harm themselves shall be removed. The inmate shall be issued a safety smock and bedding by Medical Staff.

b.   A suicide watch log shall be completed and maintained by Medical Staff. The inmate is to be checked visually as often as possible and no less than every fifteen (15) minutes. Medical Staff shall log all checks with appropriate comments as to the condition of the inmate.

D-000000136

**SOP NO: 6.08          SUICIDE WATCH**

      c.      The inmate shall be seen by the Psychologist or Psychiatrist at the earliest opportunity.

      d.      Inmates shall only be released from suicide watch after being cleared by the Psychologist or Psychiatrist.

4.    <u>Documentation:</u>

When a suicide attempt involves great bodily harm, it shall be documented by the reporting officer in an Incident Report. When a suicide attempt involves minor injury to the inmate, a Jail Miscellaneous Incident Report may be completed at the discretion of the Watch Commander. Refer to JOD SOP 11.04 (Attempted Suicide, Suicide, or Death of an Inmate in Confinement) for actions to be taken in the event of a suicide attempt.

D-000000137



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   CONTAGIOUS DISEASES
SOP NO:     6.09**                            **GA. LAW: O.C.G.A. 24-9-47, 42-1-7**

**APPLICABLE GSA STANDARD NUMBER:   NONE
APPLICABLE ACA STANDARD NUMBER:   4C-06, 07
DATE CREATED:        OCTOBER 5, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall make every effort to prevent and contain the spread of infectious and contagious diseases within the facility.

**PROCEDURES:**

1.   <u>Recognition and Reporting:</u>

     Any knowledge or recognition of a potential life threatening disease or infection shall be reported to the Watch Commander and Medical Staff immediately.

2.   <u>Isolating Affected Inmates:</u>

     The Medical Staff determine the need for isolation of affected inmates. If cell space is available, this shall be done in the Infirmary.

3.   <u>Quarantine of the Facilities:</u>

     The decision to quarantine the facility shall be made by the Sheriff in consultation with the Clayton County Health Department.

4.   <u>Privileges:</u>

     Inmates placed on quarantine by the Medical Staff shall be given all privileges not violating contagious disease protocol used by Medical Staff.

5.   <u>Confidentiality:</u>

     Staff members are prohibited by law from revealing any medical information pertaining to any specific inmate. All medical records shall be considered confidential. Medical records can only be authorized for release by the Sheriff, Chief, Jail Administrator, or their designee.

D-000000138

**S.O.P. NO.    6.09    CONTAGIOUS DISEASES**

6.    <u>Transporting:</u>

When an inmate having a contagious disease is transported outside the facility, the Medical

Section shall complete a notification of infectious disease form and give it to the transporting officer.

D-000000139



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   INMATE PROGRAMS
SOP NO:    7.01                                    GA. LAW: NONE

APPLICABLE GSA STANDARD NUMBER:   20.07, 08.56
APPLICABLE ACA STANDARD NUMBER:   5A-01, 6A-01
DATE CREATED:      OCTOBER 5, 1986      LATEST UPDATE:      September 6, 2011

**POLICY:**

As a privilege, the Clayton County Detention Facility will afford inmates who pose no threat to institutional security with an opportunity to participate in programs that are designed to improve their over-all life skills.

**PROCEDURES:**

1.  Scheduling:

    The Chaplain's Office shall be responsible for the development and coordination of all Inmate Programs.

    a.   Inmates wanting to participate in an Inmate Program shall submit an inmate request form to the Chaplain's Office expressing their interest in participating in a specific Inmate Program.

    b.   The Chaplain's Office shall review and approve inmate's requests for participation in any program prior to their participation.

    c.   Inmates who have been classified as a security risk or who have been assigned to Segregation Units typically will not be allowed to participate in Inmate Programs due to institutional hardships.

    d.   Only the Jail Administrator or his/her designee may authorize an inmate who is classified as a security risk, to participate in an Inmate Program, as long as there is sufficient security staff present to accommodate this task with minimal disruption to the facility.

    e.   Any disruptions stemming from an inmate's behavior shall be sufficient cause to cancel or revoke the inmate's privilege to attend any Inmate Program.

2.  Program Availability:

    Programs shall be made available based upon monetary resources and volunteer participation. Such programs will include but are not limited to the following:

D-000000140

**SOP NO: 7.01          INMATE PROGRAMS**

      a.      G.E.D preparation

      b.      Substance Abuse Program (Narcotics Anonymous Meetings)

      c.      Inmate Literacy

      d.      Fatherhood Life Skills

3.     <u>Additional Programs</u>:

New Inmate Programs shall be monitored through the Chaplain's Office and approved by the Jail Administrator.

D-000000141



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   INMATE RECREATIONAL ACTIVITIES** | |
| **SOP NO:      7.02** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**   08.56, 08.60, 20.02
**APPLICABLE ACA STANDARD NUMBER:**   5C-01, 6A-08

| | | | |
|---|---|---|---|
| **DATE CREATED:** | **OCTOBER 5, 1986** | **LATEST UPDATE:** | **September 6, 2011** |

**POLICY:**

The staff of the Clayton County Detention Facility shall give inmates reasonable opportunities to participate in physical recreational activities.

**PROCEDURES:**

1.   <u>Participation</u>:

Staff shall provide inmates the opportunity, weather permitting, to voluntarily participate in recreational yard call for one (1) hour each day excluding the day scheduled for Commissary.

2.   <u>Restrictions on Participation</u>:

Inmates on Suicide Watch, Disciplinary Lockdown or Security Segregation shall not be permitted to participate in recreational yard call. Inmates having doctor, dental, and/or court appointments which occur during recreational yard call shall remain in their sections until called to leave for their appointment. The recreation privileges of inmates housed in the Infirmary may be restricted by the Medical Staff if there is a legitimate medical need to do so.

3.   <u>Security</u>:

Before releasing inmates into the recreational yard, the Unit Control Officer shall ensure:

a.   The recreational yard is secure and free of any contraband items.

b.   The recreational yard has been cleared of any trash or debris.

c.   Weather conditions are safe for recreational use by inmates.

4.   <u>Inmates Leaving Yard Call</u>:

Inmates shall use the bathroom facilities before going to the recreational yard. Inmates needing to use the restroom facilities or leave the recreation yard before yard call is over shall not be permitted to return to the recreational yard.

D-000000142

**7.02    INMATE RECREATIONAL ACTIVITIES**

5.      <u>Supervision</u>:

The Unit Control Officer shall monitor the recreational yard from his/her post.



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   **LAW LIBRARY**
SOP NO:     **7.03**                                          **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:   17.03, 20.05, 20.06**
**APPLICABLE GSA STANDARD NUMBER:   5C-04, 6A-02, 03**
**DATE CREATED:        OCTOBER 5, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall provide a library to meet the legal needs of inmates who are confined to the facilities and are representing themselves in a criminal case.

**PROCEDURES:**

1.   Inmates Visiting the Law Library:

   a.   The Law Library shall only be authorized for use by inmates who do not have an attorney, who are either representing themselves in a criminal case or are filing a Civil Rights Claim.

   b.   Inmates wishing to use the Law Library shall submit an inmate request form stating their desire to go to the Law Library.

   c.   Inmates shall take no original legal material from the Law Library. Upon written request from inmates, the Librarian shall reproduce the requested pages of the legal material and give the reproduced copies to the inmates.

   d.   Inmates who are approved to utilize the Law Library will be scheduled by the Programs Security Officer. Each visit shall only last one hour.

2.   Accepting Donated Materials:

   Staff shall inspect for contraband and properly mark all books which are donated to the facility as property of the facility once they have accepted it for use.

D-000000144



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   RELIGIOUS SERVICES AND PRACTICE BY INMATES**
**SOP NO:      7.04**                                          **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:**    8.56, 20.01, 18.04
**APPLICABLE ACA STANDARD NUMBER:**    4A-02, 5A-01, 5C-06
**DATE CREATED:      NOVEMBER 4, 2000     LATEST UPDATE:      September 6, 2011**

## POLICY:

The Staff of the Clayton County Detention Facility shall allow inmates to practice their recognized religious beliefs provided security and facility operational procedures are not compromised.

## PROCEDURES:

1.   Schedule:

   Religious services shall be conducted simultaneously in each housing unit according to the following schedule:

   a.      Non-Denominational Christian services shall be scheduled once weekly.

   b.      Islamic services shall be scheduled once weekly.

   c.      All religious services shall be limited to a maximum of one hour.

2.   Diets:

   Reasonable accommodations shall be provided for the inmate to follow dietary restrictions of their faith. The Jail Administrator shall, in consultation with the Jail Chaplain Staff, determine reasonable accommodations.

3.   Literature:

   Inmates shall be allowed to possess religious literature approved through the Jail Administrator in consultation with the Jail Chaplain Staff.

4.   Attendance:

   Inmates wanting to attend religious services shall place their name on the sign up list provided. If no list of inmates is available, reasonable effort shall be made for inmates to receive religious service.

D-000000145

**SOP NO: 7.04          RELIGIOUS SERVICES AND PRACTICE BY INMATES**

5.    <u>Clergy Visits</u>:

Inmates wishing to have personal clergy counseling shall submit an inmate request form to the Jail Chaplain. The Jail Chaplain shall coordinate personal clergy visits and decide whether or not the visit will be considered as a normal visit or as a chaplaincy visit.

6.    <u>Advisors/Volunteers</u>:

Religious advisors/volunteers holding services or conducting programs in the facility shall do so at the recommendation of the Chaplain and with the approval of the Jail Administrator.

7.    <u>Religious Service Materials:</u>

Staff shall restrict religious advisors/volunteers from bringing any religious materials (musical instruments, electronic equipment, medallions, candelabra, etc.) other than literature into the facility without prior recommendation of the Chaplain and the approval of the Jail Administrator.

D-000000146



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   MARRIAGES**
**SOP NO:    7.05**                                    **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:    NONE**
**APPLICABLE ACA STANDARD NUMBER:    5C-06**
**DATE CREATED:       OCTOBER 15, 1986       LATEST UPDATE:       September 6, 2011**

**POLICY:**

The Clayton County Detention Facility shall allow inmate marriages only in circumstances involving unborn children, unwed mothers, and according to established procedures.

**PROCEDURES:**

1.  <u>Acknowledgment of Pregnancy</u>:

    In a sworn written statement, the inmate shall:

    a.      Acknowledge paternity/maternity of an unborn child conceived prior to the inmate's incarceration.

    b.      Name the father/mother of their unborn child.

2.  <u>Physicians Statement</u>:

    The mother shall provide a physician's statement verifying her pregnancy.

3.  <u>Previous Marriages</u>:

    If either party has been previously married, they shall provide documentation issued by a Clerk of the Court stating that the previous marriage has been dissolved.

4.  <u>Approval</u>:

    The Jail Administrator may approve the performance of a marriage ceremony at the facility, subject to compliance with all requirements. The name of the person to perform the ceremony must be submitted for approval no less than 24 hours prior to the ceremony.

**SOP NO: 7.05**          **MARRIAGES**

5.      <u>Arrangements</u>:

All arrangements for the marriage license and blood tests shall be at the expense of the parties involved.

6.      <u>Witnesses</u>:

A list of up to two (2) individuals witnessing the ceremony shall be submitted to the Jail Administrator for approval no less than 24 hours prior to the ceremony.

7.      <u>Marriage License</u>:

A copy of the marriage license is to be provided to the Detention Facility and filed in the inmate's jail file.

8.      <u>Cameras</u>:

Cameras or recording devices shall not be allowed into the facility as part of the ceremony.

D-000000148



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   COMMISSARY** | |
| **SOP NO:     7.06** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**    2.03, 2.07, 2.09, 2.10, 8.56
**APPLICABLE ACA STANDARD NUMBER:**    5C-07, 6A-08

| | | |
|---|---|---|
| **DATE CREATED:** | **NOVEMBER 4, 2000** | **LATEST UPDATE:**   September 6, 2011 |

## POLICY:

The Clayton County Detention Facility through contractual agreement shall provide commissary services for inmates to purchase items, as approved by the Jail Administrator. All commissary purchases shall be debited against the inmates account. Care packages containing personal hygiene items and writing materials shall be provided for indigent inmates at the county's expense.

## PROCEDURES:

1.  Items approved for sale:

    Vendors shall not be allowed to store or sale any item not approved for sale in the Commissary by the Jail Administrator.

2.  Customer Verification:

    All inmates shall display their inmate identification and sign for all purchases as proof of sale.

3.  Limitations:

    The following guidelines shall be applied as the standard for limitations:

    a.  Consumable items (candy, crackers, etc.) not to exceed $40.00, subject to change by the Jail Administrator.

    b.  Hygiene items shall be limited to $40.00

    c.  Other limits shall include one (1) pair of shoes, four (4) t-shirts, four (4) underwear, four (4) pair of socks, three (3) bras and two (2) towels.

    d.  Inmates with a physician imposed dietary restriction shall be restricted to only purchase certs, diet soda, coffee, tea and non-consumable items.

    e.  Medical items shall not exceed 10 items.

D-000000149

**SOP NO: 7.06            COMMISSARY**

4.    <u>Periodically Approved Items</u>:

The sales of seasonal or periodically approved items are subject to the direction of the Jail Administrator.

1.    <u>Pricing</u>:

The prices of commissary items are established by a contractual agreement. The prices shall be reviewed and approved by the Jail Administrator. All changes in the purchase prices or the offering of new commissary items shall be reviewed and approved by the Jail Administrator or his designee prior to their sale.

2.    <u>Disciplinary Store Privileges</u>:

Inmates on Disciplinary Lock Down status and inmates that have lost their Commissary privileges shall only be allowed to purchase hygiene items, medical items, and postage materials. Other items may be restricted from inmates by the Medical Staff because of an inmate's medical condition. The contracted Commissary provider shall supply the Jail Staff with store sheets that indicate which items are allowed for general population inmates, inmates that have lost their Commissary privileges, and inmates who are diabetic.

3.    <u>Vendor Performance</u>:

The Jail Administrator or his designee shall be responsible for monitoring the performance of the Commissary Contractor and ensuring the contractor performs in accordance with their contractual obligations. Staff observing unsatisfactory performance or unusual occurrences involving Commissary Staff shall inform their immediate Supervisor and the Jail Administrator or his designee.

D-000000150



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   INMATE VOTING / REQUEST TO VOTE
SOP NO:      7.07                                          Federal Law: 42 U.S.C. 1973gg -5(a)

APPLICABLE GSA STANDARD NUMBER:
DATE CREATED:        NOVEMBER , 2010        LATEST UPDATE:            August 2011

**POLICY:**

The Clayton County Sheriff's Office recognizes the fact there may be those individuals who are in custody, but are qualified to vote. These individuals are still entitled (if properly requested) to participate in elections that may be held for varying County, State, or Presidential candidates. It will be the goal of this agency to assist any qualified voter, who may be in custody, if they request to exercise their right to vote.

**REQUIREMENTS TO VOTE:**

1.      Be a citizen of the United States;

2.      Be a legal resident of the County of which you want to vote within;

3.      Be registered to vote in your County of residence;

4.      Not be serving a sentence for conviction of a felony involving moral turpitude

5.      Have not been found mentally incompetent by a judge

**PROCEDURES:**

Any inmate who meets the qualifications to vote and wishes to do so, shall submit their request on am Inmate Request form. In this request the inmate shall include their full name, county of residence and their date of birth. These types of requests will be forwarded to the Watch Commander. The Watch Commander will log onto the internet at http://www.sos.ga.gov/mvp/ to access the Georgia Secretary of State, "My Voter Page" (see attached example page). On this page, the Watch Commander will enter the information provided by the inmate under the MVP log in. This step will allow the Watch Commander to determine if the inmate is a registered voter of his/her resident county. If the Inmates voter information comes back displayed, there will be a line that indicates, "Click here for an absentee ballot application." The Watch Commander will print the absentee ballot application and insure that it is returned to the inmate. If the inmate does not show as a registered voter, the Watch Commander will indicate that response on the Inmate Request form and return it to the inmate.

D-000000151

**SOP NO: 7.07          INMATE VOTING / REQUEST TO VOTE**

The inmate will be responsible for the proper completion and submission of the absentee ballot application via United States mail. If the inmate is incarcerated in a county other than his/her registered home county, they can request that the absentee ballot be sent directly to them here at the Detention *Facility via United States mail. If their registered voting county is Clayton County the absentee ballot* will only be sent to the address on file with the Registrar's Office. If the inmate has his absentee ballot sent to his/her home address, someone in his/her household will need to send it to him/her via United States mail. The absentee ballot will be delivered like any other piece of mail coming into the facility. The inmate will be responsible for the proper completion and submission of the ballot to the Board of Registrars of his/her registered county.

D-000000152



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:    INMATE REQUEST FORMS** | |
| **SOP NO:     8.01** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**    2.03, 2.07, 2.09, 2.10, 8.56
**APPLICABLE ACA STANDARD NUMBER:**    None
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall attempt to answer all inmate requests or questions prior to providing the inmate with inmate request forms. All inmate request forms shall be processed in a fast and orderly manner.

**PROCEDURES:**

1.    Access to Request Forms:

Inmates shall only be provided a request form after the officer has attempted to answer their question or request. If the officer is unable to answer the question, he or she shall provide the inmate with a request form.

2.    Collection:

Officers shall collect all request forms, signing them as the receiving officer, and writing the date and time received on the appropriate line.

3.    Response:

The housing unit control officer shall make every attempt to answer the inmate's request. If the control officer or runner is unable to address the inmate's request, he or she shall forward it to the appropriate staff member or Supervisor. All responses to inmate requests shall be done in a professional and fair manner as expediently as possible.

D-000000153



# CLAYTON COUNTY SHERIFF'S OFFICE
## JAIL DIVISION
## STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

---

**SUBJECT:   RELEASE/DESTRUCTION OF INMATE PERSONAL PROPERTY**
**SOP NO:    8.02**                                          **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:   10.15**
**APPLICABLE ACA STANDARD NUMBER:   None**
**DATE CREATED:      SEPTEMBER 2, 1988      LATEST UPDATE:      September 6, 2011**

---

## POLICY:

The staff of the Clayton County Detention Facility shall exercise care in the security and protection of an inmate's property and accurately document all releases, transfers or disposals of an inmate's property.

## PROCEDURES:

1.   Property/Money Release Form:

     Inmates may release their personal property to a third person. The inmate must agree to release all of their personal property. Portions of the inmate's personal property shall not be released; it must be all or none. Inmates desiring to release their personal property or money to another person must have the desired person report to the visitation desk officer to obtain the form. The form will be taken to the inmate's Housing Unit by the person the property/money is being released to. The housing unit runner must personally witness the inmate's signature on the form and ensure the form is completed properly. Once completed, the form will be returned to the visitation desk officer. The visitation desk officer will direct it to the property clerk for further action.

2.   Authorized Release:

     The property shall only be released to the person designated by the inmate on the Property /Money Release Form. One change of clothes for their release shall be maintained unless the inmate has been sentenced to serve time in a State Correctional Facility.

3.   Inmate Money Release:

     Requests to release money from an inmate's account shall be completed on the Property/Money Release Form. The form will be taken to the inmate's Housing Unit by the person the money is being released to. The form will be returned to Accounting for approval. If Accounting disapproves the transaction it shall be forwarded to a Shift Supervisor with reasons for the disapproval. The Shift Supervisor may override Accounting's decision if he/she feels there is a legitimate reason for the money transfer to take place.

D-000000154

**SOP NO: 8.02       RELEASE OF INMATE PERSONAL PROPERTY**

4.     Two Week Notices for Property Release:

Once an inmate is sentenced to time to be served in a state facility, he or she shall be given a Property / Money Release Form to fill out. At this time, each inmate will be notified of all items he/she will be allowed to take with them to the State Correctional Facility. The inmate must sign, date, and leave the name and address of a person to receive their personal property. The inmate shall have two-weeks to arrange for any person of their choosing to pick up their property. After the two-weeks if the property is not picked up, it shall be mailed out to the person's address the inmate has designated on the Property Release Form. The property officer shall ensure the correct completion of such with his or her signature and date. This Property/Money Release Form shall be maintained in the inmate's file. The address cannot be a P.O. Box, APO/AFO address or outside of the continental United States. If the property is returned once it is mailed out the inmate will be allowed an opportunity to have someone pick up the property. If it is not picked up in a reasonable amount of time it will be destroyed.

5.     Over-Abundance of Property:

Any inmate received into our facility with an over abundance of property and who is unable to make a bond within a reasonable amount of time shall be given an Property/Money Release Form to fill out and be instructed to have someone come pick-up the property. If no one is available to pick up the property, the individual shall provide a name and address, on the Property/Money Release Form, for the excess property to be mailed. This shall be witnessed by an officer and be retained in the inmate's file. If the inmate does not have a local address then the property will be maintained until the inmate's release from the facility. If the address is not located or undeliverable the inmate will be allowed to have someone pick up the property in a reasonable amount of time, if not, it will be destroyed.

6.     Destruction of an Inmate's, Mislaid or Lost Property:

If an inmate's property is returned, mislaid/lost property is located within the Justice Bureau or if a former inmate will not return to the facility to pick up their property then it will be destroyed. Before it can be destroyed it must be inventoried and listed in the log for destroyed property. The log will contain the inmate's name, LE#, date of inventory and a complete inventory of the inmate's property. Initially the property will be stored in the rear storage area within the Property Room. Once enough of the property has accumulated it will be transported to the Clayton County Landfill for disposal. The property officer taking the property to the landfill for disposal must observe the property being buried by Clayton County Landfill personnel for completion of the process. If the inmate is within the facility he/she must be advised that their property will be disposed of. If the property is clothing and can be used to assist other inmates with court clothing or clothing needed when exiting the facility, it will be cleaned and placed on the excess/court clothing shelf for further use.

D-000000155



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   **SAFETY/SANITATION SERVICES**
SOP NO:    **8.03**                              **GA. LAW: NONE**

APPLICABLE GSA STANDARD NUMBER:   **08.44**
APPLICABLE ACA STANDARD NUMBER:   **1A-01, 02, 03**
DATE CREATED:    **NOVEMBER 4, 2000**    LATEST UPDATE:    **September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall ensure a clean and safe environment is maintained for staff and inmates.

**PROCEDURES:**

1.   Cleaning Schedule:

     The Safety and Sanitation staff shall establish and coordinate a cleaning schedule to ensure the Facility is cleaned regularly.

2.   Stocking of Cleaning Materials:

     The Safety and Sanitation staff shall ensure each janitorial closet is stocked with adequate cleaning materials on a weekly basis.

3.   Cleaning Housing Areas:

     Cleaning supplies shall be placed into each inmate housing area daily.

     a.     Inmates are required to keep their assigned living area clean and orderly.

     b.     The housing unit runner shall ensure inmate living spaces are cleaned daily.

4.   Inspection:

     The cleanliness of each work station and housing unit shall be the responsibility of the officer assigned to that area.

5.   Safety Equipment:

     The Safety and Sanitation Officer shall ensure safety equipment is provided and properly used to prevent accidents. Material safety data sheets shall be maintained for all cleaning chemicals used.

D-000000156



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   **WAREHOUSE**
SOP NO:    **8.04**                                        GA. LAW: NONE

**APPLICABLE GSA STANDARD NUMBER:**   NONE
**APPLICABLE ACA STANDARD NUMBER:**   None
**DATE CREATED:       NOVEMBER 4, 2000       LATEST UPDATE:       September 6, 2011**

<u>**POLICY:**</u>

Staff of the Clayton County Detention Facility assigned to oversee the warehouse shall maintain an orderly and safe warehouse for the storage of materials necessary to maintain the operations of the facility.

<u>**PROCEDURES:**</u>

1.    <u>Condition of Storage Area</u>:

      The facilities shall have sanitary, temperature-controlled food and commissary storage areas. The Safety/ Sanitation staff shall inspect these areas to ensure they are kept in a clean and sanitary condition. Special attention should be given to the control of vermin in these areas.

2.    <u>Storage of Inmate Supplies</u>:

      Space shall be provided for the safe and secure storage of all supplies needed for the operations of each facility. The officer(s) assigned to issue and receive supplies shall be responsible for establishing an orderly system to issue and receive these supplies to prevent pilferage and waste. An officer shall closely monitor and supervise the activities of any inmate permitted to enter or work in a warehouse or inmate uniform storage area.

3.    <u>Storage of Flammable or Toxic Materials</u>:

      Flammable or toxic materials shall be held in accordance with state and local regulations, and shall be safely stored only in areas designated by the Jail Administrator. Material Safety and Data Sheets shall be forwarded to the Safety/Sanitation staff for all hazardous materials and chemicals used or received in the facilities.

D-000000157

**SOP NO:**          **8.04**

4.    <u>Additional Storage Areas:</u>

Provisions for the security of keys, weapons, drugs or medication, tools, valuables, records, and other supplies shall be made by the Jail Administrator or his designee. Additional secure storage areas for weapons and hazardous materials shall be provided outside of any areas directly accessible by inmates.

D-000000158



# CLAYTON COUNTY SHERIFF'S OFFICE
# JAIL DIVISION
# STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

**SUBJECT:   ASSESSABLE INMATE FEES**
**SOP NO:     8.05**                                    **GA. LAW: O.C.G.A. 42-4-71**

**APPLICABLE GSA STANDARD NUMBER:**   NONE
**APPLICABLE ACA STANDARD NUMBER:**   None

**DATE CREATED:        JULY 28,1999        LATEST UPDATE:     September 6, 2011**

## POLICY:

The staff of the Clayton County Detention facility shall attempt to recover the costs associated with housing inmates by assessing certain fees for services and/ or damages incurred by the inmates.

## PROCEDURES:

1.   Reasonable Fees:

   The Jail Administrator shall set reasonable fees which staff may assess against an inmate's account to include:

   a.   Loss of Inmate Identification.
   b.   Barber Services. In cases where the inmate has insufficient funds for a haircut he/she may be eligible for indigent funds.
   c.   Requested medical treatment. - five dollars for each occurrence ($3.00 for each prescription).
   d.   Damaged or lost county property.
   e.   Medical costs for treatment of injuries inflicted by inmates upon themselves or others.
   f.   Searching for and apprehending an inmate who escapes or attempts to escape.
   g.   Quelling any riot or other disturbance in which the inmate is unlawfully involved.

2.   Assessed Fees:

   Inmate accounts shall be frozen for assessed fees when the account balance is ten (10) dollars or less. Staff may not deduct the assessed fee from these accounts until the inmate's account has sufficient funds or until we release the inmate.

D-000000159



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

---

**SUBJECT:   JAIL COMMENTS COMPUTER SCREEN**
**SOP NO:     8.06**                                           **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:     NONE**
**APPLICABLE ACA STANDARD NUMBER:     None**
**DATE CREATED:     DECEMBER 16, 2002     LATEST UPDATE:     September 6, 2011**

---

**POLICY:**

The staff of the Clayton County Detention Facility shall use the Jail Comments Screen on the in-house computer system to accurately document non-serious incidents or circumstances involving inmates or involving a specific area of the jail. The Jail Comments Screen shall not take the place of an Incident Report, Jail Miscellaneous Incident Report, or any other form of documentation required by applicable law or policy.

**PROCEDURES:**

1.   Accessing the Jail Comments Screen:

     The Jail Comments Screen is accessed by entering the inmate's name or facility location (i.e. Housing Unit Four), and choosing the "JC" function from the prompt at the top of the page. When adding a new comment, chose F-9. Indicate the type of comment (described below) and whether or not a report was generated.

2.   Comment Types:

     The following comment types shall be used to specify the nature of the incident that is being documented.

a.          D = Disciplinary:     All inmate infractions shall be documented on the Jail Comments Screen with this code, regardless of the action taken. The comment should include which infraction was broken and action taken by the officer (i.e. Warning, Store and Visitation).

b.          M = Medical:          Any medical information that may be necessary for an officer to more safely or efficiently complete his or her duties shall be entered using this code (i.e. Universal Precautions, Inmate refused meds).

NOTE:     Specific medical conditions, treatment, or other private information shall NOT be entered on the Jail Comments (JC) Screen.

D - 000000160

**SOP NO: 8.06          JAIL COMMENTS COMPUTER SCREEN**

    c.      C = Caution:        Any information that may be necessary to maintain the safety of the staff and/or other inmates, or security of the facility shall be entered using this code.

    d.      G = General:        Information specific to any area of the facility that is not specific to a particular inmate, or information that does not fall into one of the above categories shall be entered with this code.

3.    <u>Authorized Information</u>:

Any information pertaining specifically to the jail can be entered on the Jail Comments Screen. Classification information such as release dates and affidavit status, work release comments, all disciplinary infractions, damage to the facility and any other pass-on information may be entered on the Jail Comments Screen.

4.    <u>Thoroughness of Comments</u>:

The comments on the Jail Comments Screen should be brief, but detailed enough to cover all pertinent areas. The comments should be no more than one or two sentences long. If there is a need to type more than one or two sentences, an Incident Report of some type is necessary. The Jail Comments Screen shall not take the place of an Incident Report or Jail Miscellaneous Incident Report, but shall be in addition to these reports, if they are needed.

D-000000161



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **INMATE GRIEVANCES** | |
| **SOP NO:** | **9.01** | **GA. LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:**  22.01, 22.02, 22.03,22.06
**APPLICABLE ACA STANDARD NUMBER:**  6B-01, 02
**DATE CREATED:**       **OCTOBER 15, 1986**       **LATEST UPDATE:**       September 6, 2011

## POLICY:

The staff of the Clayton County Detention Facility shall seek to resolve grievances at the lowest possible level and shall ensure inmate grievances are addressed in a professional and orderly manner. Inmates shall not be subjected to retaliation or discipline for their non-abusive use of the grievance procedure.

## PROCEDURES:

1.    Access to Grievance Forms:

Inmates shall be provided a Grievance Form upon request.   No inmate shall be denied a Grievance Form.

2.    Collection:

Inmates requesting to file the issued Grievance Form shall be allowed to place the completed form inside the Grievance Box mounted in his/her Housing Unit, during a special call for this purpose, to be held once during each shift. The Grievance Officer shall collect all Grievance Forms, sign as receiving, and write the date and time received on the appropriate line.

3.    Standard Grievance Procedure:

a.    Prior to the filing of a formal written grievance, an inmate shall attempt to resolve his or her grievance informally through discussion with an officer. If this effort fails,   the inmate may submit a written grievance. The inmate must file the grievance within five (5) days of the alleged incident. Any grievances unresolved at the time of the inmates release shall be considered closed.

b.    Any grievance filed on behalf of another inmate without their permission will be considered non-grievable by the Grievance Officer.

c.    Inmates may only address one area of concern per Grievance Form.

d.    Use of obscenities or abusive language may result in dismissal of the grievance or disciplinary action unless quoting accurately staff or inmate comments.

D-000000162

**SOP NO: 9.01          INMATE GRIEVANCES**

      e.      If the inmate disagrees with the response from the Grievance Officer, the inmate shall submit a written appeal to the Jail Administrator or his/her designee within two (2) days. The Jail Administrator or his/her designee may support the original resolution or offer another. The Jail Administrator or his/her designee shall return his or her decision within ten (10) days.

      f.      If the inmate fails to submit a written notification of disagreement within two (2) days of the receipt, the grievance shall be considered administratively closed.

      g.      Grievances filed on medical, dental care, or food services shall be forwarded directly to the Medical or Food Services Administrator by the Grievance Officer. That administrator shall be responsible for investigating the grievance and submitting a response. The response shall list the facts found in the investigation. That administrator shall return a written response within three (3) working days to the Grievance Investigator.

      h.      Grievances with allegations of physical abuse shall be forwarded to the Jail Administrator or his/her designee.

      i.      Grievances submitted which do not follow these procedures shall be returned to the inmate with an explanation from the Grievance Officer.

      j.      The Jail Administrator or his/her designee shall ensure the grievance procedures are applied in a just and fair manner.

4.      <u>Time Constraints:</u>

      a.      Grievances shall be processed in a timely manner.

      b.      A response shall be given to the inmate no more than ten (10) calendar days from the receipt of the grievance.

      c.      In all cases the final decision shall be provided within 30 calendar days, from the filing of the grievance by the inmate.

5.      <u>Applicable/Non-Applicable Grievances:</u>

      a.      The grievance procedure may be used by any inmate. The following matters are grievable.

            i.      The application of the Clayton County Detention Facility Inmate Handbook.

            ii.      The actions of staff members or inmates.

            iii.      Other matters concerning the conditions of care or supervision.

D-000000163

**SOP NO: 9.01          INMATE GRIEVANCES**

      b.      Grievances filed with the following concerns are considered non-grievable issues and shall be answered by the Grievance Officer in that manner:

            i.      State or Federal Court decisions.

            ii.      City, State and Federal Laws and Regulations.

            iii.      Parole Board decisions.

            iv.      Any other matters which are beyond the control of the Clayton County Sheriff's Office.

6.      <u>Remedies:</u>

When grievances are decided in the inmate's favor, the Jail Administrator or their designee may authorize one or more of the following:

      a.      A change of policies, procedures, or practices.

      b.      A correction of an inmate's records.

      c.      Discipline or requested discipline for an employee's action in accordance with the limitations specified in the Department's Rules & Regulations.

      d.      Any other action deemed appropriate.

7.      <u>Issuing:</u>

When issuing the Grievance Form annotate in the "received by" section of the form which officer issued the form by writing in the name and employee number of the officer. Write the inmates full name, full four digit cell number and the current date. Annotate the issuance of the Grievance form on the Grievance Log and on the inmate's "JC" screen. The "JC" computer entry should cite the grievance number, reason for the grievance and the officer's name which issued the grievance. For accountability purposes only issue grievances which are numbered and issue them in sequential order.

D-000000164



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   DISCIPLINE (DUE PROCESS)**
**SOP NO:      9.02**                                              **GA. LAW: NONE**

**APPLICABLE GSA STANDARD NUMBER:      21.06-08, 21.10 thru 21.18**
**APPLICABLE ACA STANDARD NUMBER:      6B-01, 02**
**DATE CREATED:       OCTOBER 15, 1986       LATEST UPDATE:       September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facility shall ensure discipline procedures remain consistent in regards to staff safety, inmate rules and regulations, and the overall safety and security of the facility. The discipline procedures shall not be used to punish or harass any inmate. Disciplinary procedures shall be used to correct inappropriate behavior or actions.

**PROCEDURES:**

1.     Minor Violations:

       Inmates that have committed a minor violation only shall be subject to one or more of the following:

       a.       Written warning.

       b.       Loss of free time not to exceed one day.

       c.       Loss of store and/or visitation.

       d.       Disciplinary Lockdown.

2.     Major Violations:

       Inmates that have committed a major violation shall be subject to any/all of the above and these:

       a.       Disciplinary Lockdown

       b.       Security Segregation

       c.       Loss of good time. (Hearing required)

D-000000165

**SOP NO: 9.02          DISCIPLINE (DUE PROCESS)**

3.      <u>Violent Inmates</u>:

If an inmate becomes violent, or there is immediate and reasonable cause to believe the inmate may inflict injury on himself/herself, another, or damage county property, the inmate shall be placed in Security Segregation.

4.      <u>For Major/Minor Violations Resulting in Disciplinary Lockdown</u>:

a.      The reporting officer shall:

i.      Determine the nature of violation.

ii.     Notify a Supervisor.

iii.    Submit a Miscellaneous Jail Incident Report and document the incident in all appropriate areas as designated by the Jail Administrator or his/her designee (Jail Comment's Screen, Infraction Sheet).

iv.     Complete a "Disciplinary Action Taken" form with the sanction that was determined by the Supervisor.

b.      The Housing Unit Supervisor shall:

i.      Review the facts of the violation and determine if criminal charges shall be obtained.

ii.     Determine the number of days in disciplinary lockdown that are appropriate and inform the reporting officer so it can be reflected in the reports.

iii.    Advise the inmate he or she can waive the disciplinary hearing.

iv.     Forward a copy of the report to the Hearing Officer if the inmate denies the conditions offered in the Plea Agreement Form.

NOTE: The same restrictions for inmates in Security Segregation shall apply to inmates in Disciplinary Lockdown; refer to SOP 3.03.

5.      <u>Notification to Inmate of Disciplinary Action</u>:

Each inmate shall be given a copy of the Disciplinary Action Taken Form which describes the accused violation and the location the incident took place.

D-000000166

**SOP NO: 9.02          DISCIPLINE (DUE PROCESS)**

6.     <u>Inmate Responses to Disciplinary Action</u>:

   a.     Pre-trial inmates have the right to a Disciplinary Hearing, provided the inmate did not accept a Plea Agreement, which waives their right to the hearing. Inmates that have not agreed to accept the Plea Agreement do not need to take any action in requesting a Hearing. The Disciplinary Hearing Officer shall automatically schedule the hearing upon receipt of the Plea Agreement Form.

   b.     Sentenced inmates may submit a written request to the Disciplinary Hearing Officer within 24 hours of the alleged rule violation in order to formally request a Disciplinary Hearing only if the inmate is cited with a <u>major</u> rule infraction.

7.     <u>Disciplinary Hearing</u>:

   When a hearing has been scheduled, the Hearing Officer shall investigate the incident.

   a.     The Hearing Officer shall schedule a hearing to be held within seventy-two (72) hours, excluding weekends and holidays.

   b.     The Hearing Officer shall provide and observe the following rights of the inmate:

      i.     The right to have a written copy of the charge(s).

      ii.    The right to have representation of a Staff Member when it is apparent the inmate lacks understanding of the issues, is mentally challenged, or has language barriers.

      iii.   The right to call witnesses in the inmate's behalf provided it would not interfere with jail security or other reasonable cause(s) exist.

      iv.    The right to be present at the hearing except during deliberations

      v.     The right to speak on his/her own behalf at the hearing. If you choose to remain silent, your silence may be used to draw an adverse inference against you.

      vi.    The right to a written copy of the findings.

      vii.   The right to appeal the decision of the Hearing Officer, in writing, within twenty-four (24) hours of the decision. All appeals should be addressed to the Jail Administrator or his/her designee.

      viii.  The right to plead guilty. However, you are admitting to the allegations and thus waive your rights to a hearing.

**SOP NO: 9.02          DISCIPLINE (DUE PROCESS)**

8.   <u>Hearing Officer's Responsibilities</u>:

    a.   Find reason to sustain the allegations or exonerate the inmate on each charge, and notify the inmate in writing within twenty-fours (24) hours of that decision. Evidence of guilt must be found before assessing penalties.

    b.   Impose specific disciplinary actions with a set time limit on every penalty imposed.

    c.   Provide the inmate with a "Hearing Results Form" stating the facts relied upon and reasons for action; also including the specific disciplinary action to be taken and the time limit on the penalty.

    d.   Inform the inmate he or she may appeal the decision by submitting a written statement to the Jail Administrator or his designee, who shall issue a response to the inmate within 72 hours excluding weekends and holidays.

    e.   If upon receipt of a request for an appeal, the Jail Administrator or his designee determines there is probable cause for an appeal, he shall have 7 days to schedule a date and time for the hearing.

9.   <u>Good Time Hearing Requests</u>:

Officers may request hearings for the purpose of determining the possible removal of good time credit for any disciplined inmate. The requesting officer shall indicate this on the Jail Miscellaneous Incident Report. All requests shall be reviewed by the Security Section Commander.

10.   <u>Records</u>:

All records from the hearing shall be placed in a file and maintained by the Hearing Officer for a minimum of two years from the date the hearing was held.

D-000000168



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **BONDS** | **GA LAW: O.C.G.A. 17-6-01 thru 17 -6-04, 17-6-06, 17-6-10, 17-6-12, 17-6-15** |
| **SOP NO:** | **10.01** | **GA LAW: 17-6-30, 17-6-31** |

**APPLICABLE GSA STANDARD NUMBER:** 10.13, 10.15
**APPLICABLE ACA STANDARD NUMBER:** 5B-04
**DATE CREATED:** OCTOBER 15, 1986 **LATEST UPDATE:** September 6, 2011

## POLICY:

The staff of the Clayton County Detention Facility shall ensure all individuals posting bond complete an approved bond prior to being released. The approved bond shall comply with the guidelines established by the Sheriff, City Municipality, and the State of Georgia.

## PROCEDURES:

A bond is a legal document and as a result must be correct and include the required legal signature of all concerned parties. If the bond contains wrong information or is not signed by everyone the bond becomes nullified. The responsibility to ensure all bonds are correct rests with the preparing employee and their Supervisors.

1.  Bond Options:

    a.  Authorized Professional Bondsman.

    b.  Cash-in-lieu bond.

    c.  Real property bond in Clayton County.

    d.  Out-of-County Bond (Real Property located in another county).

    e.  Own Recognizance Bond.

2.  Special Conditions of Bond:

    a.  A Special Conditions of Bond order is an order attached to a committal document setting special conditions which the defendant must comply with in order for the bond to remain valid.

    b.  An order attached to a warrant, regardless if bond is already set, requiring an inmate to have a first appearance hearing before a Magistrate Judge prior to making bond.

D-000000169

**SOP NO: 10.01        BONDS**

3.      <u>Court Dates:</u>

Magistrate Court shall provide the appropriate court date for bonds. City Courts shall provide a court date on the citation/summons. In the case of a City Court Bench Warrant contact the appropriate court or agency for a court date. State and Superior Courts shall notify the defendant by mail concerning all court dates.

4.      <u>Bond Fees/Fine Fees:</u>

    a.      County and State fees are applied to all bonds returnable to Magistrate, State and Superior Courts.

    b.      City Charges:

        i.      County fees shall not be applied to any city charge returnable to a city court.

        ii.      State fees shall not be applied to any city charge returnable to a city court.

    c.      County and State fees are 10% of the bond amount with the State Fee having a maximum limit of $200.00.

    d.      A Sheriff's Administrative fee shall be assessed on each bond transaction, per individual bondsman, unless waived by the Jail Administrator or his designee.

    e.      Fines which are assessed by our local State, Superior, and Magistrate Courts, shall include the 10% County fee, the 10% State fee (not to exceed $50.00), a 5% victim assistance fee, and in addition to any other fees ordered by the courts.

5.      <u>Bond Distribution:</u>

    a.      Bonds on City Uniform Traffic Citations, City Summons, and City Warrants shall be returnable to the appropriate city and shall be forwarded to the Accounting Office upon completion for distribution.

    b.      Bonds on Magistrate Court Bench Warrants, and Magistrate Court Violation of Probation Warrants, shall be returnable to Magistrate court.

    c.      Bonds on misdemeanor warrants shall be forwarded to State Court.

    d.      Bonds on felony warrants shall be forwarded to Superior Court.

**SOP NO: 10.01       BONDS**

NOTE: All bonds are forwarded as indicated above, unless bound-over to another court or they are a companion to a Superior Court case.

6.    Bond Formats:

    a.    Appearance Bond:

        Used for State Warrants and Warrantless Arrest Affidavits when the individual incarcerated is using a Professional Bondsman or real property to make a bond. This format is also used as a cover sheet for an approved out-of-county bond.

    b.    Cash-in-Lieu Bond:

        Used on State Warrants and Warrantless Arrest Affidavits when an individual incarcerated is posting the entire property bond amount in cash. Monies for these transactions, including fees, shall be collected by the Accounting Office, during normal office hours and receipts forwarded to the Bonding Office.

    c.    City Bonds:

        i.    City Appearance Bonds

            Used for City Warrants, City Uniform Traffic Citations, and City Summons when the individual incarcerated is using a Professional Bondsman or real property to make a bond. This format is also used as a cover sheet for an approved out-of-county bond.

        ii.    City Cash-in-Lieu

            Used on City Warrants, City Uniform Traffic Citations, and City Summons when an individual incarcerated is posting the entire bond amount in cash. Monies for these transactions, including fees, shall be collected by the Accounting Office and receipts forwarded to the Bonding Office.

    d.    Own Recognizance Bond:

        iii.    Individuals approved to sign their own bond, by a Judge having jurisdiction over the charge.

        iv.    Individuals incarcerated only on City citations, subject to the guidelines imposed by the city's Judge, or if they have not made bond within 48 hours of arrest.

D-000000171

e.      Cash/Fine (payoff):

Used for an individual incarcerated which have been booked in on charges from other Counties. These charges can be settled by a cash payoff or by paying a fine. This format can also be used for releasing inmates on Violation of Probation fines or costs, State or Superior Court fines or Contempt orders and City arrest orders. Monies for these transactions shall be collected by the Accounting Office, during operational hours, prior to beginning the release process. Assigned Jail Staff shall collect monies for these transactions when the Accounting Office is closed.

f.      Cognizance Bond:

Used for incarcerated military personnel only who are making bond. A commissioned command officer (lieutenant or above) from the individuals branch of service must sign the bond.

g.      Extradition Bond:

Used for an individual posting a bond on a fugitive warrant. If a Waiver of Extradition has been signed, the inmate is no longer eligible for bond.

h.      Ne Exeat  Bond:

Used in Civil cases, Divorce, and Alimony Suites. A Superior Court Judge shall set the bond and court date.

i.      Pre-Sentence Investigation Bond:

Used for an individual incarcerated which has been found guilty but who has not been sentenced. A State or Superior Court Judge may set a bond on the individual.

j.      Supersedeas Bond:

Used on individuals sentenced and who are appealing their sentence. This bond can only be approved by the Clerk of the Court from where the sentence originated. This is prepared as a cover sheet.

7.   <u>Property Bonds:</u>

a.      This format is used when someone's property is posted for the bond. The property must have enough established equity in order to qualify.

i.      The individual(s) using his or her real property are swearing they have enough equity in their real property to cover the total amount of the bond(s), plus the

D-000000172

Homestead Exemption (currently at $10,000.00). Commercial property is exempt from the Homestead Exemption, therefore it is not calculated into the value of the property.

    ii.    The real property must be in the name of the person(s) making the bond, or possess a power of attorney from the actual owner to sign his or her name. Property that is only in the name of the incarcerated person shall not be used for bond.

    iii.    The property owner(s) must further state they shall not sell, transfer title, or dispose of the real property as long as said bond(s) are in affect.

    b.    Documents required to process a property bond:

    i.    Individual(s) making a real property bond must have a driver's license, or some other form of verifiable identification.

    ii.    A copy of a Warranty Deed. A Security Deed, Tax Statement, Mortgage Statement and Quit Claim Deed may be used, subject to approval of the Admissions & Release Section Supervisor.

    iii.    Verification of the real property shall be done on the County Computer System. If the computer system shows the real property is delinquent, the individual cannot use the property for bond.

    c.    If the property lies within another county, the Sheriff's Office of that county must approve the bond. The approved bond must then be forwarded to our Sheriff's Office in order to process the incarcerated person from custody in this event the bond prepared by this agency will only serve as a cover sheet.

8.    <u>Deed to Secure Debt:</u>

    a.    Requirements:

    i.    All Property Bond(s) having a cumulative value of $20,000 or more, or are less than $20,000 if there is reason to believe doing so would be beneficial to the credibility of the bond.

    ii.    All individuals whose names appear on the Warranty Deed shall sign the Deed to Secure Debt and the completed bond.

D-000000173

**SOP NO: 10.01          BONDS**

    ii.  If a corporation is being used for security on a bond, all parties listed on the Warranty Deed shall be required to sign the Deed to Secure Debt and the completed bond.

b.    Purpose:

Ensures the real property cannot be sold or transferred prior to the disposition of the criminal charge(s).

c.    Document Distribution:

The following documents generated for a Deed to Secure Debt shall be forwarded to the Bond Administrator upon completion of the Bond.

    i.    Original Deed to Secure Debt.

    ii.    A copy of the completed bond(s).

    iii.    The bond information sheet.

    iv.    A copy of the identification used by the person(s) posting the bond.

    v.    A copy of the tax information printout obtained from the county computer.

9.    <u>Bondsman Off Bond:</u>

a.    Individuals wishing to revoke authorization of release on an individual previously released under authority of their signature. The individual must be in our custody for the bondsman to complete this form.

b.    Requirements:

    i.    The individual must be in our custody.

    ii.    The charge(s) must be valid.

    iii.    A Bondsman Off Bond Form must be completed for each individual charge.

c.    Computer update on Bondsman Off Bond Form:

The computer disposition code used shall be "JOB" for each charge the bondsman completes a Bondsman Off Bond Form on, unless a bench warrant or true bill has been issued. The computer disposition code used shall be "JBM" for bench warrants

D-000000174

**SOP NO: 10.01        BONDS**

originating out of Magistrate Court, "JBW" for bench warrants originating out of State Court, and "JTB" for true bills originating out of Superior Court. Bench warrants originating out of City Courts shall be coded "JCO". A new arrest booking report shall be printed and placed in the folder.

Do not sign a Bondsman Off Bond Form if a bench warrant is already issued, unless bondsman brings the subject in themselves.

d.      Distribution of the Bondsman Off Bond Form:
   i.      Goldenrod    -      Bondsman
   ii.     Pink         -      Court Copy
   iii.    Yellow       -      Inmate File
   iv.     White        -      Inmate File

D-000000175



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:** TRANSFER OR RELEASE OF INMATES | |
| **SOP NO:** 10.02 | **GA LAW: NONE** |

**APPLICABLE GSA STANDARD NUMBER:** 10.13, 10.15
**APPLICABLE ACA STANDARD NUMBER:** 5B-04
**DATE CREATED:** OCTOBER 15, 1986   **LATEST UPDATE:** September 6, 2011

## POLICY:

The staff of the Clayton County Detention Facility shall not release or transfer any inmate until release or transfer documentation has been reviewed and the identity of the inmate is established. No person shall be released from custody prior to a supervisory review.

## PROCEDURES:

1. Classification/Release Officer:

    a. Check all documents provided for the release of an inmate.

    b. Ensure no valid detainers, holds, or warrants are pending which would prevent a release.

    c. Verification of the detainer, hold, or pending warrant:

        i. On all valid holds obtain an estimated time of arrival from the agency or officer placing the hold.

        ii. On all valid holds which are being withdrawn a teletype or other verifiable written documentation must be obtained from the agency placing the hold specifying their release of the hold. No verbal releases shall be accepted from the agency releasing the hold.

    d. Notify Accounting prior to an inmate being released or transferred to another agency.

    e. Forward the release or transfer information to the appropriate Unit Control Officer, Property Officer, Release Officer, and Medical Staff.

    f. Any discrepancies noted on any of the above duties shall be reviewed by a Shift Supervisor.

**SOP NO: 10.02          TRANSFER OR RELEASE OF INMATES**

2.      Unit Control Officer:

      a.      Verify the correct identity of the inmate being released or transferred.

      b.      Ensure inmate retrieves all personal items and issued county items out of their cell.

3.      Property Officer:

      a.      Retrieve all of the inmate's property from storage.

b.      Coordinate the return of the inmate's personal property to the inmate with the release officer for inmates being released from the facility either by bonding out or completion of their sentence.

c.      Coordinate the return of the inmate's personal property to the inmate with the release officer and the transporting officer for all inmates being transferred or loaned to another facility.

d.      Inmates being released to a State Facility shall remain in a county issued uniform and all remaining personal property shall be mailed to the person designated by the inmate.

e.      Personal property items which are designated contraband within the secure perimeter of the facilities shall not be returned to the inmate until they have exited the secure perimeter of the facilities. Example: pocket knives, cigarettes, pagers, cell phones etc.

4.      Release Officer (downstairs):

a.      Check committal, release, and transfer documentation prior to the release of an inmate.

b.      Verify the identity of inmate.

c.      Collect all issued county items from the inmate.

d.      Inmate being released:

      i.      The inmate and property officer shall inventory and sign the Clothing Inventory Form to document the return of the inmate's personal clothing.

      ii.      The personal clothing shall then be returned to the inmate.

      iii.      Personal property items designated as contraband within the secure perimeter of the facilities shall be inventoried and turned over to the release officer.

e.      Inmate being turned over to another agency:

D-000000177

**SOP NO: 10.02**          **TRANSFER OR RELEASE OF INMATES**

i.                Check documentation for transfer of the inmate.

ii.               Verify the inmate's identification and place the identification in the get out packet.

iii.              The inmate and property officer shall inventory and sign the Clothing Inventory Form to document the return of the inmate's personal clothing.

iv.               Complete a Transfer of Custody Form for all inmates being transferred to a facility other than a Diversion Center or Boot camp.

v.                Inventory the remaining personal property items with the inmate and/or the transporting officer and have either the transporting officer or inmate sign for the return of the inmate's personal items to the inmate or transporting officer. Return remaining personal property items to the transporting officer.

f.                Inmate being temporarily loaned to another agency:

i.                Check documentation for inmate to be loaned.

ii.               Verify the identity of the inmate.

iii.              Complete a Transfer of Custody Form.

iv.               Personal property shall not be returned to an inmate being loaned to another agency.

v.                Any additional items in the inmate's possession with the exception of their personal legal materials shall be inventoried and placed on the loaned shelf in the Property Room until their return. An inmate's personal legal materials shall be retained by the inmate.

g.                Medical Transfer Receipt/Medication (if applicable):

i.                Medical Staff shall complete a Medical Transfer Form and forward to the release officer.

ii.               Medical Staff shall forward any needed medication for the inmate to the transporting officer. If the inmate is housed in the Infirmary, the inmate and his/her medication is maintained in the Infirmary until they are turned over to the transporting officer.

iii.              Medical Staff shall inform the transporting officer of any medical condition required by the provisions of State Statutes to the transporting officer assuming custody of the inmate.

D-000000178

**SOP NO: 10.02        TRANSFER OR RELEASE OF INMATES**

      h.      Exit Interviews:

All inmates that are released from custody while being housed in the Infirmary, and those inmates that have been placed on the Exit Interview List shall have an exit interview performed by a member of the Medical Staff prior to their release/transfer from custody. Once the exit interview has been performed, the Medical Staff shall provide documentation to be placed in the inmate's file to show the interview was conducted.

      i.      Inmate Funds Account:

i.      Inmates being released from the Bonding Office shall be directed to Accounting by the bonding officer or the visitation officer for return of all remaining funds in their inmate account.

ii.      Inmates being transferred to another agency shall receive a check for all remaining funds in their inmate account.

5.      <u>Release Supervisor:</u>

A Supervisor must review all documentation in an inmate's file, all computer entries, verification of Inmate (Le number, Mug shot, the armband, Etc.) and any other areas containing information related to an inmate's incarceration before any inmate is released from custody or transferred to another agency. The Supervisor conducting the review shall annotate on the folder and each document in the folder that the review was completed, including the date and time of the review, and the Supervisor's name and employee number.

D-000000179



# CLAYTON COUNTY SHERIFF'S OFFICE
## JAIL DIVISION
## STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **VICTIM NOTIFICATION REPORTS** | |
| **SOP NO:** | **10.03** | **GA LAW: O.C.G.A. 16-5-93** |

**APPLICABLE GSA STANDARD NUMBER:**   None
**APPLICABLE ACA STANDARD NUMBER:**   5B-04
**DATE CREATED:**   **MAY 20, 1993**   **LATEST UPDATE:**   **September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facility shall comply with current state law requiring victims of "stalking, aggravated stalking, or related offenses" to be notified in the event the inmate is released or escapes from custody.

## PROCEDURES:

1.  Committal Documents:

    Shall be reviewed in Intake to obtain the needed proper victim notification information:

    a.  Victim's information:

        i.    Victim's name.

        ii.   Victim's telephone contact number.

        iii.  Victim's current address.

    b.  When there is no victim information listed on the committal documents:

        i.    Contact the arresting officer for victim information.

        ii.   Contact the issuing Judicial Official for the victim's information.

2.  Victim Notification Reports:

    During intake procedures the following shall be documented both on the in-house computer system as well as on the Victim Notification Form, and completed as required:

    a.  Offender's information:

        i.    Offender's name.

D-000000180

**SOP NO: 10.03        VICTIM NOTIFICATION REPORTS**

<div style="margin-left:2em">

ii.     Offender's charges.

iii.    Offender's warrant, ticket, or /case number(s).

</div>

b.    Victim's information:

<div style="margin-left:2em">

i.     Victim's name.

ii.    Victim's telephone contact number.

iii.    Victim's current address.

</div>

c.    Confirmation of Victim's Contact Number:

<div style="margin-left:2em">

i.     Document the time the victim was called.

ii.    List the employee's name who called the victim.

iii.    List the victim's location if contact was made.

</div>

d.    This Victim Notification Form is to be maintained in the inmate's file.

3.    <u>Bonding/Release Procedures:</u>

All bonding procedures shall be completed in accordance with S.O.P. 10.01 (Bonds) with the addition of the following:

a.    Notify the Admissions & Release Supervisor prior to the inmate's release.

b.    Attempt to contact victim:

<div style="margin-left:2em">

i.     First call:    at initial intent to make bond.

ii.    Second call:  thirty (30) minutes prior physical release. If no answer, proceed to third call criteria.

iii.    Third call:    fifteen (15) minutes prior physical release. If no answer, proceed to fourth call criteria.

iv.    Fourth call:  prior to immediate physical release. If no answer, proceed to fifth call criteria.

v.     Fifth contact: contact the on Duty Supervisor in the Warrant Office and request a Sheriff's Unit to go to the last known location of the victim.

</div>

D-000000181

**SOP NO: 10.03        VICTIM NOTIFICATION REPORTS**

      vi.     Sixth call:     fifteen (15) minutes after physical release.

a.     All results or non-results of contact shall be documented on Victim Notification Report.

b.     Notification may be considered accomplished by the following:

      i.     Personal notification directly to the victim.

      ii.     Notification to a responsible party, which cannot be a small child, at the victim's address.

      iii.     Obtain and document the name and date of birth of person receiving the call, and the officer making the call on the Victim Notification Report.

4.     <u>Escape Procedures:</u>

Victim notification shall be completed in accordance with the release procedures and simultaneous to any other applicable procedure covering escape situations.

5.     <u>Completed Victim Notification Reports:</u>

Once completed, the Victim Notification Report shall be printed and maintained in the inmate's get out packet. A copy of the completed report shall be forwarded to the Jail Administrator.

6.     <u>Reports:</u>

Documentation supplied from the Enforcement Division shall be attached to the completed Victim Notification Report prior to forwarding to the Jail Administrator.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | |
|---|---|
| **SUBJECT:   RIOT OR DISORDER** | |
| **SOP NO:     11.01** | **GA LAW:** |

**APPLICABLE GSA STANDARD NUMBER:**  5.05, 6.10, 8.38, 23.20, 23.23, 23.25, 23.26, 23.27, 24.01, 24.07
**APPLICABLE ACA STANDARD NUMBER:**  1C-01, 02
**DATE CREATED:       OCTOBER 15, 1986       LATEST UPDATE:       September 6, 2011**

**POLICY:**

The staff of the Clayton County Detention Facilities shall end inmate disturbances as quickly as possible, using the minimum force necessary to bring the situation under control.

**PROCEDURES:**

> Officers shall not respond to assist with an emergency situation until they have been properly relieved of their current responsibilities or directed to do so by their Supervisor. At no time during an emergency situation shall any area of the secured facilities go completely unmanned without direct supervision by an officer.

1.      Definition of Disorder:

Disorder is defined as a disturbance involving any number of inmates but limited to acts of passive resistance without engaging in property destruction, assault and/or attempts to escape (i.e., hunger strikes, refusal to obey lawful orders).

2.      Definition of Riot:

A riot is defined as a violent disturbance involving inmates accompanied by property destruction, arson, assaults, refusal to obey lawful orders, and/or attempted escape from the facilities.

3.      Warning Signs:

Prior to any organized outbreak or disturbance, certain warning signs may be detected. A few of the signals are:

a.      Inmates complain about treatment, food, racial disputes, or conditions in general.

D-000000183

**SOP NO: 11.01         RIOT OR DISORDER**

      b.       Inmates are tense and nervous.

      c.       Inmates begin to hoard food and commissary purchases.

      d.       Inmates become incommunicative.

When any combinations of these symptoms are observed in the facilities, the Staff Member shall immediately report the problem area to a Shift Supervisor, who shall notify all Staff Members of the potential problem. This information shall be passed on to the oncoming shift, to be addressed in roll call.

4.     <u>Notification:</u>

The Watch Commander is responsible for notification of personnel and/or agencies outlined in section 6(b) of this policy. In the event the Watch Commander has been taken hostage or incapacitated in any manner, then the next senior officer shall assume temporary command and responsibility until properly relieved.

5.     <u>Discovering Officer Responsibility:</u>

When a riot begins the Staff Member discovering the riot shall immediately notify the Watch Commander, stating the location of the riot, the approximate number of inmates involved, weapons (if any), and if any personnel or inmates are hostages. The Staff Member discovering a riot in progress shall not attempt to intervene, in order to avoid seizure as a hostage. He or she shall secure all doors, gates, or exits through which inmates may escape.

6.     <u>Supervisor Responsibility:</u>

The Watch Commander or their designee shall record all information pertaining to the riot (i.e., time reported, by whom, names of persons notified, names of officers responding etc.). The Watch Commander, upon receipt of a report of a riot, shall take the following immediate actions:

      a.       Determine the number of inmates involved, location, weapons (if any) being used by the inmates, and the status of the employees at the riot scene.

      b.       Notify the Command Staff of the riot, requesting assistance if it appears the Security Staff is unable to handle the situation. In addition, the following persons or agencies shall be notified.

               Enforcement Bureau
               Fire Department (EMS)
               Infirmary
               Kitchen Staff

**SOP NO: 11.01       RIOT OR DISORDER**

7.      Central Control Responsibility:

The officer(s) manning Central Control shall insure all electrically controlled doors are secure, denying passage to all inmates unless escorted by Staff Member or Law Enforcement Officers. The Watch Commander shall have Staff Members establish the identity of escort personnel to insure the escort is not being forced into accompanying the inmate(s) in an escape attempt. Movement throughout the facility shall not be allowed until the Watch Commander is satisfied that it is safe to do so.

8.      Watch Commander's Duties:

The Watch Commander on duty shall be responsible for supervising the following actions until he or she is relieved by a member of the Justice Bureau Command Staff, Chief, or Sheriff:

a.      Instruct Central Control to change the building code status to Code Red, and to instruct the Detention Staff to turn off the inmate phones in the entire facility, and to turn off the water to the area of the riot.

b.      Direct the inmates not actively participating in the riot to return to their cells and lock down, by having an announcement made for the inmates to cease rioting, and to return to their cells for lock down. Inmates shall be instructed to approach Security Staff or Law Enforcement Officers in a single file line with their hands clasped on top of their heads for search.

c.      Assemble all available Staff Members in an area safe from the riot scene and organize immediate defensive measures to contain or restrict the rioters.

d.      Upon arrival, reinforcements shall be requested to initially surround the perimeter of the Jail to prevent the escape of inmates.

e.      The CERT team, when so directed by the Jail Administrator or his/her designee, shall employ such riot control means as necessary to regain control.

9.      Follow-up Measures:

a.      Once subdued, the rioters shall be required to line up facing a wall, hands extended over their heads, and be frisk searched. They shall be removed to secure cells and strip searched.

b.      First aid and medical treatment shall be rendered by Medical Staff to any person(s) who might have been injured.

D-000000185

**SOP NO: 11.01        RIOT OR DISORDER**

    c.    A head count shall be taken to verify the presence or absence of any inmate(s) who may have escaped during the course of the riot. A roll call of Jail employees and Law Enforcement Officers participating or present when the riot commenced shall be taken to ensure all officers are accounted for.

    d.    In the event chemical agents were deployed, evacuation of the affected area(s) shall be considered. Affected inmates shall be permitted to shower, and be issued clean clothing

    e.    Inmates who provoked the riot shall be segregated for investigative purposes.

    f.    A thorough shakedown of all cells and those areas where the riot occurred shall be conducted.

    g.    Damage assessment and a security survey shall be conducted and a report of damages prepared. Maintenance Staff shall be directed to begin making repairs as soon as photographs have been taken.

    h.    An immediate investigation shall be initiated by the Special Investigation Section, to determine responsibility in preparation for the filing of charges against participants. In the event of serious injury or death of an inmate, a formal investigation shall be conducted.

D-000000186



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   FIRE (EVACUATION PLAN)
SOP NO:    11.02                              GA LAW:

APPLICABLE GSA STANDARD NUMBER:   5.04, 9.09, 9.15, 23.20, 23.21, 23.29, 24.05
APPLICABLE ACA STANDARD NUMBER:   1C-01, 02, 04, 05, 06
DATE CREATED:       OCTOBER 15, 1986    LATEST UPDATE:    September 6, 2011

## POLICY:

The staff of the Clayton County Detention Facilities shall make every effort to prevent the occurrence of fires. In the event of a fire, the primary objective shall be the protection of lives of staff, inmates, visitors and property.

## PROCEDURES:

1.   Prevention:

     The Jail Administrator shall ensure the following:

     a.   All fire safety equipment is inspected periodically by the Clayton County Fire Department.

     a.   A floor plan outlining evacuation routes and the location of firefighting and safety equipment is kept current.

     c.   An extra set of keys shall be maintained in Central Control for all detention doors to be used in cases of an emergency.

2.   Control Officer Duties:

     Ensure the following rules are enforced:

     a.   Trash shall be disposed of daily.

     a.   There shall be no hoarding or storing of flammable materials in unapproved containers.

3.   Discovery:

     When an employee discovers a fire, he or she shall inform the Security Staff and a shift supervisor immediately, stating the exact location and severity of the fire.

D-000000187

**SOP NO: 11.01          FIRE (EVACUATION PLAN)**

4.     <u>Notification:</u>

Once notified of a fire, the Watch Commander shall:

a.     Notify all personnel there is a fire and state the location.   Notify Central Control to change the building status to Code Red.

b.     Notify Clayton County Communications so the Fire Department can be dispatched, and have all Clayton County Sheriff Office road units on duty respond to the Detention Facility.

c.     Notify the Sheriff's Office Command Staff.

5.     <u>Response:</u>

a.     The unit control officer shall ensure all inmates housed in the section threatened by fire or smoke is evacuated to a non-affected area. Special provisions shall be made to ensure handicapped inmates are personally escorted from the affected areas.

b.     If the fire is within a Housing Unit, the unit control officer shall evacuate inmates to the closest non-affected area.

c.     All inmates in non-affected areas outside the housing units shall be taken to the closest secured area. All visitors shall be escorted out of the building.

d.     If the fire is within a Direct Supervision Unit, the control officer shall evacuate inmates to the closest non-affected secure area.

e.     Evacuation of inmates outside the facility building shall only be at the direction of the Jail Administrator, Assistant Chief Deputy, Chief Deputy or the Sheriff. The Watch Commander can authorize evacuation of inmates outside the facility building **only** to prevent **immediate death or serious injury**.

f.     An officer shall be designated by the Watch Commander to meet arriving units of the Fire Department to direct them to the scene of the fire.

g.     The Watch Commander shall set up a Command Post to ensure communication with all agencies involved.

6.     <u>Holding Areas:</u>

If it is necessary to evacuate inmates to the outside of the facility, the primary holding area shall be outside the housing units, but within the fence.

D-000000188

**SOP NO: 11.01          FIRE (EVACUATION PLAN)**

7.    <u>Evacuation from Premises</u>:

If it is necessary to evacuate inmates to another facility, the Watch Commander shall coordinate the transportation of inmates with the Enforcement Bureau.

8.    <u>Investigation:</u>

After the fire has been extinguished and medical care has been given to any injured personnel, the Special Investigations Section in cooperation with the Fire Department shall initiate an investigation.

D-000000189



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
**Implemented on: January 04, 2012**

| | |
|---|---|
| **SUBJECT:   ESCAPE** | |
| **SOP NO:      11.03** | **GA LAW:** |

**APPLICABLE GSA STANDARD NUMBER:**   23.01, 23.24, 23.25, 23.26, 23.27, 23.29
**APPLICABLE ACA STANDARD NUMBER:**   1C-01
**DATE CREATED:        OCTOBER 15, 1986        LATEST UPDATE:        September 6, 2011**

**POLICY:**

The primary function for the staff of the Clayton County Detention Facilities is to make every effort to ensure no inmate escapes from custody. In the event of an escape from the Clayton County Detention Facilities, Security Staff shall secure the perimeter, notify the appropriate law enforcement agencies, and initiate the search for the escapee(s).

**PROCEDURES:**

1.  Discovering Officer:

    The officer who discovers an escape shall:

    a.  Immediately advise their Watch Commander on duty and give the following information, if known:

    i.        The location and method of the escape.

    ii.       The name(s) of the escapee(s).

    iii.      Brief description of inmate if known.

    iv.      The method and mode of transportation of the escapee(s).

    v.       The approximate time of escape, if determined.

    b.  Secure the area from which the escape was made.

    c.  Secure all inmates in the vicinity of the escape area.

    d.  Stop all inmate movement and conduct an inmate count.

D-000000190

**SOP NO: 11.03        ESCAPE**

2.    <u>Notification:</u>

The Watch Commander, immediately upon being notified of any escape, shall:

a.    Inform Central Control to change the building status to Code Red.

b.    Notify the Enforcement Bureau an escape has occurred, and provide all available information.

c.    Notify the Clayton County Communication Center of the escape with a complete physical description of the escapee(s), including clothing and mode of transportation.

d.    Notify the Sheriff's Office Command Staff.

e.    Prepare an information packet on all escapees, to be given to the Enforcement Bureau.

3.    <u>Jail Administrator's Responsibilities:</u>

The Jail Administrator shall contact the Special Investigations Section to initiate a complete investigation into the circumstances of the escape, to include the following activities:

a.    Ensure criminal warrants are obtained for the escapee(s).

b.    The collection of the escapee(s) personal property.

a.    All Jail Staff having information or knowledge of the escape shall complete a written report as soon as possible.

4.    <u>Follow Up:</u>

Upon completion of the investigation and/or the recapture of the escapee(s), the Jail Administrator shall:

a.    Determine how the escape was affected and take corrective action.

b.    Recommend any corrective or disciplinary action necessary against individuals involved, (i.e., Jail Staff, Contract Employee, and/or inmates).

D-000000191



# CLAYTON COUNTY SHERIFF'S OFFICE
## JAIL DIVISION
## STANDARD OPERATING PROCEDURES
### Implemented on: January 04, 2012

**SUBJECT:   ATTEMPTED SUICIDE, SUICIDE, OR DEATH OF AN INMATE IN CONFINEMENT**
**SOP NO:      11.04                                           GA LAW: O.C.G.A. 45-16-24**

| | |
|---|---|
| **APPLICABLE GSA STANDARD NUMBER:** | 5.05, 14.17, 21.09, 23.23, 23.29, 24.01, 24.09, 24.16 |
| **APPLICABLE ACA STANDARD NUMBER:** | None |

**DATE CREATED:        OCTOBER 15, 1986          LATEST UPDATE:        September 6, 2011**

## POLICY:

In the event of attempted suicide, or death of an inmate, the officers and personnel of the facility shall take all actions necessary to provide necessary medical assistance and to preserve the scene. The personnel involved shall cooperate with all medical and investigative authorities.

## PROCEDURES:

1.   Discovering Officer's Responsibilities:

   The Staff Member who first witnesses, or otherwise discovers an inmate who appears dead or who has made a physical attempt at suicide, shall:

   a.   Immediately inform the Watch Commander of the situation and request assistance.

   b.   Notify the Infirmary of the type and location of the incident including what assistance or equipment may be needed.

   NOTE: Any "signals" or "codes" used in communications, especially with the Infirmary, should be accompanied by the phrase "CODE BLUE." This is the standard for a serious medical emergency that all health care providers are familiar with.

   c.   Staff shall not enter cell areas until the other inmates have been secured and/or back up assistance arrives. If the inmate is accessible, use lifesaving procedures. Proper security must be maintained at all times.

2.   Watch Commander's Duties:

   a.   After receiving notification, the Watch Commander shall ensure Clayton County Communications is contacted to request a rescue unit to respond to the emergency.

   b.   Notify the Sheriff's Office Command Staff.

   c.   Proceed to the scene and assume control.

D-000000192

**SOP NO: 11.04       ATTEMPTED SUICIDE, SUICIDE, OR DEATH OF AN INMATE IN CONFINEMENT**

3.      <u>Identification and Investigation:</u>

   a.      Seal off the area of the suicide to prevent contamination of the crime scene, in order to preserve it.

   b.      Contact the Clayton County Sheriff's Office Special Investigative Section.

   c.      Ensure photographs are made to preserve and record the scene.

   d.      Obtain names of all inmates who witnessed the incident and/or has pertinent information.

   e.      Upon verification of death by medical personnel, the Jail Administrator shall ensure the following steps are completed:

      i       Notify the County Coroner or Medical Examiner (O.C.G.A.45-16-24) that a death of an inmate has occurred.

      i.      Arrange for a Crime Scene Investigator to take inked fingerprints of the corpse prior to transporting the corpse to the Crime Lab. The prints taken are needed to positively identify the deceased.

4.      <u>Follow-up:</u>

The Jail Administrator shall assign staff to complete the following tasks:

   a.      If the deceased was a federal, immigration, or military inmate, notify the appropriate agency immediately to advise them of the death.

   b.      If the deceased was being held on a warrant from another agency, notify that agency.

   c.      Obtain the name, address, and telephone number of any relatives shown in the inmate's file. If a relative is not shown on any form in the file, check the visitors log to determine names of appropriate persons to notify.

   d.      Notify the appropriate relative of the deceased, explain the cause of death, the current location of the body, and whether the inmate's personal property may be released. This shall be done by the Jail Chaplain, if possible.

**SOP NO: 11.04        ATTEMPTED SUICIDE, SUICIDE, OR DEATH OF AN INMATE IN CONFINEMENT**

      e.      Notify the court(s) to which the inmate's case(s) is assigned.

      f.      Implement routine "book-out" procedures in order to complete jail records.

      g.      Collect all property of the deceased.

5.    <u>Reporting:</u>

When a suicide attempt or an inmate death occurs, the Watch Commander shall be notified and a report shall be completed. If the Watch Commander determines the suicide attempt involves minor injury to the inmate, a Jail Miscellaneous Incident Report shall be completed. If the Watch Commander determines the suicide attempt involves great bodily harm or an inmate death has occurred, it shall be documented by the reporting officer in an Incident Report..

D-000000194



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:   HOSTAGES**
**SOP NO:    11.05**                                      **GA LAW: O.C.G.A. 45-16-24**

**APPLICABLE GSA STANDARD NUMBER:    5.04, 23.23, 23.25, 23.26, 23.27, 23.29, 24.01, 24.02**
**APPLICABLE ACA STANDARD NUMBER:    1C-01**
**DATE CREATED:       OCTOBER 15, 1986      LATEST UPDATE:       September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facility shall make every attempt to safely extract anyone seized as a hostage unharmed, and shall gain control of the situation by utilizing the minimum force necessary.

## PROCEDURES:

1.   Authority:

     Any employee of the Clayton County Sheriff's Office, regardless of rank or position, seized as a hostage shall cease to exercise the authority vested in their office or rank. Any order issued while being held as a hostage shall be disregarded by other Sheriff's Office Personnel.

2.   Security:

     An employee about to be seized as a hostage and/or subject to assault shall attempt to dispose of any keys in his or her possession. Any employee taken hostage and/or isolated among rioting inmates shall make every effort to relay pertinent information, without jeopardizing their safety or the safety of others. The employee shall take advantage of protective cover available pending the arrival of reinforcements. The employee shall make mental notes during this period for later identification of ringleaders and agitators.

3.   Steps to be Taken:

     When a hostage is taken, actions outlined in the Clayton County Sheriff's Office, Justice Bureau, Policy and Procedures, Riot or Disorder (SOP 11.01), shall be followed.

D-000000195



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

SUBJECT:   **BOMB THREAT**
SOP NO:     **11.06**                                    **GA LAW:**

**APPLICABLE GSA STANDARD NUMBER:**   5.04, 9.15, 23.20, 24.01
**APPLICABLE ACA STANDARD NUMBER:**    1C-01
**DATE CREATED:        OCTOBER 15, 1986    LATEST UPDATE:       September 6, 2011**

## POLICY:

In the event of a bomb threat, the staff of the Clayton County Detention Facility shall search the facility, notify the appropriate emergency personnel to remove or disarm the device if it is located, and if necessary evacuate the facility.

## PROCEDURES:

1.  Watch Commander Responsibilities:

    a.   All officers in the facility shall be notified a bomb threat has been received and to cease the use of two-way radios. The building status shall be changed to Code Red.

    b.   Notify Clayton County Communications so the Fire Department and EMT's can respond.

    c.   Notify the Sheriff's Office Command Staff.

    d.   The Watch Commander shall establish a Command Post in a central location to direct all search procedures. This area shall be searched for a device first. All available personnel shall report to the Command Post to receive instructions.

    e.   Call the nearest Explosive Ordnance Unit and place them on standby.

    f.   Evacuation of inmates outside the facility building shall be at the direction of the Jail Administrator, Chief or the Sheriff. The Watch Commander can authorize evacuation of inmates outside the facility building only to prevent immediate death or serious injury.

2.  Officer/Employee Responsibilities:

    a.   The officer or employee receiving a bomb threat shall obtain as much information as possible from the caller or person delivering the threat.

    b.   The officer or employee shall record the exact wording of the threat location, time of detonation, design type, and other descriptive information.

D-000000196

**SOP NO: 11.06          BOMB THREAT**

      c.      The officer or employee receiving the threat shall immediately notify the Watch Commander.

      d.      Officers shall not use their portable radios or cut on/off any lights as this may detonate the device.

      e.      Officers shall have all inmates lock down and visitors shall be escorted out of the facility.

      f.      When conducting a search for the bomb, the search shall progress from the most public to the most private area of the facility.

      g.      If a suspicious package is located, it shall be left undisturbed. Officers shall evacuate the area and attempt to isolate the suspicious package or explosive device without moving it.

      h.       If a device is located, qualified Explosive Ordnance Personnel shall be called in to disarm or remove the device from the facility as the situation dictates.

      i.      All bomb threats received shall be turned over to the Special Investigative Section for investigation regardless if the threat is false or genuine.

      j.      The officer or employee receiving the bomb threat shall complete an Incident Report and a Bomb Threat Checklist. A Supplemental Report shall be completed by all other personnel locating a device or witnessing the receipt of a bomb threat.

D-000000197



**Clayton County Sheriff's
Office Jail Division**

**<u>Bomb Threat Check List</u>**

Name and employee number of the person taking the bomb threat:

Name:_____Employee Number_____

Time and Date the threat reported:_____

Telephone number the threat was received on_____

How Reported: _____

Exact Words of Caller:_____

_____

_____

Questions to Ask:

k.     When is the bomb going to explode?_____

l.     Where is the bomb right now?_____

m.     What kind of bomb is it?_____

n.     What does the bomb look like?_____

o.     Why did you place the bomb?_____

p.     Where are you calling from?_____

Description of caller's voice?_____

Male_____Female_____Young_____Middle
Age_____Old_____

Accent_____Tone of Voice_____Background Noise_____

Is Voice Familiar_____If so, who did it sound like?_____

Other Voice Characteristics_____

D-000000198



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

| | | |
|---|---|---|
| **SUBJECT:** | **DISASTER** | |
| **SOP NO:** | **11.07** | **GA LAW:** |

**APPLICABLE GSA STANDARD NUMBER:**   5.04, 23.29, 23.30, 24.01
**APPLICABLE ACA STANDARD NUMBER:**   1C-01
**DATE CREATED:**       **NOVEMBER 4, 2000**     **LATEST UPDATE:**     **September 6, 2011**

## POLICY:

The staff of the Clayton County Detention Facility shall, in the event of a disaster take all necessary steps to protect the lives of staff, visitors, and inmates. The on-site commander shall ensure records maintained by the Bureau are secured, and further damage, destruction or theft is prevented.

## PROCEDURES:

1.   Natural Disaster:

      When an employee is notified of the possibility of a natural disaster (e.g., tornado or hurricane warning), he or she shall inform the Security Staff and the Watch Commander immediately, stating the projected path of the storm, if known.

2.   Man-made Disaster:

      In the event of a man-made disaster (e.g., bomb explosions, airplane crash, or a hazardous waste spill) the employee making the discovery or receiving information of the same shall inform the Security Staff and the Watch Commander immediately.

3.   Notification:

      Once notified of a disaster, the Watch Commander shall notify all personnel and direct them to assist in security operations.

4.   Response to the Disaster:

      a.   The unit control officer shall ensure all inmates housed in the section threatened by the disaster are evacuated to a non-affected area.

      b.   All inmates in non-affected areas outside the housing units shall be taken to the closest secured area.

D-000000199

**SOP NO: 11.07        DISASTER**

    c.      The recommendation for evacuation of inmates shall be made by the Fire Department. Evacuation of inmates outside the facility building shall be at the direction of the Jail Administrator, Chief or the Sheriff. The Watch Commander can authorize evacuation of inmates outside the facility building only to prevent immediate death or serious injury

5.    <u>Holding Areas:</u>

If it is necessary to evacuate inmates outside of the facility, the primary holding area shall be outside the housing units, but within the fence.

6.    <u>Evacuation from Premises</u>:

If it is necessary to evacuate inmates to another facility, the Watch Commander shall coordinate the transportation of inmates with the Enforcement Bureau.

7.    <u>Evacuation Plans:</u>

Evacuation plans shall be posted throughout the building to ensure an orderly evacuation in case of an emergency.

8.    <u>Watch Commander Duties:</u>

    a.      Ensure the building code status is changed to Code Red.

    b.      Notify the Command Staff

    c.      An officer shall be designated by the Watch Commander to meet arriving units of the Fire Department to direct them to the scene of the disaster to begin rescue/relief operations.

    d.      The Watch Commander shall set up a Command Post in a non-affected area to ensure communication with all agencies involved.

    e.      During the disaster the on-site commander at the affected facility shall have the responsibility of ensuring records maintained by the division are secured from further damage, destruction or theft. He or she shall take the necessary steps to ensure all records are secured on-site if possible or that they remove the records to another location where they can be secured as the situation requires.

D-000000200



**CLAYTON COUNTY SHERIFF'S OFFICE
JAIL DIVISION
STANDARD OPERATING PROCEDURES
Implemented on: January 04, 2012**

**SUBJECT:   FOOD SERVICE**
**SOP NO:      12.01**                                      **GA LAW: O.C.G.A. 42-4-32**

**APPLICABLE GSA STANDARD NUMBER:      18.02-18.13**
**APPLICABLE ACA STANDARD NUMBER:**
**DATE CREATED:       OCTOBER 15, 1986       LATEST UPDATE:       September 6, 2011**

**POLICY:**

To maintain the health of the inmates, foods served in the Clayton County Detention Facility shall be of the highest quality and greatest variety possible within budgetary constraints. Food shall not be withheld as punishment.

**PROCEDURES:**

1.    <u>Schedule:</u>

      Three meals per day shall be served to all inmates, including those in disciplinary isolation and administrative segregation. All scheduled meal delivery times shall be set by the Jail Administrator or their designee.

2.    <u>Meal Preparation:</u>

      Meals prepared must be nutritionally balanced and prepared in accordance with nationally accepted and state and local food preparation requirements.

a.    All food preparation shall be done under the direct supervision of the Food Service Contract Personnel.

      b.    Special attention shall be made to maintain prepared foods at an acceptable temperature to prevent them from becoming spoiled, stale, or inedible.

      c.    Meals shall be prepared in a sanitary environment.

3.    <u>Service:</u>

      All meal delivery shall be supervised by the housing unit officers. This is to ensure security of the food served and to ensure each inmate is provided a meal tray. Meals shall be delivered in a sanitary manner. The time of delivery shall be recorded on the daily log by the control officer.

D-000000201

**SOP NO: 12.01        FOOD SERVICE**

4.      <u>Refusal:</u>

Inmates may accept or decline any meals offered them. The control officer shall record in the Daily Log when an inmate refuses a meal. In the event an inmate is out of their assigned housing unit during the delivery of the scheduled meal, a comparable meal is to be provided upon their return.

5.      <u>Tray Return:</u>

Inmates shall receive sufficient time to consume their meal. Each tray shall be collected and accounted for by the feeding officer immediately after the meals have been consumed. There shall be no hoarding of trays.

6.      <u>Records of Meals Served:</u>

The Kitchen Staff shall record the number and type of meal served. A report shall be forwarded to the Jail Administrator of all meals served including regular and special diets.

7.      <u>Special Diets:</u>

Every effort shall be made to ensure all prescribed special diets are served at the specified meal times. A list of all inmates receiving a special diet shall be forwarded to the Food Service Manager.

      a.      Special medical diets for inmates shall be made available upon a physician's authorization.

      b.      Special religious diets for inmates shall be made available upon the Chaplain's recommendation with approval from the Jail Administrator or their designee.

8.      <u>Meal Planning:</u>

The Jail Administrator, or their designee shall review menus with the Food Service Manager every 28 days. The menu shall have as wide a variety of food as possible within budget limitations and contractual obligations.

9.      <u>Inspection:</u>

      a.      The Health Department may conduct an inspection of the food service program at any reasonable hour for sanitation and safety.

      b.      The Safety and Sanitation Officer shall conduct a walk through inspection of the kitchen area at random times on a daily basis to ensure safety and sanitation requirements are met.

**SOP NO: 12.01      FOOD SERVICE**

  c. The Jail Administrator or his designee shall inspect the food quality and the preparation of inmate and staff meals on a regular basis.

  d. Food Service Permits shall be obtained and kept current from the Health Department. All food service preparation areas, serving areas, equipment, and personnel shall comply with applicable state and local health requirements.

10. <u>Storage Area:</u>

The food service, preparation, and storage areas shall be thoroughly cleaned after each meal service.



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:** MAINTENANCE
**SOP NO:** 12.02                                  **GA LAW:**

**APPLICABLE GSA STANDARD NUMBER:** 8.46, 15.04
**APPLICABLE ACA STANDARD NUMBER:**
**DATE CREATED:** NOVEMBER 4, 2000    **LATEST UPDATE:**    September 6, 2011

**POLICY:**

The Clayton County Detention Facility through contractual agreement shall provide preventive and corrective maintenance for each building to ensure the proper working condition of all equipment.

**PROCEDURES:**

1.    Regularly Scheduled Maintenance:

      Maintenance Staff shall implement a plan to provide for the regularly scheduled maintenance of the facilities.

2.    Inventory:

      Maintenance Staff shall maintain a detailed inventory of tools, materials, and equipment necessary to ensure the security of the facility.

3.    Escorts:

      Maintenance Staff and assigned inmate workers shall not enter into any portion of the facility that is occupied by unsecured inmates without being escorted by Sheriff' Office Security Staff. All access to plumbing chases must be supervised by Security Staff.

D-000000204



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:**          **CONTRACTORS AND VOLUNTEERS**
**SOP NO:     12.03**                                            **GA LAW:**

**APPLICABLE GSA STANDARD NUMBER:**
**APPLICABLE ACA STANDARD NUMBER:**
**DATE CREATED:     NOVEMBER 4, 2000     LATEST UPDATE:     September 6, 2011**

**POLICY:**

The Clayton County Detention Facility shall make use of contractual services to provide those services which are not available through normal staffing procedures. The use of volunteer workers to assist in conducting inmate programs and services shall be encouraged. Contractual employees and volunteers approved by the Jail Administrator to perform certain duties at the Detention Facility shall not conduct themselves in a manner to compromise the safe and efficient operation of the facility.

**PROCEDURES:**

1.     Contractor and Visitor Approval:

The use of contractors and their employees shall be subject to the approval of the Sheriff. The use of volunteers shall be coordinated by the Jail Chaplain Staff and approved by the Jail Administrator or his designee.

2.     Screening:

Before being allowed to work in either facility, a criminal history check, interview, and orientation shall be conducted on each contractual employee and volunteer prior to their use in the facilities.

3.     Orientation:

The Jail Administrator or his designee shall ensure an orientation is provided to each contractual employee concerning their expectations and the security procedures.

4.     Assisting Contractual Employees:

Visitors shall be escorted by Security Staff when they are working in the inmate housing units and while moving throughout the facility. It shall not be mandatory for contractual employees to be escorted while moving throughout the facility, unless there is a compelling security interest. All contractual employees shall be escorted by an officer when working around unsecured inmates, not to include inmate workers. Security Staff shall make every reasonable effort to aid contractual employees and volunteers unless the security operations of the facilities are in jeopardy.

D-000000205

**SOP NO: 12.03       CONTRACTORS AND VOLUNTEERS**

5.    <u>Fraternization</u>:

Nothing shall be given, loaned, traded, or sold to any inmate without prior approval from the Jail Administrator or their designee. Any contractual employees or volunteers delivering contraband to any inmate shall be subject to criminal prosecution. Contractual/Volunteer employees shall not fraternize with any inmate to include but not limited to:

a.         Delivering messages.

b.         Special favors.

c.         Establishment of friendships.

6.    <u>Weapons</u>:

Contractual employees and volunteers shall not possess any implements that could be used as weapons. All tools used by contractual employees and volunteers shall be approved by the Jail Administrator or their designee.

7.    <u>Inventory</u>:

All tools and/or equipment shall be regularly inventoried and accounted for. Any missing or unaccounted for tool(s) shall be reported immediately to the Watch Commander.

8.    <u>Identification</u>:

Sheriff's Office Identification issued to contract employees or volunteers shall be displayed on their outer clothing and remain visible at all times while in the facilities.

9.    <u>Emergencies</u>:

Contractual employees and volunteers observing any emergency situation shall immediately contact the Security Staff.

10.   <u>Conflicts with Inmates or Staff</u>:

Conflicts involving inmate workers shall be reported to the Security Staff immediately. Conflicts involving officers or Staff shall be reported to the on duty Watch Commander or the assistant Watch Commander immediately.

11.   <u>County Property</u>:

No county property shall be borrowed nor removed from either facility without prior approval from the Jail Administrator.

D-000000206

**SOP NO: 12.03          CONTRACTORS AND VOLUNTEERS**

12.     <u>Suspensions:</u>

Access to the facility by contractual employees and volunteers may be temporarily suspended for any reason that interferes with the security of the facilities.

13.     <u>Suspension Reviews</u>:

Contractual employees and volunteers removed from the facilities for security violations shall be temporarily banned from the facility pending review by the Jail Administrator.

D-000000207



**CLAYTON COUNTY SHERIFF'S OFFICE**
**JAIL DIVISION**
**STANDARD OPERATING PROCEDURES**
Implemented on: January 04, 2012

**SUBJECT:    MAIL**                                          **SOP NO:        5.01**
**APPLICABLE GSA STANDARD NUMBER(S):** 16.01, 16.02, 16.03, 16.04, 16.05, 16.06, 16.07
**DATE CREATED: JULY 1, 1999**                      **LATEST UPDATE: February, 2011**

## POLICY:

The Clayton County Detention Facility shall allow and encourage inmates to communicate with persons outside the jail by sending and receiving mail. This facility will ensure that mail is processed in a timely manner and will not be withheld except where such restrictions are necessary to maintain the order and security of the facility.

## DEFINITIONS:

*Contraband:* An item whose introduction or possession is prohibited within a jail. Contraband may be items that are either illegal or legal but prohibited by this facility. All items of contraband will be handled in the appropriate manner and will be either destroyed, placed in the inmate's personal property or turned over to the courts for prosecution.

*Non-Privileged Mail:* Mail that inmates send to, or receive from, family, friends, and private organizations. This also includes newspapers or magazines received from publishers.

*Legal Mail:* Mail that inmates send to, or receive from, their attorneys of record or with whom an attorney-client relationship has been established, the courts, or other court officials, as well as the probation officers. Whenever an inmate receives mail from an attorney, it shall be automatically presumed that an attorney-client relationship exists.

## PROCEDURES:

1.     **Incoming Mail**

     A.     All incoming mail, except legal mail and other specifically approved items must be in metered or pre-stamped postcard form. All postcards shall contain the inmate's name and return address as follows:

          Inmate's Full Name and LE Number
          Clayton County Sheriff's Office
          9157 Tara Blvd
          Jonesboro, Ga. 30236

D-000000208

1.      Acceptable Postcard Forms:

    a.      Postcard minimum size requirements are 3.5 inches by 4.25 inches.
    b.      Postcard maximum allowable size is 4.25 inches by 6 inches.
    c.      Must be written in blue or black ink only.
    d.      Postcards must be white in color and be either metered or contain a preprinted stamp.

2.      Unacceptable Postcard Forms:

    a.      Defaced or altered postcards.
    b.      Plastic or wrappings on postcards.
    c.      Postcards marked with paint, crayons, or markers.
    d.      Postcards with labels or stickers.
    e.      Postcards with watermarks or stains.
    f.      Postcards with any biohazards, including perfumes or lipstick.
    g.      Postcards depicting nudity, weapons, or gang references.
    h.      Postcards containing an affixed stamp.

B.      Monies being mailed to an inmate must be in an envelope and will be addressed in the following manner:

> Clayton County Sheriff's office
> Attn: Accounting
> 9157 Tara Blvd.
> Jonesboro, Ga. 30236

Monies must be made out to the Clayton County Sheriff's Office with the inmates name and LE number printed on the line designated as "For" on the document. No additional correspondence will be accepted with incoming monies. All envelopes marked as incoming monies will be opened and inspected. If additional contents are located in the envelope, the entire package will be returned to sender. All accepted monies will be turned over to the accounting staff and deposited to the inmate's account.

1.      Acceptable United States currency includes:

    a.      Any cashier check (also known as an official check).
    b.      Money Order.

C.      Up to four photographs may be mailed to the jail after the inmate has been incarcerated for 30 or more days. The envelope must be clearly marked as "PHOTOGRAPHS." The photographs must not exceed four inches by six inches in size, must be unaltered, and may not contain any adhesives such as stickers or labels. The inmate's name and booking number must be written on the back of each photograph. Nothing else is to be written on the photographs. All accepted photographs must be developed prints, no Polaroid pictures are authorized. No additional correspondence will be accepted with incoming photographs. All

D-000000209

envelopes marked as "PHOTOGRAPHS" will be opened and inspected. If additional contents are located in the envelope, the entire package will be returned to sender.

1.   Photographs containing the following shall be deemed inappropriate and shall be returned to the sender:

    a.   If the picture depicts sexual activity or visibly exposes the breast, pubic area or buttocks.
    b.   Pictures promoting or showing illegal activity.
    c.   Pictures containing gang signs or codes.

D.   Packages will not be accepted unless specifically authorized by the jail commander. All unauthorized packages will be returned to the sender.

E.   Inmates may receive newspapers, magazines, and new soft cover books shipped directly from a publisher or book company. However, the ordering, purchasing, and payment for these shall be the sole responsibility of the inmate's family or friends. Newspapers shall be discarded daily to prevent a fire hazard. All reading materials shall be subject to inspection for contraband.

1.   Reading material containing the following shall be deemed inappropriate and shall be returned to the sender:

    a.   Content contains pictures that depict sexual activity or visibly exposes the breast, pubic area or buttocks.
    b.   It contains information of escape plots, riots or other disorder or plans to violate laws or rules.
    c.   It contains threats, extortion or obscenity.
    d.   It contains gang signs or codes.
    e.   It contains information that advocates or describes the killing of law enforcement personnel.
    f.   It contains plans for the production of any explosive, incendiary or pyrotechnic device.
    g.   It contains writings that would inflame or contribute to tension between ethnic groups and threaten the safety, security or order of the facility.

## 2.   Outgoing Mail

A.   All outgoing non-privileged mail shall be in approved postcard form.

B.   All outgoing legal mail will be clearly marked as such on the outside of the envelope.

1.   Outgoing legal mail will be verified to be such prior to leaving this facility.

2.   Outgoing legal mail will only be opened in the presence of the inmate when clear and convincing evidence of a security breach establishes good cause.

      C.      There are no limitations on the amount of legal mail that can be sent or received by an inmate in this facility.

3.      **Restrictions on Non-Privileged Mail Quantity**

Inmates are only allowed to have (4) four books and or magazines including religious books, (20) twenty postcards and (1) one newspaper in their possession at any time. Any additional items are considered a fire hazard/contraband and shall be confiscated and destroyed. There are no restrictions on the number of postcards inmates can mail out providing they have sufficient materials to do so.

4.      **Restrictions on the Addressee**

The Jail Administrator or their designee in special circumstances may impose additional restrictions for situations such as intimidation of witnesses, harassment of any individual or family, court ordered restrictions, or correspondence with a minor whose parents or legal guardian may object. Staff shall not permit correspondence between inmates incarcerated in this facility.

5.      **Inspections for Contraband**

All incoming or outgoing mail is subject to being opened and inspected for contraband, cash, checks, or pornography. Staff shall not read incoming or outgoing mail unless circumstances present a legitimate security interest. Mail originating from, or intended for an attorney, court, or any elected official may only be opened in the inmate's presence and then only inspected for contraband, cash, checks, or pornography. This inspection shall be completed by Security Staff and is for the strict purpose of insuring contraband is not being sent from, or received into this facility and shall be done in such a manner as not to violate the confidentiality of the communication. Legal mail must be marked and readily identifiable as legal mail before staff shall treat it as such. Pre-stamped envelopes provided to an inmate through the mail in legal correspondence shall not be considered contraband.

6.      **Processing**

Incoming or outgoing mail shall be processed for regular distribution daily Monday through Friday. Jail personnel will not retain an inmate's incoming or outgoing mail for more than 24 hours or packages for more than 48 hours, excluding weekends and holidays.

      A.      All incoming mail will be inspected for contraband, but will not be censored. Legal mail will be opened in the presence of the inmate.

      B.      Incoming mail addressed to an inmate that is no longer at this facility will be returned to sender.

D-000000211

C.     Personnel will distribute mail only to the inmate who is to receive the postcard, letter, or package. Mail will not be handled or distributed by another inmate.

D.     Personnel shall collect outgoing inmate mail daily. All mail must have a return address and correct postage before being delivered to the USPO.

D-000000212